### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **BLENDTEC INC.**, a Utah corporation,<br><br>     Plaintiff,<br><br>vs.<br><br>**BLENDJET, INC.**, a Delaware corporation,<br><br>     Defendant. | **[PROPOSED] ORDER REGARDING ESI PROTOCOL**<br><br><br>Civil No. 2:21-cv-00668-TC-DBP<br><br>Judge Tena Campbell<br><br>Magistrate Judge Dustin B. Pead |

Having considered the Parties' Joint Stipulation and Motion for Entry of ESI Protocol and for good cause appearing, the Court hereby enters the following ESI Protocol:

## I.    GENERAL MATTERS

1.    The Parties shall take reasonable steps to comply with the protocol set forth herein.[1]

2.    To the extent reasonably possible, the production of documents shall be conducted to maximize efficient and quick access to Documents and minimize related discovery costs. The terms of this Stipulation should be construed to ensure the prompt, efficient, and cost-effective exchange of information consistent with the Federal Rules of Civil Procedure, the Local Rules, and any Orders by this Court.

3.    Except as specifically limited herein, this Stipulation governs the production of discoverable documents by the parties during the Litigation.

---

[1] All capitalized terms have the meanings set forth in the Definitions section below.

4.      This Stipulation shall not enlarge, reduce, or otherwise affect the proper scope of discovery in this Litigation, nor imply that discovery produced under the terms of this Stipulation is properly discoverable, relevant, or admissible in this or in any other litigation. Additionally, this Stipulation does not enlarge, reduce, or otherwise affect the preservation obligations of the Parties.

5.      Subject to the Parties' objections and responses to requests for production of documents and subject to the Court's Standard Protective Order, all documents that are responsive to discovery requests and not designated as "privileged" shall be produced in the manner provided herein. Nothing in this Stipulation shall be deemed to limit or modify in any way the terms of the Standard Protective Order governing this Litigation. Nothing in this Stipulation shall be interpreted to require disclosure of materials that a Party contends are not discoverable or are protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, and/or any other privilege that may be applicable. Additionally, nothing in this Stipulation shall be deemed to waive or limit either party's right to object to the production of certain electronically stored information, pursuant to Rule 26(b)(2)(B) of the Federal Rules of Civil Procedure, on the ground that the sources are not reasonably accessible because of undue burden or cost.

6.      The Parties agree to promptly alert all other Parties concerning any technical problems associated with complying with this Stipulation. To the extent compliance with this Stipulation imposes an undue burden with respect to any protocol, source, or Search Term, the Parties shall promptly confer in an effort to resolve the issue. If the Parties are unable to resolve the issue by mutual agreement after such conference, the Party seeking relief may move the Court for relief pursuant to the Federal Rules of Civil Procedure and the Local Rules.

7.      Consistent with their obligations under applicable Federal Rules of Civil Procedure and this Court's orders, the Parties will attempt to resolve disputes regarding the issues set forth herein prior to filing a motion with the Court, or otherwise seeking relief. If the Parties are unable to resolve the dispute after a good faith effort, the Parties may apply to the Court for relief pursuant to the governing rules of procedure.

8.      The Parties have a common law obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody, or control.

9.      Nothing herein waives the right of any Producing Party to petition the Court for an Order modifying the terms of this ESI Protocol upon sufficient demonstration that compliance with such terms is either (1) unexpectedly or unreasonably burdensome, or (2) impossible. The meet and confer requirements set forth herein and the governing rules of civil procedure apply prior to seeking relief from the Court.

## II.    DEFINITIONS

10.      "Electronically stored information" or "ESI" shall include all electronic files, documents, data, and information covered under the Federal Rules of Civil Procedure.

11.      "Bates Number" means a unique number affixed to each page of a document produced in the Litigation.

12.      "Document" shall include both Hard Copy Documents and Electronic Documents as defined herein.

13.      "Database" means a collection of related Electronic Data organized (often in rows, columns and tables) in an electronic environment for a particular purpose.  Databases often

perform various functions, including data analysis, data sorting, and report generation. Microsoft Access and Oracle are common database platforms.

