**EXHIBIT 4**

LISA M. MARTENS (*Pro hac vice*)
lmartens@sheppardmullin.com
MARTIN R. BADER (*Pro hac vice*)
mbader@sheppardmullin.com
PATRICK McGILL (*Pro hac vice*)
pmcgill@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
Telephone:    858.720.8900
Facsimile:    858.509.3691

Nathan D. Thomas (USB #119650)
Elizabeth M. Butler (USB #13658)
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah  84111
Telephone:  (801) 536-1234
nthomas@parsonsbehle.com
ebutler@parsonsbehle.com

*Attorneys for Defendant BlendJet Inc.*

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **BLENDTEC INC.**, a Utah corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>**BLENDJET INC.**, a Delaware corporation,<br><br>    Defendant. | **DEFENDANT BLENDJET INC.'S FIRST SET OF DISCOVERY TO PLAINTIFF BLENDTEC, INC.**<br><br>Civil No. 2:21-cv-00668-TC-DBP<br><br>Judge Tena Campbell<br>Magistrate Judge Dustin B.Pead |

-1-

Pursuant to Federal Rules of Civil Procedure 26, 33, 34, and 36, and the Local Rules of the United States District Court Utah, Defendant BlendJet Inc., hereby requests that Plaintiff Blendtec, Inc., answer the following First Set of Discovery, separately and fully in writing, under oath and within thirty (30) days of service, in the manner prescribed by the Federal Rules of Civil Procedure.

## DEFINITIONS

The following definitions are applicable to terms employed herein.

1.      The term "Current Litigation" means and refers to the above-captioned action.

2.      The terms "Plaintiff," "Blendtec," "You," and "Your" means and refers to Plaintiff Blendtec, Inc., and includes any and all of its predecessors and successors in interest, any and all of its subsidiaries, affiliates and affiliated entities, and its partners, employees, agents, officers, directors, licensees, assignors, and representatives of the foregoing, and any other person acting or purporting to act on behalf of any of the foregoing.

3.      The terms "Defendant" and "BlendJet" means and refers to Defendant BlendJet Inc., and includes any and all of its predecessors and successors in interest, any and all of its subsidiaries, affiliates and affiliated entities, and its partners, employees, agents, officers, directors, licensees, assignors, and representatives of the foregoing, and any other person acting or purporting to act on behalf of any of the foregoing.

4.      The term "Complaint" means and refers to the Complaint filed by Blendtec in the above-captioned action on November 12, 2021 (Dkt. 2).

5.      The term "Blendtec word mark" means and refers to the BLENDTEC mark, as registered with the USPTO, and bearing U.S. Reg. No. 2,431,060.

6.      The term "Blendtec logo" means and refers to the design mark registered with the USPTO, and bearing U.S. Reg. No. 4,050,765.

7.      The term "<u>Blendtec Marks</u>" means and refers to the Blendtec word mark and logo, together.

8.      The term "<u>BlendJet word mark</u>" means and refers to the BLENDJET mark, as registered with the USPTO, and bearing U.S. Reg. No. 5,750,510.

9.      The term "<u>BlendJet logo</u>" means and refers to the design mark registered with the USPTO, and bearing U.S. Reg. No. 5,950,040.

10.      The term "<u>BlendJet Marks</u>" means and refers to the BlendJet word mark and logo, together.

11.      The term "<u>Blendfresh</u>" means and refers to third party Blendfresh, LLC, and includes any and all of its predecessors and successors in interest, any and all of its subsidiaries, affiliates and affiliated entities, and its partners, employees, agents, officers, directors, licensees, assignors, and representatives of the foregoing, and any other person acting or purporting to act on behalf of any of the foregoing.

12.      The term "<u>Blendid</u>" means and refers to third party 6d Bytes, Inc. (d/b/a "Blendid"), and includes any and all of its predecessors and successors in interest, any and all of its subsidiaries, affiliates and affiliated entities, and its partners, employees, agents, officers, directors, licensees, assignors, and representatives of the foregoing, and any other person acting or purporting to act on behalf of any of the foregoing.

