IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BLENDTEC INC., a Utah corporation,<br><br>Plaintiff,<br><br>v.<br><br>BLENDJET, INC., a Delaware corporation,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:21-cv-668 TC DBP<br><br>District Judge Tena Campbell<br><br>Chief Magistrate Judge Dustin B. Pead |

Before the court are a series of motions to compel. (ECF No. 50, ECF No. 53, ECF No. 66, ECF No. 67, ECF No. 68, ECF No. 82.)  In each of them Plaintiff Blendtec Inc. is seeking to compel the production of certain materials. The court addresses each of the motions herein.

## BACKGROUND

The parties in this action both manufacture and sell blending machines. In 2010 Blendtec's corporate parent at the time, K-Tec, Inc., sought and received a registration from the USPTO in 2011 a trademark for a swirl design logo as pictured to use in connection with blenders.



Blendtec has used this mark in connection with its blenders and advertising on its website, and in other forums, such as social media platforms. The following is an example of its advertising on Instagram.



In approximately October 2017, Plaintiff alleges that Blendjet began using a swirl design in connection with its blenders. In May 2019, the USPTO issued a registration for Blendjet's mark and in June 2019, Blendjet filed an application to register a swirl design for its blenders. Blendjet uses the mark in its advertising as pictured.



An example of both companies marks from their respective websites is as follows:



Blendtec alleges consumer confusion between the marks and brings claims for trademark infringement under §32 of the Lanham Act, false designation under §43 of the Lanham Act,

unfair competition, trademark dilution, violations of certain Utah laws regarding trademarks and business practices, and requests that Blendjet's mark be cancelled under 15 U.S.C. § 1119.

The current dispute centers on discovery requests. At this juncture the parties appear incapable of cooperation and based on the record, they seem intent to engage in scorched earth litigation that is far too prevalent today. See, e.g., *Vicidiem, Inc. v. Christensen*, 2020 WL 5107636, at *7 (D. Utah Aug. 31, 2020) ("The prevalence of scorched earth litigation tactics and the no holds barred approach by counsel in this case, undermine the principles set forth in Rule 1 of the Federal Rules, that promote the 'just, speedy, and inexpensive determination of every action and proceeding.'" (quoting Fed. R. Civ. P. 1); *CGC Holding Co., LLC v. Hutchens*, No. 11-CV-01012-RBJ-KLM, 2017 WL 11542433, at *3 (D. Colo. Dec. 18, 2017) ("The case set new records for me in terms of motions, hearings, orders, appeals, and scorched earth litigation."); *Utley v. Wray*, 2007 WL 2703094, at *2 (D. Kan. Sept. 14, 2007) ("large numbers of requests for admission may also be part of a "scorched earth" discovery strategy designed to overwhelm an opponent, particularly where the requests are of marginal relevance")

## LEGAL STANDARDS

Federal Rule of Civil Procedure 26(b)(1) authorizes discovery of

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1) (2021). Courts broadly construe relevance, and a discovery request is considered if there is, "any possibility" that the information sought may be relevant to the claim or defense of any party. *See, e.g., Sheldon v. Vermonty*, 204 F.R.D. 679, 689–90 (D. Kan. 2001).

All discovery, however, is subject to the proportionality limitations imposed by Rule 26. Therefore, while the court may order discovery of any matter relevant to the issues involved in the action, there are limits. For example, a "party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). The Federal Rules of Civil Procedure also permit a court to restrict or preclude discovery, when justice requires, to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. *See* Fed. R. Civ. P. 26(c).

Also, of importance here in helping ascertain relevance is the key inquiry in a trademark infringement case – the likelihood of confusion between two similar marks. The Lanham Act provides that one party infringes another's trademark when it uses a similar mark in commerce and "such use is likely to cause confusion." 15 U.S.C. § 1114. The Tenth Circuit has identified six factors that serve as a guide for evaluating the likelihood of confusion:

1. the degree of similarity between the marks;
2. the intent of the alleged infringer in adopting its mark;
3. evidence of actual confusion;
4. the relation in use and the manner of marketing between the goods or services marketed by the competing parties;
5. the degree of care likely to be exercised by purchasers; and
6. the strength or weakness of the marks.

