Brett Foster (#6089)
Grant Foster (#7202)
Tamara Kapaloski (#13471)
**DORSEY & WHITNEY LLP**
111 S. Main Street, Suite 2100
Salt Lake City, UT 84111
Telephone: (801) 933-7360
Facsimile:  (801) 933-7373
foster.brett@dorsey.com
foster.grant@dorsey.com
kapaloski.tammy@dorsey.com

*Attorneys for Plaintiff Blendtec Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **BLENDTEC INC.**, a Utah corporation,<br><br>Plaintiff,<br><br>vs.<br><br>**BLENDJET INC.**, a Delaware corporation,<br><br>Defendant. | **BLENDTEC'S MOTION TO ENFORCE THE PROTECTIVE ORDER, TO DISQUALIFY PATRICK MCGILL AND SHEPPARD MULLIN, AND FOR ATTORNEYS' FEES**<br><br>Civil No. 2:21-cv-00668-TC-DBP<br><br>Judge Tena Campbell<br>Magistrate Judge Dustin B. Pead<br><br>**[REDACTED VERSION FOR PUBLIC FILING]** |

Plaintiff Blendtec Inc. ("Blendtec") hereby respectfully submits this Motion to Enforce the Protective Order, to Disqualify Patrick McGill and Sheppard Mullin, and for Attorneys' Fees.

# INTRODUCTION

Blendtec recently discovered that Blendjet's lead counsel, Patrick McGill ("McGill"), ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and has a long history as a Blendjet insider. Blendjet has even represented to third parties *during the course of this lawsuit* that McGill is Blendjet's "▓▓▓▓▓▓▓▓▓▓▓," while doggedly concealing this from Blendtec. Despite numerous instances when Blendjet and McGill unquestionably had a duty of disclosure during the 17-month history of this case, including in response to express inquiries, Blendjet intentionally obscured McGill's ▓▓▓▓▓▓▓▓▓▓ legal role with Blendjet. As a result, McGill has had unfettered access for many months to a treasure trove of Blendtec's highly sensitive AEO information to which he is not entitled under the letter or spirit of the Standard Protective Order ("SPO"). In addition, because McGill concealed his role, Blendtec did not designate him as an ESI Custodian for purposes of email discovery when it certainly would have had Blendtec not been kept in the dark. After uncovering clues of what Blendjet worked so hard to conceal, Blendtec was forced to issue subpoenas seeking information related to McGill's undisclosed role at Blendjet. Even then, Blendjet and its counsel have refused to comply with the subpoenas and continue to conceal information that they have a duty to disclose. Although the Court cannot completely un-ring the bell on McGill's improper access to Blendtec's AEO information, it can enforce the SPO moving forward, disqualify McGill and Sheppard Mullin ("SM"), and award Blendtec its attorneys' fees to mitigate the prejudice to Blendtec.

# BACKGROUND

Blendtec filed this trademark infringement suit on November 12, 2021. ECF 1. The Court's SPO governs. ECF 25 at 4. When McGill, an associate attorney at SM at the time, filed his *pro hac vice* application on December 30, 2021, he certified that he had "read and will comply with

1

the Utah Rules of Professional Conduct and the Utah Standards of Professionalism and Civility." ECF 10. McGill has taken the lead role in representing Blendjet. Kapaloski Decl. ("Decl.") at ¶5.

I. **Blendjet Falsely Led Blendtec To Believe That Blendjet Did Not Have Counsel Prior To Commencement Of This Lawsuit**

In the early stages of this case, Blendtec was lead to believe that Blendjet did not have counsel prior to engaging SM in connection with this lawsuit in November 2021. *Id*. at ¶3. For instance, in a July 29, 2022, interrogatory response, Blendjet represented that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id*. at ¶7.

On August 22, 2022, Blendtec sought to modify the SPO so that its General Counsel could view AEO information. *Id*. at ¶8. McGill, on behalf of Blendjet, refused, stating that Blendjet did not have General Counsel and permitting Blendtec's General Counsel to view Blendjet's AEO information would harm Blendjet. *Id*. McGill did not disclose the fact that just three months before Blendtec sought to modify the SPO, Blendjet's CEO certified to a third party that McGill was Blendjet's "▮▮▮▮▮▮▮▮▮▮." Exh. 17 to Decl.

