Brett Foster (#6089)
Grant Foster (#7202)
Tamara Kapaloski (#13471)
**DORSEY & WHITNEY LLP**
111 S. Main Street, Suite 2100
Salt Lake City, UT 84111
Telephone: (801) 933-7360
Facsimile:  (801) 933-7373
foster.brett@dorsey.com
foster.grant@dorsey.com
kapaloski.tammy@dorsey.com

*Attorneys for Plaintiff Blendtec Inc.*

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **BLENDTEC INC.**, a Utah corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>**BLENDJET INC.**, a Delaware corporation,<br><br>    Defendant. | **DECLARATION OF TAMARA KAPALOSKI IN SUPPORT OF BLENDTEC'S MOTIONS: (1) TO ENFORCE THE PROTECTIVE ORDER, TO DISQUALIFY PATRICK MCGILL AND SHEPPARD MULLIN, AND FOR ATTORNEYS' FEES; (2) TO COMPEL PATRICK MCGILL AND SHEPPARD MULLIN TO RESPOND TO BLENDTEC'S SUBPOENAS**<br><br>Civil No. 2:21-cv-00668-TC-DBP<br><br>Judge Tena Campbell<br>Magistrate Judge Dustin B. Pead<br><br>**[REDACTED VERSION FOR PUBLIC FILING]** |

I, TAMARA KAPALOSKI, declare as follows:

1.        I am an attorney at the law firm of Dorsey & Whitney LLP ("Dorsey"), counsel to

1.      I am an attorney at the law firm of Dorsey & Whitney LLP ("Dorsey"), counsel to Plaintiff Blendtec Inc. ("Blendtec") in the above-captioned action. I submit this declaration in support of three motions being filed by Blendtec: (1) Motion to Enforce the Protective Order, to Disqualify Patrick McGill and Sheppard Mullin, and for Attorneys' Fees; and (2) Motion to Compel Patrick McGill and Sheppard Mullin to Produce Documents Responsive to Blendtec's Subpoenas. I am fully familiar with the facts set forth in this declaration from personal knowledge or from documents that I have reviewed. If called as a witness, I could and would testify competently under oath to the facts contained herein.

I.      **Blendtec is Lead to Believe That Blendjet Did Not Have Counsel Prior to this Lawsuit.**

2.      Blendtec filed this lawsuit against Defendant Blendjet Inc. ("Blendjet") on November 12, 2022, asserting trademark infringement and related claims. *See* ECF 1. At that time, Dorsey also sent Blendjet a letter.

3.      On November 22, 2021, Sheppard Mullin responded to Blendtec's letter and stated that it "has been engaged to represent Blendjet" in "connection with the above-referenced action." *See* **Exhibit 1** (true and correct copies of the exhibits referenced herein are attached to this Declaration as set forth herein).

4.      On December 30, 2021, Patrick McGill, an associate attorney at Sheppard Mullin filed a motion for *pro hac vice* (ECF 10), which the Court granted (ECF 15).

5.      Since that time, Patrick McGill has taken the lead role in this case on behalf of Blendjet during all meet and confers, emails, and other correspondence between the attorneys, with the exception of the communications relating to the Patrick McGill subpoenas. Sheppard Mullin has been copied on all of the correspondence between counsel discussed herein.

6.      On February 25, 2022, the Court entered the Scheduling Order. ECF 25.  The Scheduling Order provides that "[t]he parties acknowledge and agree that the Court's Standard Protective Order presently applies and will continue to apply absent a modification to same by the Court. The parties reserve the right to seek amendment of such order by negotiation or by application to the court in the event a need arises." *Id*. at ¶2(h).

7.      On July 29, 2022, in response to Blendjet's Interrogatory No. 5, Blendjet represented that ███████████████████████████████████ ████████████████████████████████████ ████████ :



**Exhibit 2** at P. 8-9 (emphasis added). As Blendjet designated this response as CONFIDENTIAL under the Standard Protective Order, Blendtec must file this under seal.

8.      Based on Blendjet's substantial use of the ATTORNEYS EYES ONLY designation on its discovery responses and documents, on August 22, 2022, Blendtec sought to modify the standing protective order in the District of Utah to permit each party's general counsel access to

---

[1] Ryan Pamplin is Blendjet's co-founder and Chief Executive Officer.

AEO documents. In connection with that request, Blendtec sent Blendjet a proposed amended protective order that allowed each side's in-house counsel to view AEO documents. *See* **Exhibit 3**. During a telephonic meet-and-confer, Patrick McGill, acting as counsel for Blendjet, refused to modify the protective order on the grounds that Blendjet does not have general counsel and permitting Blendtec's general counsel to view Blendjet's AEO information would harm Blendjet.