14.    "Electronic Document" means Documents existing in electronic form at the time of collection, including but not limited to: email, word processing files (e.g., Microsoft Word), computer presentations (e.g., PowerPoint slides), spreadsheets (e.g., Excel), and image files (e.g., .PDF).

15.    "Hard Copy Document" means Documents existing in paper form at the time of collection.

16.    "Metadata" means corresponding data about and Electronic Document that resides in the un-viewed area of an Electronic Document and is generally not seen when such a Document is printed (e.g., date created, date sent, author).

17.    "Native Format" means the format in which an Electronic Document was created and used (also referred to in terms of "Native Production").

18.    "Party" refers to the plaintiff or defendant in this Litigation. "Parties" refers to one or more Party.

19.    "Producing Party" shall refer to the Party producing documents and ESI in response to a discovery request propounded by another party.

20.    "Receiving Party" shall refer to the party receiving documents and ESI in response to a discovery request propounded by the Receiving Party.

21.    "Search Terms" are words or a combination of words or phrases designed to identify and capture potentially relevant documents. For example, "trademark" is a potential Search Term.

### III.    PRESERVATION.

22.    The parties agree that preservation of potentially relevant ESI is reasonable and proportionate to the needs of this case, and will do so consistent with the parties' obligations under Fed. R. Civ. P. 26(f).

23.    The parties agree to disclose and describe any document retention policies or practices (*e.g.*, retention schedules or policies, auto-delete functions, routine purging, mailbox size limits) or other practices likely to impact the existence or accessibility of responsive documents or electronically stored information.

24.    Additionally, each party agrees to disclose categories or sources of responsive information that it has reason to believe should not be preserved and will explain with specificity the reasons to support such a belief.  Should the parties disagree with respect to the scope of preservation, data sources, date ranges, and categories of information that have been or should be preserved in connection with this litigation, the parties agree to meet and confer in good faith in an attempt to resolve any such disagreement prior to bringing such agreement to the attention of the Court.

25.    Absent a showing of good cause, the parties specifically agree that the following data sources need not be collected and preserved:

- Deleted, slack, fragmented, or unallocated data on hard drives;

- Random access memory (RAM) or other ephemeral data;

- On-line access data such as temporary internet files, history, cache, or cookies;

- Automatically saved versions of documents;

- System or executable files (.exe, .d11, etc.);

•    Back-up tapes or other data sources that are substantially duplicative of data that are more accessible elsewhere or maintained for disaster recovery purposes only;

•    Server, system, or network logs; and

•    Legacy data remaining from systems no longer in use that is unintelligible on the current systems in use.

## IV.    SEARCH AND PRODUCTION OF DOCUMENTS

26.    A party conducting a search for responsive documents may utilize any reasonable and reliable method of collection, including self-collection with attorney oversight.

### A.    Sources of Non-Custodial ESI.

27.    The parties agree to search any relevant central electronic systems and cloud storage locations, and/or any portions thereof ("non-custodial ESI") for non-duplicative responsive documents, subject to stated objections without the requirement of needing search terms or custodians.  For the sake of clarity, shared drive repositories and documents "shared" by two or more persons on a cloud platform (even if a single individual is the "owner" of such a document), shall be considered non-custodial ESI under this Protocol.  Should any party identify a source of non-custodial ESI that is likely to contain responsive information, but that the party asserts should not be searched for some reason (e.g., such source is not reasonably accessible or such search would be unduly burdensome, or is likely to be unreasonably inefficient in identifying responsive documents), the party shall identify such source to the requesting party and will explain the reasons for such assertions.

**B.    Sources of Custodial ESI.**

1.    <u>Identification of Designated ESI Custodians.</u>

28.    In addition to searching relevant central electronic systems and cloud storage locations, as set forth in Section IV.A., supra, the parties will also search for responsive documents from Designated ESI Custodians, including requests for e-mail, in accordance with the procedure outlined herein.

29.    A requesting party will meet and confer with the producing party regarding the appropriate number of Designated ESI Custodians for documents responsive to the requesting party's requests for production from the producing party.  However, under no circumstances will either of the parties be required to search from more than seven (7) Designated ESI Custodians, per "side."  For the sake of clarity, the Parties hereby agree that their respective "customer service/experience" correspondence, however kept (*e.g.*, as a single accumulated repository accessed by multiple individuals for responding to customer inquiries, or a disparate number of individual accounts receiving and responding to such requests), shall constitute a single "Designated ESI Custodian" for the purpose of this Section.