13.      "<u>Person</u>" or "<u>persons</u>" means and refers to human beings, associations, organizations, companies, corporations, partnerships, joint ventures, and other legal entities, and the actions of a person shall include the actions of the person's predecessors in interest, successors in interest, subsidiaries, affiliated entities, joint venturers, members, partners, assignors, licensees, officers, directors, employees, agents, and representatives of the foregoing, and any other person or entity acting or purporting to act on behalf of any of the foregoing.

14.    "Thing(s)" means any tangible item, and shall be construed as broadly as possible under the Federal Rules of Civil Procedure.

15.    "Agreement" means any contract, transaction, license, or other arrangement of any kind, whether conditional, executed, executory, express, or implied, and whether oral or written, in which rights are granted or obligations are assumed. The term "agreement" shall encompass completed, actual, contemplated, or attempted agreements or renewals of agreements.

16.    "And" and "or" shall each be construed disjunctively or conjunctively as necessary in order to bring within the scope of the request all responses that might otherwise be construed to be outside its scope.

17.    "Any" shall be construed to include the word "all," and "all" shall be construed to include the word "any" as necessary in order to bring within the scope of the request all responses that might otherwise be construed to be outside its scope.

18.    "Each" shall be construed to include the word "every," and "every" shall be construed to include the word "each" as necessary in order to bring within the scope of the request all responses that might otherwise be construed to be outside its scope.

19.    "Concerning" means relating to, referring to, describing, evidencing, embodying, comprising, or constituting and is construed in the broadest sense to require the production of all documents which contain or comprise any communication (including representations, requests, demands and the like) referred to and documents that discuss, mention, or pertain to the subject matter of the request.

20.    "Include" or "including" means including but not limited to and should not be read to limit the scope of any particular request, but merely as illustrative of some information that would be responsive.

21.    The terms "relate" and "refer" are used in their broadest possible sense and include all matters comprising, constituting, containing, concerning, evidencing, embodying, reflecting, involving, discussing, describing, analyzing, identifying, stating, referring to, dealing with, supporting, tending to support, refuting, tending to refute, rebutting, tending to rebut, or in any way pertaining to, for each request whichever definition makes the request most inclusive.

22.    "Identify" means:

a.    As to a document, state (i) the date(s) of its creation, (ii) the full name(s) of its author(s), (iii) the full name(s) of its signer(s), (iv) the full name(s) its recipient(s), (v) a detailed description of its contents, and (vi) the full name(s), address(es), and telephone number(s) of the person(s) or entity(ies) presently possessing it;

b.    As to a human being, state his or her current (i) full name, (ii) business address (or if not available home address), (iii) telephone number, (iv) employer, (v) job title, (vi) dates working for current employer, and (vii) general job duties; and

c.    As to associations, organizations, companies, corporations, partnerships, or joint ventures, state its current (i) full name, (ii) address of its principal place of business (or if not available last known address of its principal place of business), and (iii) officers, directors, members, or partners by their names.

23.    The term "date" shall mean the exact day, month, and year, if ascertainable; and if not ascertainable, the closest approximation that can be made by means of relationship to other events, locations, or matters.

24.    As used herein, the singular form of a noun or a pronoun shall be considered to include within its meaning the plural form of a noun or a pronoun so used, and vice versa; the use of the masculine form of a pronoun shall be considered to include also within its meaning the

-5-

feminine form of the pronoun so used, and vice versa; the use of any tense of any verb shall be considered to include within its meaning all other tenses of the verb so used.

25.     Any pronoun shall be construed to refer to the masculine, feminine, or neuter gender as in each case is most appropriate.

## INSTRUCTIONS

1.     These discovery requests relate to documents and information in your possession, custody, or control, or in the possession, custody, or control of your agents, servants, employees, present and former attorneys, and any other person acting, purporting to act, or who has acted, on your behalf.