*See Team Tires Plus, Ltd. v. Tires Plus, Inc.*, 394 F.3d 831, 832–33 (10th Cir. 2005). The list of factors is not exclusive, and the primary focus is still on whether the consumer is "'likely to be

deceived or confused by the similarity of the marks.'" *Id.* at 833 (quoting *Heartsprings, Inc. v. Heartspring, Inc.*, 143 F.3d 550, 554 (10th Cir. 1988)).

## DISCUSSION

### I.     The June 22, 2022, Discovery Requests

Blendtec first moves to compel responses to its June 22, 2022, discovery requests. These requests include *inter alia*:[1]

  2. Produce all Communications and Documents related to Blendtec, Blendtec's products, Blendtec's customers, and Blendtec's Trademarks.

  3. Produce all Communications and Documents related to your creation, design, selection, and adoption of Blendjet's Trademarks, including any marketing, business, competitive or financial analyses related to Blendjet's Trademarks conducted by you or on your behalf.

  4. Produce all Communications and Documents related to any investigation, clearance, trademark search, or other inquiry conducted by you or on your behalf concerning the proposal to use, availability of, attempt to register, registration, or use of your Blendjet's Trademarks.

  5. Produce any trademark search or clearance report regarding the Blendjet Trademarks.

  11. Produce all Communications and Documents related to and things concerning your analyses of the market(s) in which you compete, including without limitation, competitive analyses.

  13. Produce all Communications and Documents regarding your marketing and advertising strategy or plan under Blendjet's Trademarks.

  14. Produce all Communications and Documents related to marketing or business plans for goods sold under Blendjet's Trademarks.

  22. Produce all Communications and Documents related to any allegation in Blendtec's Complaint, including documents that support the denial of any allegation in Blendtec's Complaint.

---

[1] The court sets forth a representative sample of the requests. The reader wishing to see the request in full is directed to Plaintiff's motion and its exhibits.

>   23. Produce all Communications and Documents related to or that support each of the affirmative defenses set forth in your Answer.
>
>   26. Produce all your annual financial statements, including cash flow statements, profit and loss statements, income statements, balance sheets, financial ledgers, and related materials from the time you began promoting products under your Blendjet's Trademarks through the present.

(ECF No. 50-1 p. 7-11.)

Blendtec notes that Blendjet claims its responsive document production is "substantially complete", yet only 28 substantive documents that have been produced. For example, Blendjet has failed to produce any internal documents dated before August 2019 despite using its trademark since 2017. Blendtec also argues Blendjet cannot claim discovery is ongoing and non-custodial ESI will start soon leading to additional materials being produced on a rolling basis. Blendtec takes issue with Blendjet's failure to produce "any documents supporting its denials/affirmative defenses" claiming it will produce those in the future. (ECF No. 50 p. 2.) And finally, Blendtec asserts it is entitled to financial statements.

In response, Blendjet cites to its production of "999 documents of non-custodial ESI" while noting Blendtec "has only produced 460 documents in total." (ECF No. 63 p. 2.) Blendjet reserves it rights to produce additional responsive information when it is discovered. Most importantly, Blendjet relies on the fact that the parties have not begun production of custodial ESI. Presumably once that begins there will be many more responsive documents. Finally, Blendjet avers that it has produced annual financial statements regarding its sales in the United States and there is no reason why it should be compelled to produce financial information for other parts of the world.

 Based on the information before it, the court is not persuaded that Blendjet has substantially completed production in response to these requests. The requests are not overbroad

or irrelevant thus they should be responded to. However, there is a likelihood that some of the responsive discovery remains in either custodial or non-custodial ESI as noted by Blendjet. As such, the court will not compel responses at this time. Blendjet is ORDERED to begin its production of ESI and Blendtec is ORDERED to review that information to determine its responsiveness. As such the court DENIES this motion WITHOUT PREJUDICE.

## II.     The Scope of Email Discovery

The parties disagree over the scope of ESI discovery. Blendtec seeks all responsive non-privileged emails based on its search terms. These include terms such as "Blendtec or Blend Tec", "swirl", "logo", "intellectual property", "trademark!", and "confus!". (ECF No. 53-1 p. 11-12.) Blendjet, by contrast, argues it is only obligated to produce non-privileged emails that are responsive to specific requests and "within the scope of discovery under Fed. R. Civ. P. 26." (ECF No. 64 p. 2.)