On September 21, 2022, Blendjet served a copy of the SPO Disclosure Agreement executed by Blendjet CEO Ryan Pamplin ("Pamplin") "per Paragraph 3(a) of the [SPO]." *Id*. at ¶9. Blendtec immediately objected on the ground that "an individual with an ownership interest in a party" should not be permitted to view AEO information. *Id*. McGill did not disclose his own ownership interest in Blendjet. *Id*. at ¶9; Exh. 4 to Decl.

On September 29, 2022, Blendjet declined to produce a privilege log, representing that it "is not presently withholding any responsive documentation (or portions of any documentation) on the basis of an applicable privilege." *Id*. at ¶10. Blendjet repeated that representation on December 28, 2022. *Id*. at ¶¶13-14. Blendtec had no reason to doubt Blendjet's representations,

and assumed Blendjet did not have counsel prior to November 12, 2021.[1]

The ESI Protocol ordered that the parties "shall, ***in good faith***, meet and confer . . . in an effort to identify custodians." ECF 30, 33 at ¶¶30. On November 4, 2022, during custodian conferral, Blendtec expressly asked Blendjet to identify all persons that have provided services or functions related to Blendjet's intellectual property or brand strategy since Blendjet's founding. Decl. at ¶11. McGill disclosed only that Jordan Carlson served as Blendjet's "Intellectual Property Specialist" since August 2019 and that Pamplin "is responsible for trademark and other IP issues in concert with outside counsel." *Id*. at ¶12 (emphasis added). Based on this, Blendtec designated Jordan Carlson and Pamplin as Blendjet ESI Custodians. *Id*.

The deadline to serve written discovery was January 23, 2023. *Id*. at ¶15. Blendjet produced no documents prior to that time disclosing that McGill (or any other lawyer) had any relationship with Blendjet prior to this action. *Id*. at ¶16.[2] Based on this, and Blendjet's representations, Blendtec had no reason to suspect anything different. *Id*. at ¶¶17-18.

## II.   McGill Has Served As Blendjet's "General Counsel" For Years

On February 8, 2023, McGill filed with the Court notice that he had left SM to start McGill & Co. and provided his new address to the Court. ECF 65; *Id*. at ¶21. On February 10 and February 24, Blendjet served emails totaling around 38,000 pages. *Id*. at ¶22. While reviewing these emails in late February, Blendtec was very surprised to discover that McGill had a role at Blendjet prior to this case in what appears to be an employment/in-house capacity. *Id*. at ¶23. From at least

---

[1] Privileged documents post-dating November 12, 2021, the date Blendtec filed this lawsuit, need not be logged. *See* ECF 25 at 4; ECF 33, ¶67. To date, Blendjet has not provided a privilege log.

[2] Blendjet produced just 3,708 pages prior to the January 23 deadline. *Id*. at ¶16. Since the January 23 deadline, Blendjet has produced 357,993 pages of ESI. *Id*. at n.2.

3

February 2019 through January 2020, McGill used a "███████████████". *Id*. at ¶¶24-26. During that time, McGill appears to have worked as Blendjet's general counsel, including on intellectual property issues. *Id*. In a February 2019 email, Pamplin discussed intellectual property infringement strategy and copied "███████████████" at McGill's "███████████████ ███████". *Id*. at ¶24. In March of 2019, McGill negotiated, including from his Blendjet email address, an agreement with a ███████████████████████████████ ███████." *Id*. at ¶25. Thus, McGill fell directly within Blendtec's unequivocal request for the identity of "any person(s) employed by Blendjet (since its founding) to provide services and/or functions related to intellectual property or brand protection and strategy," but Blendjet failed to disclose him in violation of ¶30 of the ESI Protocol. *Id*. at ¶¶11-12.

Even after McGill became associated with SM, Blendjet continued to refer to McGill as "███████████" and as part of Blendjet's "███████████." *Id*. at ¶27.³ On May 27, 2022, ***during the pendency of this lawsuit***, Pamplin certified to a third party that McGill is Blendjet's "███████████." *Id*. at ¶29. While investigating further, Blendtec discovered that Pamplin regards McGill as his "legal advisor" and "confidant" that "will never let [him] down." *Id*. at ¶31. In an August 2020 post, McGill represented that Pamplin called him "asking advice related to his then-new consumer electronics venture, Blendjet," and that McGill "eagerly signed on to the [Blendjet] ride" and is "part of Blendjet's success" as a "close advisor[] and partner[]" to Pamplin. *Id*. at ¶32. Blendjet concealed all of this from Blendtec until after the January 23 deadline.