9.      On September 21, 2022, Blendjet served Blendtec with a copy of the Disclosure Agreement to the Standard Protective Order executed by Blendjet CEO Ryan Pamplin "per Paragraph 3(a) of the" Standard Protective Order. **Exhibit 4** at p. 4. Blendtec immediately objected on the ground that "an individual with an ownership interest in a party" should not be permitted to view AEO information. *Id*. at p. 3. Although McGill expressed an interest in ensuring compliance with the protections provided by the SPO, ███████████████████████████ ██████. *Id*. at 1.

10.      On September 29, 2022, Blendjet declined to produce a privilege log based on its representation that it "is not presently withholding any responsive documentation (or portions of any documentation) on the basis of an applicable privilege." **Exhibit 5** at 1 (relevant excerpt).

11.      On November 4, 2022, during the parties' meet-and-confer related to the designation of each side's respective ESI custodians, Blendtec asked for information regarding persons providing any services or functions related to Blendjet's intellectual property:

> "Finally, we have an additional role/responsibility that we would like to explore in the context of potential Blendjet ESI Custodians. Please provide the names and dates of employment <u>for any person(s) employed by Blendjet (since its founding) to provide services and/or functions related to intellectual property or brand protection and strategy</u>."

**Exhibit 6** (emphasis added) (relevant excerpt; text that is not relevant to the issues before the Court have been redacted).

12.     Later that day, Patrick McGill responded by stating that:

"[T]he person at Blendjet who is responsible for IP protection activities at Blendjet is Jordan Carlson (whose title is "Intellectual Property Specialist"). Jordan mainly manages Blendjet's takedown program. Jordan started work with Blendjet in May 2019 as a customer service agent, and transitioned to her current IP specialist role in August 2019. Ryan Pamplin is responsible for trademark and other IP issues, in concert with outside legal counsel."

**Exhibit 7** (relevant excerpt). Based on McGill's representation, Blendtec designated Jordan Carlson and Pamplin as Blendjet ESI Custodians. Had McGill's role been disclosed, we would certainly have designated him as a Blendjet ESI Custodian. (Blendjet designated Blendtec's General Counsel as a Blendtec ESI Custodian.)

13.     On November 17, 2022, nearly two months after its first request for a privilege log, Blendtec again asked Blendjet to produce a privilege log. **Exhibit 8** (relevant excerpt).

14.     In response, on December 28, 2022, Blendjet again represented that it was not withholding documents as privileged. **Exhibit 9** (relevant excerpt).

15.     The deadline to serve written discovery in this case was January 23, 2023. *See* ECF 35 at 1. Although the Scheduling Order has been amended since that time, the last day to serve written discovery has not changed. *See* ECF 90 at 2.

16.     Blendjet produced 3,708 pages prior to January 23.[2] With the exception of a single Excel spreadsheet titled "███████████████████████," Blendjet produced no documents that mentioned or referenced "Patrick McGill" prior to the January 23 written discovery deadline. The ██████████████████████████████████████

██████████████████████████████████████████████████

---

[2] Since the January 23 deadline, Blendjet has produced 357,993 pages.

██ **Exhibit 10** at p. 3. At the time, Blendtec's counsel had no reason to believe that this reference

to "████████" might be to Blendjet's lawyer at Sheppard Mullin.

17.    No other documents produced by Blendjet prior to the January 23 deadline

suggested that either Patrick McGill or Sheppard Mullin had any role or engagement with Blendjet

prior to the engagement referenced in Sheppard Mullin's November 22, 2021 letter.

18.    Based on all of the foregoing representations and conduct by Blendjet and its

counsel, it appeared that Blendjet did not have counsel (either outside counsel or in-house counsel)

until after Blendtec filed its lawsuit in November 2021 and Blendjet engaged Sheppard Mullin in

connection with this litigation.

**II.    After the Deadline to Serve Written Discovery Expired, Blendjet Produces for the First Time Documents Revealing Previously Undisclosed Connections Between Patrick McGill and Blendjet.**

19.    Blendjet did not produce any documents in response to Blendtec's first set of ESI

Discovery Requests, which Blendtec served on November 7, 2022, until after the January 23

deadline.

20.    On February 1, 2023, just over one week after the January 23 deadline, Patrick

McGill sent notice to Dorsey that he had "transitioned his practice to a new entity (McGill & Co.)."