30.    Each producing party shall, in good faith, meet and confer with any and all requesting parties in an effort to identify custodians likely to possess potentially responsive ESI in view of the pleaded claims and defenses in the case (the "ESI Custodian Conference").  During such a conference, the requesting part(ies) may provide the producing party with a job description or function, in which case the producing party shall respond by identifying the person(s) who fit the job description or function named by the requesting party, and who are likely to have

documentation responsive to relevant requests for production that have been propounded by the requesting party.

31.     Following any such conferences, the requesting part(ies) may specify Designated ESI Custodians by name – either in a single set, or on a rolling basis – up to the maximum for the producing part(ies).  Should a disagreement arise between or among the producing party and requesting part(ies) with respect to the designation of any specific ESI Custodian hereunder, the parties agree to meet and confer in good faith in an attempt to resolve any such disagreement prior to bringing such agreement to the attention of the Court.

32.     Each producing party will consider requests for the designation of additional ESI custodians (i.e., beyond the custodians allowed hereunder) upon showing of good cause and distinct need based on the size, complexity, and issues of this specific case.

2.     Collection of Non-Email Custodial ESI.

33.     Subject to all other stated objections, once designated, each producing party shall conduct a reasonable search for non-email electronically-stored information and files within the possession, custody and/or control of the Designated ESI Custodians responsive to any requests for production received by that party.

34.     With respect to non-email custodial ESI stored on chat platforms, if any, documents that are associated by hyperlink or otherwise linked to another location or file without being embedded will not be treated as attached files and will not be produced as if attachments in order behind the document in which they were referenced by link.  Such documents will be treated in accordance with their originating location and collected, processed, and produced as governed by

the relevant procedures and protocols as outlined in this order for each document's file type and data source.

### 3.    Collection of Email Custodial ESI.

35.    To obtain email from a Designated ESI Custodian, each party must specifically request that emails be searched pursuant to the procedures and rules set forth herein.  Such requests may only be served after the conduct of an ESI Custodian Conference.  Email production requests shall identify the custodian, search terms, and time frame for the documents sought.

36.    Each Requesting Party shall limit its email production requests to a total of ten (10) Search Terms per custodian.  For the sake of clarity, a Requesting Party is not required to utilize the same ten search terms across all ESI Custodians designated for a specific Producing Party, but can vary the search terms by custodian.  A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term.  A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word.  Use of narrowing search criteria (*e.g.*, "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery.  To the extent another party has previously provided search terms for a particular ESI Custodian, the Requesting Party will in good faith consider limiting their search term requests to only those terms necessary to the discovery of additional relevant information.

37.    The parties are encouraged to address issues with proposed search terms which would clearly limit their efficacy (such as proposed terms that are commonly used in

organizational email footers, in titles and the like), as soon as practicable so as to allow the requesting party to reformulate their requests to address if needed.

38.     If the Producing Party objects to the Search Terms a provided by the Requesting Party, the Producing Party must identify its objections within five (5) business days of receiving the Search Terms or any objections are waived.

39.     Within five (5) business days of receiving any objections to the Search Terms, the parties shall meet and confer to attempt to reach agreement on the Search Terms to be used.  If agreement cannot be reached, the party objecting to the Search Terms may thereafter seek relief from the Court.

40.     Further, prior to producing any emails, each Producing Party shall provide the Requesting Party with a report disclosing, for each proposed search term, the number of records hit, the total document family members associated with the records hit, and the number of unique hits for each search term.  Thereafter, the producing and requesting party shall meet and confer, if necessary, to resolve any disagreement that may exist based on the application of the search terms (*e.g.*, should any search term result in an overly broad number of "hits").

41.     Each Producing Party will consider requests for the use of additional search terms for a given custodian, upon a showing a distinct need based on the size, complexity, and issues of this specific case.  However, a Requesting Party's insistence on the use of search terms beyond the limits agreed to by the parties herein, without good cause, shall be considered by the Court when determining whether to shift all reasonable costs incurred by the party opposing the use of such additional terms if it finds that the use of additional search terms is not reasonable under the circumstances and needs of this case.