2.     If a document responsive to a request was, but no longer is, in your possession, custody, or control, state precisely what disposition was made of it (including its present location and the person(s) who possesses or controls it) and identify the name and address of the person(s) who authorized or ordered such disposition.  If a document responsive to a request was, but no longer is, in your possession, custody, or control, because it was destroyed, state precisely the circumstances surrounding its destruction and identify the name and address of the person(s) who has personal knowledge of such destruction.

3.     Documents produced in response to these requests should be produced as they are kept in the usual course of business and should be organized and labeled to correspond with the categories in the request.  Documents should be produced in electronic format.  Unless otherwise specified in a request, the deliverable format should contain load files, namely, ".dat" files, ".opt" and branded "PDF" images.

4.     For each document responsive to these requests that are withheld under a claim of privilege or work product immunity, provide a statement setting forth as to each document:

(a)     the name and title of the author(s);

(b)     the name and title of each person to whom the document was addressed;

(c)     the name and title of each person who received a copy of the document;

(d)     the date of the document;

(e)     a brief description of the nature and subject matter of the document;

(f)     the nature of the claimed privilege or immunity; and

(g)     for each document or thing withheld under a claim attorney work product, also state whether the document or thing was prepared in anticipation of litigation or for trial.

5.     If any portion of a document or thing is responsive to a request, the entire document or thing should be produced, with any privileged material – if any – redacted.

6.     You are requested to answer each interrogatory set forth below separately and completely in writing under oath.  The answer to an interrogatory shall not be supplied by referring to the answer to another interrogatory unless the answer to the interrogatory being referred to supplies a complete and accurate answer to the interrogatory it ostensibly answers in full.

7.     Each response to an interrogatory is to be signed and verified by the person making it, and the objections signed by the attorney making them, as required by Federal Rule of Civil Procedure 33(b).

8.     If you answer any of the interrogatories by reference to records from which the answer may be derived or ascertained, Plaintiff is requested to comply with the requirements of Federal Rule of Civil Procedure 33(d).

9.     In the event that you object to any request or interrogatory on the ground that it is overbroad and/or unduly burdensome for any reason, respond to that request as narrowed to the least extent necessary, in your judgment, to render it not overbroad/unduly burdensome and state

specifically the extent to which you have narrowed that request for purposes of your response. For the removal of doubt, by giving this instruction, no waiver of any right to compel Plaintiff to respond to the full scope of any request is intended.

10.    Similarly, if a request for admission cannot be admitted to in full, you shall admit to the extent possible, rewording the response as needed to capture the extent to which you can admit the request for admission.

11.    In the event that you object to any request or interrogatory on the ground that it is vague and/or ambiguous, identify the particular words, terms or phrases that are asserted to make such request vague and/or ambiguous and specify the meaning actually attributed to you by such words for purposes of your response thereto.

12.    Unless otherwise noted, these requests are not limited in temporal or geographical scope.

13.    Pursuant to Federal Rule of Civil Procedure 26(e), these requests and interrogatories are continuing in nature.  You must promptly provide, by way of supplementary productions or responses, any additional documents and things that come into your possession, custody, or control at any time during the Current Litigation.  In each instance where you supplement your productions or responses, you must also identify when you first became aware, and if different, when you first came into possession, custody, or control of the newly produced documents and things.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Describe in detail any and all of Blendtec's efforts to police, enforce, and/or defend the Blendtec Marks, including by identifying all persons and marks against which it has enforced, or attempted to enforce, the Blendtec Marks and the outcome of those efforts.

**INTERROGATORY NO. 2:**

Identify the individuals who have or had primary responsibility for the registration, maintenance, policing, and protection of the Blendtec Marks, and describe their respective roles and responsibilities in detail.

**INTERROGATORY NO. 3:**

Identify and describe in detail all Blendtec products sold, offered for sale, marketed, created, or advertised in connection with the Blendtec Marks, from 2017 to the present, including by providing the yearly U.S. sales volume, revenue, cost and profit information for each product identified as well as identifying the two persons most knowledgeable about such regarding the requested information.