In a sense both parties are correct. As noted above discovery is limited by relevance and proportionality considerations. But, at this stage relevance is broadly construed and discovery need not be admissible to be discoverable. As is often the case in discovery disputes, one party seeks to define relevance in the broadest way possible while another seeks to limit it. The court is not persuaded that Blendjet may artificially impose its constraints of relevance on the case. The search terms are reasonable, and they relate to the claims at issue here, including Blendjet's own defenses. As such, the court agrees with Blendtec. Blendjet is ORDERED to comply with the requests and produce responsive emails within 45 days of the date of this order.

## III.    Request for Production Number 32

Request for Production Number 32 states:

> Produce all documents evidencing or related to any effort to police, enforce, and/or defend the Blendjet Marks, including but not limited to any and all cease

and desist letters or takedown requests that Blendjet has sent or received in relation to the Blendjet Marks.

(ECF No. 66-1 p. 6.)

Blendtec argues this Request should be answered as relevancy is broadly construed and discovery should be allowed ""unless it is clear that the information can have no possible bearing' on the claims or defense of a party." *VeroBlue Farms USA, Inc. v. Wulf*, No. 22-MC-00105-JWB-GEB, 2022 WL 2817612, at *4 (D. Kan. July 19, 2022) (quoting *Sheldon v. Vermonty*, 204 F.R.D. 679, 689-90 (D. Kan. 2001)). Blendjet disagrees arguing the distinctiveness analysis of Blendtec's marks is focused on its marks not on Blendjet's efforts to police, enforce, or defend its mark.

The court agrees that much of the distinctiveness analysis focuses on Blendtec's marks. *See Hornady Mfg. Co. v. Doubletap, Inc.*, 746 F.3d 995, 1007 (10th Cir. 2014) ("Likelihood of confusion depends *partly* on the senior mark's strength, i.e., its capacity to indicate the source of the goods with which it is used.") (emphasis added). However, Blendjet raised an affirmative defense that the claims in the Complaint are "barred, in whole or in part, on the basis that some or all of Plaintiff's Marks at issue are generic." (ECF No. 20 p. 21.) Thus, Blendjet's view of its marks, and whether they are distinctive or unique in the marketplace, directly impact its affirmative defense. If Blendjet seeks to enforce its mark as distinctive, then Blendtec may utilize such evidence to assert that it too has a distinctive mark. Blendjet's arguments that its efforts have no bearing on this defense is unpersuasive. Blendtec's motion is GRANTED. Blendjet is to respond within 45 days from the date of this order.

## IV. Request for Production Number 34

Request 34 seeks production of "all Documents related to the development of the Blendjet blender product." (ECF No. 67-1 p. 6.) Blendtec once again points to the broad

8

relevancy standard and Blendjet's affirmative defenses of laches and the statute of limitations as bases to order production. Blendtec further argues it is suffering reputational damage from customers that purchase Blendjet products, are unhappy, and attribute its production to Blendtec.

Blendjet objects to the request asserting it is overly broad, unduly burdensome, and seeks irrelevant information. Blendjet also objects to the phrases "all Documents", "development", and "blender products" asserting those terms are overly broad, vague, and undefined.

The court finds the initial overly broad, unduly burdensome, and relevancy objections improper under the Federal Rules because they lack specificity. Blendjet does not articulate the specific burden or how the request is irrelevant. Rule 34 imposes a specificity requirement when responding to a document request. The responding party must "state with specificity the grounds for objecting to the request." Fed. R. Civ. P. 34(b)(2)(B). The term "specificity" is undefined in the rules, but its customary meaning is: "The quality or fact of being specific in operation or effect." *Specificity*, Oxford English Dictionary. The word, "specific" means in relevant part, "Having a special determining quality; Peculiar to, characteristic of, something." *Specific*, Oxford English Dictionary. Thus, a "responding party's objections must have a "special determining quality" that is "peculiar to" or "characteristic of" the request to which the responding party is objecting." *Smash Tech., LLC v. Smash Sols., LLC*, 335 F.R.D. 438, 446 (D. Utah 2020). This court and other courts have rejected nonspecific objections like those made here. *See Smash Tech., LLC v. Smash Sols., LLC*, 335 F.R.D. at 447 (overruling all of the plaintiffs' boilerplate unspecific objections); *Liguria Foods, Inc. v. Griffith Laboratories, Inc.* 320 F.R.D. 168, 186-87 (N.D. Iowa 2017) (rejecting overly broad, burdensome, oppressive and irrelevant objections because they were not specific). In essence when an objecting party makes

no attempt to show specifically how the request is not relevant or how it is burdensome, but instead relies on the mere assertion that it is, that is not a successful objection. *See id.*