---

³ Blendjet uses a ███████████████████████████████. *Id*. at ¶30. Blendjet has refused to disclose the names of persons with access to this email, even though "names of lawyers . . . are not privileged." *Greenfield v. Newman*, 2019 WL 6877727, at *3 (D. Kan. 2019). Blendtec suspects McGill has access to this email, but related discovery has been blocked. Decl. at ¶30.

### III. Blendtec Attempted To Take Discovery Related To The Facts Blendjet Concealed, But Blendjet Stonewalled And Refused

Within days of this discovery, Blendtec provided notice that it would subpoena McGill for information related to his role at Blendjet. *Id*. at ¶33. Blendjet stated that it would move for a protective order. *Id*. at ¶34. During meet-and-confer, Blendjet represented that it had already produced all non-privileged documents. *Id*. at ¶¶38. As a result, Blendtec conditionally withdrew the subpoena and asked Blendjet to identify the documents it claims to have produced. *Id*. at ¶39-41. Blendjet's representation was false, and it never responded to Blendtec's request to identify the documents. *Id*. at ¶42. As a result, Blendtec reissued notice of the subpoenas and asked Blendjet's counsel to accept service. *Id*. at ¶45. Because Blendjet never responded to Blendtec's request to accept service, Blendtec was forced to attempt formal service, and learned that the address of McGill's new firm that McGill provided to Blendtec and the Court is a UPS store where service is not possible. *Id*. at ¶45-48. After much delay, Blendjet, McGill, and SM finally responded to the subpoenas and refused to produce even a single document. *Id*. at ¶51.

On March 6 and again on March 14, Blendtec advised Blendjet that it suspected McGill owns a stake in Blendjet. *Id*. at ¶¶38, 43. Blendjet remained silent. *Id*. ¶44. On April 24, 2023, while reviewing a document that Blendjet produced on March 31st, Blendtec discovered that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *Id*. ¶53. He ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Exh. 29 to Decl.

### ARGUMENT

### I. The Court Should Enter An Order Enforcing The SPO By Prohibiting McGill All Access To AEO Information

Generally, courts decide "an individual's access to confidential information under a

5

protective order ***before*** the individual received said information." *Mynette Techs. v. US*, 163 Fed. Cl. 733, 757 (Fed. Cl. 2022). In those routine cases, determinations of whether a protective order should bar an attorney's access to information are made on a counsel-by-counsel basis and the Court focuses on the risk of inadvertent disclosure and weighs that risk against the potential that the protective order may impair the other parties' ability to prosecute or defend its claims. *US Steel Corp. v. US*, 730 F.2d 1465, 1468 (Fed. Cir. 1984). However, where, as here, "the ship has long since sailed," and an attorney failed to disclose his relationship with a party ***before*** he received protected information, the Court may "exercise its broad discretion and draft a remedy accordingly." *Mynette*, 163 Fed. Cl. at 758.

    A.    **Blendjet Intentionally Misled Blendtec**

Blendjet had multiple opportunities to disclose McGill's ownership stake in and role with Blendjet, but chose not to do so: (1) in August 2022, Blendjet refused to modify the SPO such that each party's General Counsel could view AEO documents but failed to disclose that Pamplin holds McGill out as Blendjet's "General Counsel" (Decl. ¶¶8, 29); (2) in September 2022, when Blendtec objected to Blendjet's attempt to disclose AEO information to Pamplin on the ground that "an individual with an ownership interest in a party" should not be permitted to view AEO information, Blendjet failed to disclose McGill's ownership interest in Blendjet (*id*. ¶¶9, 53); (3) in November 2022, when expressly asked during ESI custodian meet-and-confer, Blendjet failed to disclose that McGill has provided intellectual property services to Blendjet (*id*., ¶¶11-12, 24-25); (4) in early March 2023, after discovering McGill's in-house role at Blendjet, Blendtec attempted to discover further information but Blendjet, McGill, and SM have refused to comply (i*d*. ¶¶33-52); and (5) twice during March 2023, Blendjet, SM, and McGill remained silent after Blendtec's counsel

expressed its suspicions that McGill owned a stake in Blendjet (*id*. ¶¶38, 43).