**Exhibit 11**.

21.    On February 8, 2023, Patrick McGill filed a Notice of Change of Address and Firm

Affiliation with the Court and requested that all "correspondence and pleadings" be directed to

Patrick McGill at the following address and email:

PATRICK McGILL (*Pro hac vice*)
patrick@mcgillco.com
MCGILL & CO., P.C.
5580 La Jolla Blvd, Suite 39
La Jolla, CA 92037
Tel: (619) 974-8886

*Attorney for Defendant BlendJet Inc.*

*See* ECF 65.

22.     On February 10 and February 24, Blendtec produced approximately 38,000 pages of emails from individual Blendjet ESI Custodians.[3]

23.     While reviewing Blendjet's February 10 and February 24 email productions, I was very surprised to discover that Patrick McGill held a role with Blendjet prior to this case—including what appears to be in an employment/in-house capacity—as this had never been disclosed, or even hinted at, by Blendjet or its counsel.

24.     For example, in its February 24th production, Blendjet produced an email from Ryan Pamplin, Blendjet's CEO, dated February 14, 2019. **Exhibit 12**. Mr. Pamplin's email, which has the subject line "█████████████████████," copied Patrick McGill at the following █████████████████████████████. *Id*. In his email, which is discussing issues related to intellectual property infringement, Mr. Pamplin states that:



*Id*. (emphasis added).

---

[3] On February 3, 2023, Blendtec produced for the first time documents that were responsive to Blendtec's first set of ESI Requests served on November 7, 2022. Blendjet's February 3rd production consisted almost entirely of customer service tickets from Zendesk, a Blendjet vendor.

25.     Also in its February 24th document production, Blendjet produced an email that Patrick McGill sent from a ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ in March of 2019. **Exhibit 13**. This email shows that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *Id.* According to Blendjet's July 29, 2022, interrogatory responses, Blendjet ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇." Exhibit 2 at p. 13.

26.     Patrick McGill continued to use his ▇▇▇▇▇▇▇▇▇▇ through at least January of 2020. *See* **Exhibit 14** at Jet60974 ("▇▇▇▇▇▇▇▇▇▇▇▇" in May 2019); **Exhibit 15** at Jet16867 (introducing "▇▇▇▇▇▇▇▇▇" in January 2020). (Blendjet produced Exhibit 14 on February 24 and Exhibit 15 on March 2.)

27.     At some point in time, Patrick McGill became associated with the law firm of Sheppard Mullin. Even after that time, however, Blendjet continued to refer to Patrick McGill as "▇▇▇▇▇▇▇" and as part of Blendjet's "▇▇."

28.     Blendjet's February 10th production included a presentation dated around October 26, 2020, that disclosed "▇▇▇▇▇▇▇" as part of Blendjet's "▇▇▇▇▇▇" and as Blendjet's ▇▇▇" **Exhibit 16**.

29.     Blendjet's February 10th production also included a proposed ▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See* **Exhibit 17** at JET14276 ▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇"). In the application, ▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇." *Id.* at JET14271.

30.     Blendjet's February 2023 productions also revealed that Blendjet uses a

"███████████████████████." We have attempted to take discovery regarding the individuals with access to that email address, but Blendjet, SM, and McGill have refused.

31.     On or about February 28, while further investigating Patrick McGill's connections with Blendjet, I reviewed Patrick McGill's LinkedIn profile. Attached as **Exhibit 18** is a true and correct copy of Mr. McGill's LinkedIn profile. Although Mr. McGill's LinkedIn profile does not disclose in the "Experience" section any work at Blendjet, Ryan Pamplin commented on his relationship with Mr. McGill in the following recommendation he published on Mr. McGill's LinkedIn profile around January of 2021:



*Id.* at p. 4.

32.     That same day, also on Patrick McGill's LinkedIn profile, I discovered the following recommendation that Mr. McGill published on August of 2020 about his relationship and work with Ryan Pamplin:



**Ryan Pamplin** ○
CEO of the Fastest Growing Blender Brand in the World
August 18, 2020, Patrick worked with Ryan but on different teams

I have worked with Ryan for over five years now - first as a colleague at Meta Company, and then in my role as outside legal counsel for BlendJet Inc. Ryan arrived at Meta like a whirlwind, immediately raising the company's brand and profile as a market innovator and leader. He achieved that success through a diversity of actions and initiatives that ranged from pitching Meta's technologies and vision to the true big shots of Silicon Valley's tech giants and VC firms, to negotiating the purchase of Meta's primary web domain via emoji. When Ryan called me asking advice related to his then-new consumer electronics venture, BlendJet, I eagerly signed on to the ride. It's been a wild one. BlendJet has blasted off, establishing a novel product category and building incredible consumer demand for its product portfolio from ground zero. BlendJet's success is a tribute to Ryan's (and his team's) ingenuity, doggedness, and willingness to intelligently question long-held assumptions and customs. I am grateful to be part of BlendJet's success, and one of Ryan's close advisors and partners.