42.     Nothing in this Order prevents a party from voluntarily producing the e-mails of its own custodians.  A party's voluntary production of e-mail from a custodian shall not operate as a waiver of any of the limitations on e-mail discovery set forth in this Section.

43.     In an effort to control costs and reduce the volume of ESI that is duplicative, the Parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies

44.     <u>Email Threading</u>.  In order to reduce the volume of entirely duplicative content within email threads, the Parties may utilize "email thread suppression."  As used in this agreement, email thread suppression means reducing duplicative production of email threads by producing the most recent email containing the thread of emails, as well as all attachments within the thread, and excluding emails constituting exact duplicates of emails within the produced string.  For purposes of this paragraph, only email messages in which the parent document, senders and recipients, and all attachments are exactly the same will be considered duplicates.  Duplicative emails suppressed under this paragraph need not be reflected on the Party's privilege log.  Format of Documents Produced

45.     Each Party shall bear their own costs for the production of ESI and Hard Copy Documents.  In the event, however, that a Party requests additional searches or the production of cumulative or repetitive information or information that otherwise imposes an undue burden or expense, the Producing Party may object.  Upon objection, the Parties shall work in good faith to resolve the issue.  In the event that the Parties are unable to resolve their differences, the Producing Party may move the Court for an Order shifting the cost of production of additional searches or

the production of cumulative or repetitive information or information that otherwise imposes an undue burden or expense to the Requesting Party.

### C.     Hard Copy Documents:.

46.     Hard copy documents shall be scanned and produced as single-page, 300 DPI TIFF images with an image load file (.OPT file or .LFP file) and a delimited database/metadata load file (.DAT or .CSV).  All documents are to be provided with per document searchable text (.TXT) files that contain full text extraction.  In the event a document is scanned into TIFF format, the text file should contain that document's OCR text. The documents should be logically unitized (i.e., distinct documents should not be merged into a single record, and a single document should not be split into multiple records) and should be produced in the order in which they are kept in the usual course of business. The text and image load files should indicate page breaks. The following fields should be included in the load files: "BATES BEG," "BATES END," "PAGES," "VOLUME," "CUSTODIAN," and "OCR,"  as referenced in **Appendix A** contained in a separate file.  The parties shall use their best efforts to unitize the Documents correctly.

47.     If an original hard copy document contains color to understand the meaning or content of the document, the document shall be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image.  Multi-page OCR text for each document shall also be provided.  The OCR software shall maximize text quality over process speed and shall not include bates numbers, unless redactions have been applied. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

**D.    Electronic Documents:**

48.    The Parties shall produce ESI in single-page, black and white, TIFF Group IV, 300 DPI TIFF images – however, spreadsheet type files, presentation-type files (*e.g.*, PowerPoint and Keynote files), audio, and video files, must be produced in native format.

49.    In addition to the foregoing, should any party wish to produce some or all documents in native format, the producing and receiving parties shall meet and confer in good faith to discuss the feasibility and acceptability of such a production in light of the requirements contained in this ESI Protocol and the needs of the litigation.

50.    Each production will include multi-page text files corresponding to the TIFF produced, and  Concordance .dat and Opticon image load files that indicate the beginning and ending production numbers of each document, the numerical range of any attached or embedded documents, the metadata identified in Table I, the confidentiality designation, if any, and the corresponding text file.  TIFFs will show any and all text and images which would be visible to the reader using the native software that created the document.  For example, TIFFs of e-mail messages should include the BCC line.  PowerPoint documents shall be processed with hidden slides and all speaker notes unhidden, and shall be processed to show both the slide and the speaker's notes on the TIFF image.

51.    Apart from documents produced in native format in accordance with the preceding paragraph, the parties shall not be required to produce documents in color.  However, the parties will accommodate reasonable requests for production of specific images in color.  Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business.

52.    If a document is produced in native, a single-page Bates stamped image slip sheet stating the document has been produced in native format and providing any Confidentiality Designation will also be provided.  Each native file should be named according to the Bates number and any Confidentiality Designation it has been assigned, which should be linked directly to its corresponding record, along with subsequent page data, in the load file using the NATIVE LINK field.  To the extent that either party believes that specific documents or classes of documents, not already identified within this protocol, should be produced in native format, the parties agree to meet and confer in good faith.