**INTERROGATORY NO. 4:**

Identify and describe all advertising, marketing, or promotional activities through which Blendtec has advertised, marketed, or promoted, or intends to advertise, market, or promote the products identified in response to Interrogatory No. 3, including but not limited to internet, radio, television, newspapers, periodicals, publications, circulars, catalogs, data sheets, newsletters, brochures, handbills, outdoor advertising, and/or any other means of promotion, as well as the two persons most knowledgeable about such activities.

**INTERROGATORY NO. 5:**

Identify all channels of commerce through which Blendtec has sold products under the Blendtec Marks, from 2017 to the present – including, but not limited to, online and retail sales channels – and state the date that it began selling such products through each of those channels.

**INTERROGATORY NO. 6:**

Describe in detail the demographics (*e.g.*, sex, age, income, etc.), classes, and/or types of consumers to whom Blendtec markets and sells for each of the products and services identified in response to Interrogatory No. 3, including by identifying any market research or other analysis supporting that description.

**INTERROGATORY NO. 7:**

Describe in detail all facts and circumstances surrounding Blendtec's first awareness of the BlendJet Marks, including the date and nature of how Blendtec first became aware of those Marks.

**INTERROGATORY NO. 8:**

Describe in detail all actions taken by Blendtec relating to or as a result of its awareness of the existence and/or use of the BlendJet Marks, including but limited to by providing the dates and persons involved in any such actions.

**INTERROGATORY NO. 9:**

Identify and describe in detail all evidence supporting Blendtec's contention that the existence and/or use of the BlendJet Marks creates or created a likelihood of confusion with the Blendtec Marks.

**INTERROGATORY NO. 10:**

Identify and describe in detail any and all instances in which Blendtec has received requests, inquiries, or statements from any person Blendtec contends was actually confused as to

whether there is or was some relationship, association, or affiliation between the BlendJet Marks, BlendJet, and/or BlendJet's products or services associated with the BlendJet Marks, on one hand, and the Blendtec Marks, Blendtec, and/or Blendtec's products or services associated with the Blendtec Marks, on the other hand.

**INTERROGATORY NO. 11:**

Identify and describe in detail any and all investigations, surveys, public opinion polls, or any other form of consumer research that Blendtec has undertaken – or contracted with a third party to undertake – in an attempt to demonstrate that there is a likelihood of confusion between the Blendtec Marks and the BlendJet Marks, including by describing in detail the results of any such research activity.

**INTERROGATORY NO. 12:**

Describe with particularity the circumstances surrounding Blendtec's pre-suit determination that the BlendJet Marks are allegedly confusingly similar to the Blendtec Marks, and Blendtec's subsequent decision to initiate the Current Litigation, including by identifying the persons most knowledgeable about those circumstances.

**INTERROGATORY NO. 13:**

Describe in detail all facts and circumstances related to the relationship between Blendtec and any other companies or brands utilizing the word "blend" in their corporate names or trademarks (such as Blendfresh and Blendid), including but not limited to by identifying any agreements or memorandums of understanding between the companies, joint ventures or collaborations, and/or marketing or promotional relationships, as well as the persons most knowledgeable about those relationships.

**INTERROGATORY NO. 14:**

Describe in detail the factual and legal bases for your contention that BlendJet "committed acts of infringement in willful and flagrant disregard," as alleged in Paragraph 51 of the Complaint, including by identifying all documents and/or other evidence that support that contention.

**INTERROGATORY NO. 15:**

Identify and describe in detail any and all challenges to the validity, enforceability, or proper scope of the Blendtec Marks by any third parties, regardless of whether such challenges or allegations were raised internally, in court, or in any other manner.

**INTERROGATORY NO. 16:**

Describe in detail the legal and factual bases for your contention that the Blendtec Marks are "famous," as that term is defined under § 43 of the Lanham Act, 15 U.S.C. 1125(c), including, but not limited to, by identifying each class of goods in which one or both of the Blendtec Marks is allegedly "famous," and by identifying any evidence that supports the aforementioned claim to "fame" (such as surveys or other market research).