In contrast to the generalized unsupported objections that this court rejects, the court does commend Blendjet for specifically noting that certain terms are undefined by Blendtec. It is on this basis that the court ORDERS Blendtec to rewrite the request and define the terms Blendjet objects to. Blendtec notes that Blendjet has made a similar request for all documents relating to the development, marketing, and competitive positioning of Blendtec GO blender. Given the similar requests, the parties are to meet and confer and agree upon the definition for "development" as it relates to their requests.

Thus, currently the court overrules Blendjet's burdensome and relevancy objections. The court will not grant the motion and give the parties an opportunity to collaborate on a meaningful definition to the term development and provide an opportunity for Blendtec to define the other terms that Blendjet complains are vague.

## V.     Requests for Production 31, 33, 35, 36, and 37

Blendtec argues that Blendjet agreed to produce documents in response to these requests but has not done so. In opposition, Blendjet argues this motion is unwarranted because it did agree to produce documents and there is no disagreement regarding the scope of documentation. In fact, Blendjet has conducted a diligent search for non-custodial responsive documents and has produced what is available and it will continue to produce custodial documentation "on a rolling basis."

Blendjet's counsel signed its response and there is no reason for the court to not take counsel at their word that Blendjet "has conducted a reasonable and diligent search for non-custodial" responsive documents and such documents have been produced. (ECF No. 76 p. 2.)

Yet, it appears there is some discovery that is unreadable, such as certain emails. It also appears that the SEO reports have not been fully produced. Blendtec is to identify discovery that is unreadable and Blendjet is to provide new documents that are clearer and more readable. In addition, the SEO reports should be produced as agreed upon. So too, should sales information in response to RFP 35 for the relevant time period, along with documents Blendjet intends to offer as evidence in support of its defenses.

The fact that these discovery requests need court intervention is troubling because the parties reached agreement on their production. If information is missing, then the parties should have conducted a more thorough meet and confer. Based on the record, the meet and confer efforts were half-hearted at best. A meet and confer is not done simply in passing as part of other discussions. Such conduct does not fit within the spirit of the meet and confer requirements. *See Schulte v. Potter*, 218 F. App'x 703, 709, 2007 WL 196538, at *4 (10th Cir. 2007) ("The magistrate judge's order denying the motion to compel on the ground that Schulte did not comply with the meet-and-confer requirement was not an abuse of discretion."); *Nunes v. Rushton,* No. 2:14-CV-627, 2015 WL 4921292, at *2 (D. Utah Aug. 18, 2015) ("It is within the court's discretion to deny a motion to compel for failure to comply with the meet and confer requirements set forth in Rule 37 and corresponding local rules.").

The court condemns "sandbagging" and expects the parties to use their best efforts to fulfill their agreements. As such, based on the current record, the court GRANTS this motion. Blendjet is to fulfill its agreement and the parties are to cooperate in the production of discovery, which includes a meaningful meet and confer process.

VI.     **Requests for Production 41 and 42**

After discussions between the parties regarding relevance, Blendtec narrowed these discovery requests. As narrowed, Blendtec seeks:

> RFP 41: Produce all customer service emails or tickets related to quality issues, defects, or complaints in connection with the Blendjet Blender since 2017.
>
> RFP 42: Documents sufficient to identify the number and nature of warranty claims made in relation to Blendjet Blenders from 2017 to the present.

(ECF No. 82 p. 2.) Blendtec argues the comparative quality of the parties' products may lead to consumer confusion and warrants discovery. In support Blendtec cites to a case out of the Second Circuit, *Hormel Foods Corp. V. Jim Henson Productions, Inc.*, 73 F.3d 497 (2nd Cir. 1996). The *Hormel* court stated:

> The quality of [an alleged infringing] product can be relevant in two ways: (1) an inferior product may cause injury to the plaintiff trademark owner because people may think that the senior and junior products came from the same source; or (2) products of equal quality may tend to create confusion as to source because of this very similarity.