Based on these egregious misrepresentations by omission, Blendtec had no reason to suspect Blendjet's violations of the SPO or ESI Protocol until Blendtec's recent discoveries. Had the truth been disclosed, Blendtec would have sought to modify the SPO early in this lawsuit, would not have produced AEO documents directly to a Blendjet shareholder and its effective acting General Counsel who has a direct line to Pamplin, and would have designated McGill as a Blendjet ESI Custodian.[4] But, Blendtec was intentionally kept in the dark. Even now, the complete picture remains unknown because Blendtec's discovery attempts have been refused.

### B. McGill Is Not Qualified To Receive AEO Information Under The SPO

"Information that has been designated as . . . CONFIDENTIAL INFORMATION – ATTORNEYS EYES ONLY – <u>shall be disclosed by the receiving party **only to Qualified Recipients**</u>. . . . All [such] information <u>shall be carefully maintained so as to **preclude access by persons who are not qualified to receive such information**</u>." SPO at ¶5 (emphasis added). SPO Paragraph 6(a) sets forth the "Qualified Recipients" that are entitled to AEO information. Of relevance, only "outside counsel of record" is entitled to AEO information. "In-house counsel" and "representatives, officers, or employees of a party" are expressly denied access to AEO information and may view only Confidential Information. *Id*. ¶6(b).

McGill's label as "outside counsel" does not control. "Whether an unacceptable opportunity for inadvertent disclosure exists . . . must be determined . . . by the facts on a counsel-by-counsel basis, and cannot be determined solely by giving controlling weight to the classification of counsel as in-house rather than retained." *Modern Font Applications v. Alaska Airlines*, 2021

---

[4] Blendjet designated Blendtec's General Counsel as an ESI Custodian. *Id*. at ¶12.

WL 364189, at *5 (D. Utah 2021) (citing *U.S. Steel Corp..*, 730 F.2d 1465). Setting aside the label of "outside counsel," as the law requires, it is clear based on the limited information that Blendtec has available to it, that McGill is effectively a Blendjet representative for purposes of the SPO.[5]

McGill used a ▓▓▓▓▓▓▓▓ from at least February of 2019 through January of 2020. *Id*. at ¶¶24-26. Throughout this time, Blendjet repeatedly referred to him as "▓▓▓▓". *Id*. at ¶26. Even after he became associated with SM, Blendjet still held McGill out as part of its "▓▓▓▓▓" and its "▓▓▓▓" *Id*. at ¶28. **During the course of this litigation**, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓." *Id*. at ¶29. Pamplin considers McGill his "confidant" that will "never let [him] down." *Id*. at ¶31. McGill considers himself "part of Blendjet's success" and a "close advisor[] and partner[]" to Pamplin. *Id*. at ¶32. McGill is also ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Exh. 29 to Decl.

As a Blendjet owner, its acting "General Counsel," and a "close advisor" and "partner" to Pamplin, McGill is not an AEO Qualified Recipient under the letter or spirit of the SPO. *See Field Turf USA v. Sports Constr. Group,* 2007 WL 4412855, at *7 (N.D. Ohio 2007) (modifying definition of "outside counsel" in protective order to "preclude disclosure of all information designated as 'attorneys eyes only' to any . . . member [owner] of" defendant); *Definitive Holdings, v. Powerteq*, 2019 WL 6682395, at *2 (D. Utah 2019) (where individual had "partial ownership of Plaintiff, the risk of either misusing confidential information or inadvertent disclosure is too high" to qualify as a technical advisor). The risk of disclosure here by McGill to his "partner,"

---

[5] Based on the limited production on the issue, it appears that McGill is Blendjet's acting general counsel. Prior to filing this motion, Blendtec attempted to discover the full extent of McGill's role, but Blendjet, McGill, and SM stonewalled. Given the history of concealment, Blendtec should not be expected to simply take McGill's word that he is not Blendjet's acting general counsel.

8

Pamplin, who believes McGill will "never let him down," is too great.