**Exhibit 19** at 2.

### III. Based on Documents Produced in February 2023, Blendtec Noticed a Subpoena to Patrick McGill.

33.    On March 1, 2023, Blendtec served Blendjet's counsel (including Patrick McGill) with notice that Blendtec intended to issue a deposition and document subpoena to Patrick McGill. *See* **Exhibit 20** at p. 4. At that time, Blendtec asked Blendjet's counsel to accept service of the subpoena on behalf of Mr. McGill. *Id.*

34.    On March 4, 2023, Blendjet's counsel sent Blendtec notice that "Blendjet plans to file a motion for protective order" with respect to the deposition subpoena to Mr. McGill. *See* **Exhibit 20** at 4.

35.    In response, I provided Blendjet with a detailed explanation for the subpoena to Patrick McGill as follows:

We only recently became aware that Patrick has acted as Blendjet's long-time counsel, including as an employee of Blendjet, when reviewing Blendjet's February 10 and February 24 email productions. We believe that Blendjet attempted to conceal this from us. On September 29, 2022, for example, Patrick represented that Blendjet "is not presently withholding any responsive documentation (or portions of any documentation) on the basis of an applicable privilege," leading us to believe that Blendjet did not have counsel prior to Sheppard Mullin being retained to represent Blendjet in connection with this matter. We now know that, despite Patrick's September 29 representation, he has served as Blendjet's counsel essentially from Blendjet's founding. We also now know that Patrick held that position, not as outside legal counsel, but as an employee or representative of Blendjet and used a Blendjet.com email address at least since February of 2019. Based on the Court's recent decision, among other things, we do not believe that the Court will quash the deposition subpoena and will instead order Patrick to sit for a deposition and assert the privilege as appropriate on a question-by-question basis.

*See* **Exhibit 20** at 3.

36.     Blendtec offered that "if Patrick will agree to produce all non-privileged documents responsive to the subpoena and to provide a privilege log for any documents which he claims are privileged, we will agree to hold the deposition subpoena in abeyance until after we receive those documents." *Id*.

37.     We also noted that "based on your response below, it appears that you are authorized to accept service of the subpoena on behalf of Patrick, and we will assume that to be the case unless we hear otherwise from you." *Id*.

**IV.    Based on Blendjet's Representations that it had Produced All Documents Responsive to the Subpoena, Blendtec Agreed to Conditionally Withdraw the Subpoena.**

38.     Counsel for the parties held a telephonic meet and confer on March 6, 2023. During the call, Blendtec's counsel stated that we suspect that Patrick McGill may have an ownership stake in Blendjet. Blendjet's counsel did not confirm or deny this. Blendjet's counsel stated only that Patrick had a "contractor role" at Blendjet at one point. He did not provide any further detail.

39.     Following the call, I memorialized the agreement the parties' reached during the call:

> Based on your representations during today's call that: (1) Patrick McGill no longer has access to any blendjet.com email accounts, and (2) all non-privileged documents responsive to the 16 document requests in the subpoena to Patrick McGill have already been produced by Blendjet, we agree to withdraw our document subpoena and deposition subpoena to Patrick McGill at this time without prejudice. By the end of this week, please identify the documents upon which your second representation is based.

*Id*. at 2.

40.    Blendjet's counsel vaguely responded as follows:

> Thank you for confirming that Blendtec is withdrawing its subpoena to Mr. McGill. Just to be clear, with respect to number 2 in your email below, BlendJet's production of non-privileged responsive documents was, of course, subject to its other objections to the requests that were propounded on BlendJet and the ESI protocol that governs this case.

*Id*. at 1.

41.    I understood this ambiguous response to essentially mean that Blendjet may or may not be withholding documents it claims are responsive to the subpoena based on its objections to Blendtec's discovery requests and based on the ESI Protocol. I repeated my request that Blendjet provide bates numbers for the documents it claims to have produced that are responsive to the subpoena and requested that Blendjet clarify any objections upon which it was withholding documents:

> As requested below, by the end of this week, please identify by bates number the responsive non-privileged documents upon which your representation number 2 during today's call was based. In addition, please identify all documents that Blendjet is withholding based on its "other objections to the requests that were propounded on BlendJet and the ESI protocol that governs this case." As you are aware, we disagree that this is a proper basis upon which to withhold documents. In any event, you are required to disclose documents you are withholding on the basis of your objections, and you have not done so to date. Finally, please let us know when Blendjet will produce a privilege log.