53.    Electronic Documents shall be produced with corresponding Metadata, as described in **Appendix A**, in a separate data file.

54.    Any Excel spreadsheet that requires redaction may be produced in TIFF-format only; a Party may also redact spreadsheets in Native Format by replacing privileged text with the designation "[**REDACTED**]" provided that doing so does not alter any other data in the spreadsheet, e.g., by altering formulas.  Any Excel spreadsheet that is produced in Native Format must have a corresponding placeholder TIFF image indicating its place in the production, its relationship to other documents in the production, and any other corresponding Metadata.

55.    To the extent that printouts or images of all or part of an Excel spreadsheet were also maintained in static form (e.g., as a PDF or a hard copy in a file), those documents will be produced as static images consistent with the specifications for Hard Copy Documents or Electronic Documents, whichever applies.

56.    **Miscellaneous Electronic Files**:  To the extent that an Electronic File otherwise cannot be reduced to TIFF images, e.g., audio or video files, the file shall be produced in Native Format with a corresponding placeholder TIFF image.

57.    **Databases**:  Certain types of databases are dynamic in nature and will often contain information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  These files are typically very large and would, if rendered to TIFF images completely, produce thousands of pages that would have little utility to a reviewer without the associated database.  The Producing Party may opt to produce relevant and responsive information from databases in an alternate form, such as a report or data table.  Alternatively, the Producing Party may opt to produce the data contained within a database in CSV or TXT file format, with a corresponding placeholder TIFF image.  To the extent that relevant and responsive reports or data tables derived from a database were also maintained in static form (e.g. as a PDF or a hard copy in a file), those documents will be produced as static images consistent with the specifications for Hard Copy Documents or Electronic Documents, whichever applies.

58.    **Searchable Text**:  The Parties agree that they will produce extracted text for correspondingly produced Electronic Documents.  All text files contained in the FULLTEXT field in Appendix A must be provided at the document level, provided in the same folder with corresponding images, and named to correspond to the Production ID.  For redacted documents or documents without extractable text, OCR Text will be provided for the non-redacted text.  All TIFF, PDF, or image-based filetypes in which text could not be extracted normally through standard ESI processing must be OCR processed prior to each party running search terms.

59.     With respect to Hard Copy Documents, the Parties agree to produce OCR Text for Hard-Copy Documents.

60.     **Metadata**:  For Electronic Documents, the Parties agree to produce the Metadata set forth in **Appendix A** in a .DAT file to the extent such Metadata is available, responsive, not privileged, and is already populated in the Party's normal course. The parties are not obligated to include metadata for any document that does not contain such metadata in the original or if it is not possible to automate the creation of metadata when the document is collected.  A party shall not be required to re-process materials previously processed in other litigation in order to generate metadata fields not previously created.  Instead, a party may elect to provide an overlay of original metadata in lieu of metadata reflecting the prior production.   The parties reserve their rights to object to any request for the creation of metadata for documents that do not contain metadata in the original.  To the extent provided, metadata produced should have the correct encoding to enable preservation of the documents' original language.

## V.     INADVERTENT PRODUCTION AND NON-WAIVER OF PROTECTION.

61.     Pursuant to Fed. R. Evid. 502(d) and the Court's Standard Protective Order, any Party's production of documents covered by an applicable privilege or protection shall not constitute a waiver of the privilege or protection with respect to those documents or the subject matter of those documents in this case or any other federal or state proceeding.  Nothing in this paragraph shall require a Party to produce documents that are protected from disclosure.  This paragraph shall be interpreted to provide the greatest protection allowed by Federal Rule of Evidence 502, or otherwise permitted by law.

62.     If a Party determines that it has produced a document that it believes is protected from disclosure (the "Clawback Documents"), the Producing Party shall notify the Receiving Party in writing and state why it believes the Clawback documents are protected from disclosure, and shall provide the Receiving Party with information sufficient to validate the asserted privilege(s). Upon receipt of such a notice, the Receiving Party shall not access, view, or disseminate the Clawback Documents, and shall not use or disseminate the information contained in those documents any purpose, regardless of whether the receiving Party disputes the claim of privilege. Within five (5) business days of receiving such a notice, the Receiving Party shall delete, sequester or return the documents identified in the notice, as well as all copies thereof, including the portions of any analyses, notes, memoranda, or other documents created by a receiving party that contain information contained in the Clawback Documents. At the request of the Producing Party, the Receiving Party shall confirm in writing that they have sequestered, returned, deleted, or destroyed the Clawback Documents and all other materials containing information contained in those documents.