**REQUESTS FOR PRODUCTION OF DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 1**:

Documents sufficient to identify Blendtec's ownership structure, including all parent companies and subsidiaries, from 2017 to the present.

**REQUEST FOR PRODUCTION NO. 2:**

Blendtec's financial statements, including cash flow statements, profit and loss statements, income statements, balance sheets, financial ledgers, and related materials, from 2017 through the present.

**REQUEST FOR PRODUCTION NO. 3:**

All documents that describe Blendtec's policies, guidelines, and/or procedures employed or practiced (or that ought to be employed or practiced) in the selection, maintenance, registration, and protection of its trademarks.

**REQUEST FOR PRODUCTION NO. 4:**

All documents relating to the evaluation, availability, and selection of the Blendtec Marks, including any trademark search or monitoring reports generated or commissioned in connection with those activities.

**REQUEST FOR PRODUCTION NO. 5:**

All documents relating to Blendtec's decision to apply for federal registration of the Blendtec Marks, and to the subsequent examination and registration of the Blendtec Marks.

**REQUEST FOR PRODUCTION NO. 6:**

All documents that comprise or refer to searches and monitoring reports that Blendtec has conducted or had conducted on its behalf in connection with any of the Blendtec Marks.

**REQUEST FOR PRODUCTION NO. 7:**

Documents sufficient to show the first date on which each of the Blendtec Marks were used in commerce, and in interstate commerce.

**REQUEST FOR PRODUCTION NO. 8:**

All documents that comprise or refer to surveys, focus groups, or market studies, or any other type of assessment that Blendtec has conducted, or that a third party has conducted on its behalf, in connection with the Blendtec Marks.

**REQUEST FOR PRODUCTION NO. 9:**

All documents that show, or tend to show, that the public recognizes the Blendtec Marks as a trademarks of Blendtec.

**REQUEST FOR PRODUCTION NO. 10:**

All documents that allegedly support Blendtec's claim that the Blendtec Marks are "famous," as alleged – for example – in Paragraphs 23 and 83 of the Complaint, and that they have been so since 2010.

**REQUEST FOR PRODUCTION NO. 11:**

All documents evidencing or related to any effort to police, enforce, and/or defend the Blendtec Marks, including but not limited to any and all cease and desist letters that Blendtec has sent or received in relation to the Blendtec Marks.

**REQUEST FOR PRODUCTION NO. 12:**

All documents evidencing or relating to any disputes that Blendtec has had with any third parties that relate to or reference the Blendtec Marks.

**REQUEST FOR PRODUCTION NO. 13:**

All documents evidencing or relating to any assignments, licenses, or other agreements of any type entered into by Blendtec that relate to or reference the Blendtec Marks.

BLENDJET'S FIRST SET OF DISCOVERY TO BLENDTEC

**REQUEST FOR PRODUCTION NO. 14:**

Documents sufficient to identify and describe each and every Blendtec product sold, offered for sale, marketed, or advertised to consumers under or in connection with the Blendtec Marks, from 2017 to the present, and to identify the dates on (or during) which each such product was offered for sale, sold, marketed, or advertised to consumers.

**REQUEST FOR PRODUCTION NO. 15:**

All documents that comprise or refer to surveys, focus groups, or market studies, or any other type of assessment that Blendtec has conducted, or that a third party has conducted on its behalf, to identify the target consumers and/or markets for the products sold under or in connection with the Blendtec Marks.

**REQUEST FOR PRODUCTION NO. 16:**

All documents relating to the actual and intended markets and/or channels of sale and distribution for each of the products sold under or in connection with the Blendtec Marks, from 2017 to the present.

**REQUEST FOR PRODUCTION NO. 17:**

All documents that identify any particular consumer group, demographic, or persons toward which any advertising, marketing, or promotional activities related to the products sold under or in connection with the Blendtec Marks are directed.