*Hormel Foods Corp.*, 73 F.3d at 505.

Blendtec urges the court to apply a similar analysis here, while Blendjet argues that comparative quality may be a factor in the Second Circuit's likelihood of confusion test, but it is not part of the Tenth Circuit's test. The key inquiry in a trademark infringement case is whether the consumer is "likely to be deceived or confused by the similarity of the marks." *Team Tires Plus*, 394 F.3d at 833. The Tenth Circuit has identified factors that serve as a guide for evaluating the likelihood of confusion. As noted above, these include factors such as "the degree of similarity between the marks", "the intent of the alleged infringer in adopting its mark", "evidence of actual confusion", or "the strength or weakness of the marks". *Team Tires Plus*, 394 F.3d at 832-33. In utilizing "multi-factor tests" in cases such as this one, the Tenth Circuit has

12

repeatedly emphasized that the lists of factors are not exhaustive, and that no single factor is dispositive. See *id.*; *see also*, *Universal Money Centers, Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1530 (10th Cir. 1994) (noting a list of factors is not exhaustive and in this particular case, "evidence of actual confusion and the strength or weakness of UMC's trademarks are two additional relevant factors."). In considering comparative quality, the *Hormel Foods* case relied on by Blendtec cited to another case from the Second Circuit *Nikon Inc. v. Ikon Corp.*, 987 F.2d 91 (2nd Cir. 1993). The Tenth Circuit has likewise favorably cited to this same case when considering other factors. *See Universal Money*, 22 F.3d at 1530. Thus, the Tenth Circuit's likelihood of confusion test is more flexible and less rigid than Blendjet suggests. Considering comparative quality is permissible in this case and such consideration supports both Blendtec's discovery requests and Blendjet's reciprocal discovery requests. The court further agrees that such discovery is relevant at this stage of the case to damages.

Accordingly, Blendtec's Motion to Compel documents responsive to RFP 41 and 42 is GRANTED.

### VII. Attorney's Fees

Both Blendtec and Blendjet make repeated requests for attorney's fees as part of the preceding motions. Federal Rule 37 provides a basis to award fees if a discovery motion is granted, or if the requested discovery is provided after a motion is filed. Fed. R. Civ. P. 37. Rule 37 also permits the court to require a movant to pay the party who opposed the motion its reasonable expenses if a motion is denied. Whether fees are granted by the court does depend on the circumstances, and if the circumstances make an award of expenses unjust, the court may decline to enter such an order awarding fees.

Here, the court finds the circumstances make an award of fees for either party unjust based on the conduct of the parties. The lack of cooperation between the parties undermines such requests and moves the line more toward considering sanctions under 28 U.S.C. § 1927 for unreasonable and vexatious multiplication of proceedings by the parties. *See, e.g., Roadway Express, Inc. v. Piper,* 447 U.S. 752, 755–57, 760, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) (observing a party's "uncooperative behavior" and "deliberate inaction in handling" a case leading to sanctions (internal quotation marks omitted)). All requests for attorney's fees are DENIED.

## ORDER

For the reasons set forth above the court

DENIES WITHOUT PREJUDICE Blendtec's Motion to compel responses to its June 22, 2022, discovery requests (ECF No. 50.);

GRANTS Blendtec's Motion regarding the scope of email discovery (ECF No. 53.);

GRANTS Blendtec's Motion for documents responsive to RFP 32 (ECF No. 66.);

DENIES WITHOUT PREJUDICE Blendtec's motion regarding RFP 34. (ECF No. 67.) The parties are to follow the court's direction in relation to this motion.

The Court further GRANTS Blendtec's Motion to Compel responses to RFPs 31, 33, 35, 36, and 37. (ECF No. 68.); and

GRANTS Blendtec's Motion to Compel responses to RFP 41 and 41. (ECF No. 82.)

All requests for attorney's fees are DENIED.

IT IS SO ORDERED.

DATED this 4 April 2023.

_____
Dustin B. Pead
United States Magistrate Judge