The potential harm from McGill's access to Blendtec's AEO is great. Blendtec and Blendjet are direct competitors. AEO protection is designed to ensure that a competitor's decision makers or their advisors ***do not have access to a party's AEO***. Here, Blendjet's General Counsel and one of its few owners, has had full access to Blendtec's AEO information throughout this case, including Blendtec's financial position and statements, sales history, marketing plans, strategy, customers, and research and development files, among many other things. Decl., ¶54. McGill has conceded that disclosing AEO information to respective general counsel would cause harm. *Id*. at ¶8. A party's right to choose counsel has limits. This case pits direct competitors in the blending industry against each other. Both have produced their most proprietary and secret information that should not be in the hands of a competitor. Blendjet did not have the right to retain its own General Counsel and an owner of the company to represent it (and then to conceal that).

The **Court should *immediately enforce the SPO* by denying McGill access to and any use or disclosure of Blendtec's AEO information** (including participating in depositions). This will not unduly prejudice Blendjet as it has other qualified counsel, *i.e*., Parsons Behle.

II.   **The Court Should Disqualify McGill And SM For Their Deliberate Court Order And Ethical Rule Violations And Should Award Blendtec its Fees**

"Rule 16 outlines the court's authority to impose sanctions for the violation of pre-trial orders." *Mynette*, 163 Fed. Cl. at 746. "Protective orders are . . . pre-trial orders." *Id*. The ESI Protocol is also a pre-trial order. *See* ECF 30, 33 ("IT IS SO ORDERED"). Available sanctions include those authorized by Rule 37(b), which provides "an array of sanctions designed to discourage discovery abuse and to encourage the full disclosure of information prior to trial." *Mynette*, 163 Fed. Cl. at 746. "The Court also has the inherent power to sanction attorneys and

9

parties before it for contempt and abusive litigation practices" including the power to "assess attorneys' fees for acting in bad faith." *Field Turf*, 2007 WL 4412855, at *16. "[D]isqualification of counsel is [also] an appropriate sanction for a breach of ethical duties." *Id*. at *17.

The Court should disqualify McGill. McGill violated the letter and spirit of the SPO and ESI Protocol. *See Biocore Med. Techs. v. Hamid Khosrowashahi*, 1998 WL 919126, at *5 (D. Kan. 1998) (disqualifying attorney for violating protective order). McGill has compounded his violations by refusing related discovery. McGill's conduct also violates Utah Rules of Professional Conduct 3.3, 3.4, 4.1, and 8.4. "[D]isqualification of counsel is an appropriate sanction for a breach of ethical duties." *Field Turf,* 2007 WL 4412855 (disqualifying an attorney and his law firm after attorney concealed information regarding his ownership interest in defendant). *See also Mynette*, 136 Fed. Cl. at 759 (failing to disclose retained counsel's relationship with plaintiff during protective order negotiations violated ethical rules).[6]

The Court should also disqualify SM as it is not without fault. SM was copied on all correspondence related to the misconduct set forth herein. Decl. at ¶5. Even assuming that SM did not fully know about McGill's role, which is highly unlikely, it had a duty to discover and disclose the truth in light of the circumstances presented here. It failed to do so. Finally, the Court should also award Blendtec its attorneys' fees related to this motion and its related motions to compel compliance with Blendtec's subpoenas filed herewith.

For these reasons, the Court should grant this motion and enter an order as requested herein.

---

[6] Revocation of McGill's *pro hac vice* admission is also appropriate. *See US v. Nolen,* 472 F.3d 362, 375 (5th Cir. 2006). McGill is also subject to disqualification under the advocate as witness rule, as he has been legal advisor and confidant to Blendjet since its founding and will be a witness in this case. *See Commerce Commercial v. Miliken*, 2022 WL 17093650, at *3 (D. Utah 2022).

DATED this 2nd day of May, 2023.

DORSEY & WHITNEY LLP

/s/ *Tamara L. Kapaloski*
Brett Foster (#6089)
Grant Foster (#7202)
Tamara L. Kapaloski (#13471)

*Attorneys for Plaintiff Blendtec Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of May, 2023, a true and correct copy of the foregoing document was served on counsel of record via the Courts CM/ECF System which sent notice to counsel of record:

Martin R. Bader: mbader@sheppardmullin.com
Jesse A. Salen: jsalen@sheppardmullin.com
Patrick M. McGill: patrick@mcgillco.com
Nathan D. Thomas: nthomas@parsonsbehle.com
Elizabeth M. Butler: lbutler@parsonsbehle.com

                                                              */s/ Tamara L. Kapaloski*