*Id*. at 1.

42.    Blendjet never responded to this email.

43.    On March 14, I repeated that Blendtec had only very recently learned that "Patrick McGill has served as Blendjet's lawyer, essentially since its founding, including in an in-house capacity as Patrick used a Blendjet.com email address." **Exhibit 21** at p. 2. I advised Blendjet of

our belief that "this was intentionally concealed from us until after the deadline to serve written discovery and until after we had designated all Blendjet ESI custodians." *Id*. I also advised Blendjet that "[w]e also believe that Patrick McGill likely owns an ownership stake in Blendjet." *Id*.

44.    Blendjet never responded to this email or disputed the statements in the email.

**V.    Because Blendjet Failed to Identify the Documents Responsive to the McGill Subpoena that it Claims to Have Produced, Blendtec Reissued the Subpoena.**

45.    Based on Blendjet's failure to respond to our request that it identify the documents it claims to have produced that are responsive to the subpoena, on March 15, 2023, Blendtec served via email to Blendjet's counsel, including Patrick McGill, notice of Blendtec's intent to serve document subpoenas to Patrick McGill and Sheppard Mullin. **Exhibit 22**.  In that March 15th email, we requested that Blendjet's counsel "let us know if you will accept service of the subpoenas." *Id*. at 1. The subpoenas each requested that responsive documents be produced by April 10, 2023. *Id*. at 2.

46.    Blendjet's counsel never responded to our request that they accept service of the subpoenas.

**VI.    Blendtec Had to Attempt Formal Service of the Subpoenas and Discovered that the Address that Patrick McGill Provided to the Parties and the Court is a UPS Store.**

47.    As a result, on March 24, 2023, Blendtec was forced to engage process servers to formally serve the subpoenas on Patrick McGill and Sheppard Mullin.

48.    The process server attempted to serve Patrick McGill at the address he provided on the Notice of Change of Address and Firm Affiliation that he filed with the Court. *See* ECF No. 65. The process server was unable to serve Mr. McGill at that address, however, because that address is "a UPS store." **Exhibit 23**.

49.     The process server served Sheppard Mullin on March 24, and on March 28th Blendtec filed that proof of service. *See* ECF No. 92 (Proof of Service).

50.     On March 29, Patrick McGill stated that "we will accept service of the McGill subpoena as of today." **Exhibit 24**.

51.     At the request of Blendjet's counsel, Blendtec agreed to extend to April 21, 2023, the deadline for Patrick McGill and Sheppard Mullin to respond to the subpoenas.

52.     In their April 21 responses to the subpoenas, both Patrick McGill and Sheppard Mullin declined to produce any documents. **Exhibits 25** (Patrick McGill's Objections); **Exhibit 26** (Sheppard Mullin's Objections). Blendjet also served objections to both subpoenas and similarly refused to produce any documents. **Exhibit 27** (Blendjet's Objections to Patrick McGill Subpoena); **Exhibit 28** (Blendjet's Objections to Sheppard Mullin Subpoena).

**VII.    On March 31, Blendjet Produced a Document Disclosing that ██████████████ ██████████████.**

53.     On April 24, 2023, while reviewing documents that Blendjet produced on March 31, 2023, I discovered that ████████████████████████. *See* **Exhibit 29** at JET106554.

54.     Blendtec has produced a very substantial volume of highly sensitive AEO information to Blendjet (and unwittingly to its General Counsel and ████████), including Blendtec's financial position and statements, sales history, marketing plans and strategy, business strategy, customers, and research and development files, among many other things.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

DATED this 2nd day of May, 2023.

/s/ Tamara Kapaloski
Tamara Kapaloski

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 2nd day of May, 2023, a true and correct copy of the foregoing document was served on counsel of record via the Courts CM/ECF System which sent notice to counsel of record:

Martin R. Bader: mbader@sheppardmullin.com
Jesse A. Salen: jsalen@sheppardmullin.com
Patrick M. McGill: patrick@mcgillco.com
Nathan D. Thomas: nthomas@parsonsbehle.com
Elizabeth M. Butler: lbutler@parsonsbehle.com

*/s/ Tamara L. Kapaloski*