63.     Any Receiving Party that disagrees that a Clawback Document is protected from disclosure shall request to meet and confer with the producing Party within seven (7) days of receiving notice from the Producing Party of the Clawback Documents in accordance with the preceding paragraph, and shall meet and confer in good faith with the Producing Party to resolve the disagreement. If the disagreement cannot be resolved, the Receiving Party may, subject to Fed. R. Civ. P. 37(a)(1), move the Court for an order compelling production of the Clawback Documents. A Receiving Party that files such a motion to compel (a "Challenging Party") shall do so within fourteen (14) days of reaching an impasse in the meet and confer process. The burden

of showing that the material is privileged and that its production was inadvertent shall be determined under applicable law, including Federal Rule of Evidence 502, but the fact that the Clawback Documents were previously produced shall not be considered by the Court in deciding whether to compel production. For the avoidance of doubt, a Challenging Party shall not access, view, or otherwise use the Clawback Documents or information contained in the Clawback Documents for purposes of the motion to compel, and shall only use information that is not subject to a privilege claim, such as the privilege log or information provided in the notice of inadvertent production, in connection with the dispute. A Challenging Party may request that the Court review the Clawback Documents in camera in connection with its motion to compel. If the Court determines that the Producing Party's privilege claim concerning the Clawback Documents is valid, the Challenging Party shall return, delete, or destroy any sequestered versions of the Clawback Documents, as well as any sequestered portions of any analyses, notes, memoranda, or other documents created by a Receiving Party that contain information contained in the Clawback Documents. A Receiving Party that does not file a motion to compel as provided in this paragraph shall return, delete, or destroy the Clawback Documents, and shall delete or destroy the portions of any analyses, notes, memoranda, or other documents created by a receiving Party that contain information contained in the Clawback Documents. Any Challenging Party or Receiving Party that is required to return, delete, or destroy the Clawback Documents or other materials pursuant to this paragraph shall confirm in writing that it has done so within seven (7) days of a request for such confirmation in writing from the Producing Party.

64.     If a Receiving Party discovers that it is in receipt of a document or ESI that it reasonably believes might contain privileged information, it shall notify the Producing Party, and identify the document in question, in a timely fashion following such discovery.

65.     Nothing contained herein is intended to or shall serve to limit a Party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

## VI.     OTHER ISSUES RELATING TO PRODUCTION

66.     <u>Family Relationships.</u>  Family relationships shall be maintained for all responsive records, unless a claim of privilege is being asserted.  Families refer to connected records, such as an email (the "parent") with its corresponding attachments (the "children").  If family relationships are severed due to privilege, the producing party shall indicate the document(s) withheld from the family on its privilege log.   For the avoidance of doubt, files that a producing party determines in good faith are "junk files" (such as logos or 0-byte files) shall be considered to be non-responsive and do not need to be produced.

67.     <u>Privilege Log.</u>  Except as noted below, for all responsive documents withheld from production on a claim of privilege, the parties shall provide a privilege log including the name of the individual from whom the privileged document emanated, the name of the individual(s) to whom the allegedly privileged document was directed, the date the document was created, the privilege claimed, and a description of the document that suffices to explain why the withholding party believes it is privileged.  For documents or document families, which are redacted or produced only in part, the producing party shall indicate the bates number of the produced portions or the corresponding Group Identifier to identify the broken familial relationship on the privilege

log.  The producing party shall retain a copy of the unredacted data within its possession and control and preserve it without modification, alteration, or addition to the metadata therewith. The Parties agree that they shall not be required to log privileged documents created after November 12, 2021.  The Parties shall meet and confer in good faith with respect to the appropriateness of any earlier cut-off dates.