**REQUEST FOR PRODUCTION NO. 18:**

All advertising, marketing, or promotional materials through which Blendtec has advertised, marketed, or promoted the products sold under or in connection with the Blendtec Marks, from 2017 to the present, including but not limited to such materials published on the internet, radio, television, newspapers, periodicals, publications, circulars, catalogs, data sheets,

newsletters, brochures, handbills, outdoor advertising, and/or any other means of advertisement, marketing, or promotion.

**REQUEST FOR PRODUCTION NO. 19:**

All documents that identify the particular consumer group, demographic, or persons who have purchased (or are purchasing) the products sold under or in connection with the Blendtec Marks.

**REQUEST FOR PRODUCTION NO. 20:**

Documents sufficient to identify the retail stores in which Blendtec has sold or currently sells products under or in connection with the Blendtec Marks, from 2017 to the present, and the date(s) that it began selling such products through each of those stores.

**REQUEST FOR PRODUCTION NO. 21:**

Documents sufficient to show the pricing for all products sold under or in connection with the Blendtec Marks, from 2017 to the present.

**REQUEST FOR PRODUCTION NO. 22:**

Documents sufficient to show the number of units sold in the United States of all products sold under or in connection with the Blendtec Marks, from 2017 to the present, and Blendtec's quarterly revenues, costs, gross profits, and net profits related to the same.

**REQUEST FOR PRODUCTION NO. 23:**

Documents sufficient to show the quarterly advertising and promotional expenditures incurred by Blendtec related to all products sold or offered for sale under or in connection with the Blendtec Marks, from 2017 to the present.

**REQUEST FOR PRODUCTION NO. 24:**

All Google Ads reports and Google keyword reports showing paid advertisements using "BlendJet" or "Blendtec" as a keyword at any time that include at least the following: display

URL, final URL, the text of each such Google ad (*i.e.*, Headlines and Descriptions), ad group, impressions, interactions, average cost, conversions, and conversion rate.

**REQUEST FOR PRODUCTION NO. 25**:

Documents sufficient to identify all trade fairs, trade shows, trade exhibitions, and trade expos that Blendtec has attended, from 2017 to the present, or plans to attend in the future in connection with its sale of products bearing the Blendtec Marks.

**REQUEST FOR PRODUCTION NO. 26:**

All documents constituting analyses and/or studies of the present and future marketplace and competitive landscape related to any and all products sold under or in connection with the Blendtec Mark, whether conducted by Blendtec or by any third party on its behalf.

**REQUEST FOR PRODUCTION NO. 27:**

All documents constituting analyses and/or studies of specific products – or any class of products – that Blendtec regards as competing with any product sold under or in connection with the Blendtec Mark, whether conducted by Blendtec or by any third party on its behalf.

**REQUEST FOR PRODUCTION NO. 28:**

All documents relating to portable blenders, including any analyses, studies, customer surveys, and/or internal memoranda related to the market, competitive landscape, or features or functionalities related to portable blenders.

**REQUEST FOR PRODUCTION NO. 29:**

All documents relating to any comparison, study, research, or report related to the performance of any portable blender (including, but not limited to any BlendJet product) vis-à-vis traditional counter-top blenders, including Blendtec blenders.

**REQUEST FOR PRODUCTION NO. 30:**

All documents relating to the development, marketing, and competitive positioning of the Blendtec GO blender accessory, including but not limited to, any documentation evidencing or otherwise demonstrating that the Blendtec GO was developed to compete or actually competes with portable blender products.

**REQUEST FOR PRODUCTION NO. 31:**

All documents related to BlendJet, its products, customers, and the BlendJet Marks.

**REQUEST FOR PRODUCTION NO. 32:**

All documents evidencing or relating to Blendtec's first awareness of BlendJet, its products, and/or the BlendJet Marks.

**REQUEST FOR PRODUCTION NO. 33:**

All documents representing or relating to every instance in which Blendtec has received – from any actual or potential customer – any request, inquiry, or statement related to BlendJet, the BlendJet Marks, and/or BlendJet's products or services.