68.    De-Duplication. The Parties will make reasonable efforts to de-duplicate Electronic Documents globally prior to production in a manner that does not break up document families (such as emails and attachments), but the original ESI shall be preserved.  For any document that is de-duplicated, the Producing Party shall provide metadata fields identifying all custodians possessing the document, and the file path for every version of the document.

69.    Embedded Objects.  Embedded documents in a format that can normally be extracted as standalone documents should be treated as part of a document family and produced in the same manner as other files in the family.  To the extent that an embedded document cannot be extracted as a separate document, the producing party may at its option either produce the parent in native format or produce a  TIFF slipsheet for the embedded document indicating it could not be processed.   To the extent that the parent is not produced, the requesting party may request the parent be produced in native, and the parties agree to meet and confer in good faith on such requests.

70.    Compressed Files Types.  Compressed file types (i.e. .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

71.    Redactions.  If documents that the parties have agreed to produce in native format need to be redacted, the producing party may produce the document in TIFF format in order to

effectuate the necessary redactions. To the extent reduction to TIFF is impractical or overly burdensome, the producing party may identify alternative means of implementing the redactions and the parties will meet and confer to find a mutually acceptable resolution. The producing party may remove the metadata from redacted documents prior to production, if such metadata will reveal information protected by an applicable privilege or the work product doctrine. To the extent a party receiving a redacted TIFF production objects to the TIFF production, the parties likewise will meet and confer regarding alternative methods to implement redactions while ensuring that proper formatting and usability are maintained.

72.     <u>Production Format/Encryption.</u>  Documents may be produced on physical media or by secure electronic transmission, *e.g.*, via FTA.  Productions shall be encrypted.

## VII.    APPLICATION OF THE FEDERAL RULES OF CIVIL PROCEDURE

73.     This agreement is not intended to function in lieu of Federal Rule 34 or any other applicable Federal Rule of Civil Procedure or Local Civil Rule.  The agreements set forth herein are without prejudice to the right of a Requesting Party to request additional searches or additional information about specific ESI if it can demonstrate that material, relevant, and responsive information that is not otherwise cumulative of information already produced can only be found through such additional efforts.  The Parties will negotiate in good faith with regard to whether such additional efforts are reasonably required, and will jointly seek assistance from the Court to resolve such disputes if an agreement cannot be reached.

**APPENDIX A**

MetaData Fields for Production

| FIELD NAME | DESCRIPTION |
|---|---|
| Author | Author of document, if identified in metadata |
| Bates Beg | Beginning bates number of document |
| Bates Beg Attach | Beginning bates number of attachment |
| Bates End | Ending bates number of document |
| Bates End Attach | Ending bates number of attachment |
| Custodian | Individual who had custody of the document |
| Date Created | Date document was created (Ex. 01/01/2001) |
| Time Created | Time document was created (Ex. 17:00). |
| Date Last Modified | Date the document was last modified (Ex. 01/01/2001) |
| Time Last Modified | Time the document was last modified (Ex. 17:00) |
| Date Received | Date email was received (Ex. 01/01/2001) |
| Time Received | Time email was sent (Ex. 17:00). |
| Date Sent | Date email was sent (Ex. 01/01/2001) |
| Time Sent | Time email was sent (Ex. 17:00) |
| Document Extension | File extension of document (.msg, .docx, .xlsx, etc.) |
| Email BCC | Blind-copied recipients of email |
| Email CC | Copied recipients of email |
| Email From | Sender of email |
| Email Subject | Subject line of email |
| Email To | Recipient of email |
| Extracted Text | Relative file path of text file |
| File Name | File name |
| Group Identifier | Unique number that groups parent email and attachments |
| Last Saved By | Individual whom last modified the document if identified in metadata |
| MD5 Hash | MD5 Hash Value |
| Native Link | Relative file path of native file |
| File Path | Original file path where file was kept (by the custodian) |
| Pages | Number of pages per document |

| All Custodians | List of all custodians who had custody of the document, separated by semicolon |
|---|---|
| Confidentiality | Confidentiality designation pursuant to the Protective Order associated with the record |
| Redactions | Yes/No field reflecting whether redactions have been applied |

IT IS SO ORDERED.

Dated this _____ day of _____, 2022.

BY THE COURT:

_____
U.S. MAGISTRATE JUDGE