**REQUEST FOR PRODUCTION NO. 34:**

All documents allegedly evidencing or relating to alleged actual consumer confusion between the Blendtec Marks and BlendJet Marks.

**REQUEST FOR PRODUCTION NO. 35:**

All documents allegedly supporting Blendtec's contention that the existence and/or use of the BlendJet Marks creates or has created a likelihood of confusion with the Blendtec Marks.

**REQUEST FOR PRODUCTION NO. 36:**

All documents related to any relationship, agreements, or joint venture between Blendtec and any other entity with a corporate name or registered trademark that includes the word "blend," including but not limited to Blendfresh and Blendid.

**REQUEST FOR PRODUCTION NO. 37**:

All documents and communications related to Blendtec's decision to send a cease and desist letter to BlendJet, and to file the Complaint.

**REQUEST FOR PRODUCTION NO. 38**:

All documents reflecting any communication or discussion between Blendtec and any third party related to or concerning the Current Litigation.

**REQUEST FOR PRODUCTION NO. 39**:

All documents that allegedly support or refute Blendtec's claim for actual damages, under any claim enumerated in the Complaint.

**REQUEST FOR PRODUCTION NO. 40:**

All documents that allegedly support Blendtec's claim for treble damages under any claim enumerated in the Complaint, including but not limited to any documents that allegedly support Blendtec's contention that BlendJet "committed acts of infringement [of the Blendtec Marks] in willful and flagrant disregard," as alleged in Paragraph 51 of the Complaint.

**REQUEST FOR PRODUCTION NO. 41:**

All documents that allegedly support or refute Blendtec's claim for punitive damages, under any claim enumerated in the Complaint.

**REQUEST FOR PRODUCTION NO. 42:**

All documents that allegedly support or refute Blendtec's claim that it has suffered and will continue to suffer irreparable harm by and through BlendJet's use of the BlendJet Marks.

**REQUEST FOR PRODUCTION NO. 43:**

All documents identified, reviewed, relied upon, or considered in preparing Blendtec's responses to any interrogatory or other discovery request in the Current Litigation.

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**

Admit that Blendtec does not sell or otherwise market any cordless, rechargeable blender product, in connection with or in relation to the Blendtec Marks.

**REQUEST FOR ADMISSION NO. 2:**

Admit that Blendtec was aware of BlendJet's existence prior to March 30, 2019.

**REQUEST FOR ADMISSION NO. 3:**

Admit that Blendtec was aware of BlendJet's blender products prior to March 30, 2019.

**REQUEST FOR ADMISSION NO. 4:**

Admit that Blendtec was aware of BlendJet's use of the BlendJet Marks in connection with its blender products prior to March 30, 2019.


Dated: July 1, 2022

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By     _____/s/ Patrick McGill_____

LISA M. MARTENS
MARTIN R. BADER
PATRICK M. MCGILL
Attorneys for Defendant BlendJet Inc.

-1-

## <u>CERTIFICATE OF SERVICE</u>

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of San Diego, State of California. My business address is 12275 El Camino Real, Suite 100, San Diego, CA 92130.

On July 1, 2022, I caused to be served a true copy of **DEFENDANT BLENDJET INC.'S FIRST SET OF DISCOVERY TO PLAINTIFF BLENDTEC, INC.** on the interested parties in this matter as follows:

BY E-MAIL OR ELECTRONIC TRANSMISSION: I caused a copy of the document(s) to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

Brett Foster (#6089)
Grant Foster (#7202)
Tamara Kapaloski (#13471)
**DORSEY & WHITNEY LLP**
111 S. Main Street, Suite 2100
Salt Lake City, UT  84111
Telephone: (801) 933-7360
Facsimile:  (801) 933-7373
foster.brett@dorsey.com
foster.grant@dorsey.com
kapaloski.tammy@dorsey.com

*Attorneys for Plaintiff Blendtec, Inc.*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 1, 2022, at San Diego, California.

By:    _____*/s/ Patrick McGill*_____
                          Patrick McGill

-1-