MARTIN R. BADER (*Pro hac vice*)
mbader@sheppardmullin.com
JESSE A. SALEN (*Pro hac vice*)
jsalen@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
Telephone:    858.720.8900

PATRICK McGILL (*Pro hac vice*)
patrick@mcgillco.com
MCGILL & CO., P.C.
5580 La Jolla Blvd, Suite 39
La Jolla, CA  92037
Tel: (619) 974-8886

Nathan D. Thomas (USB #11965)
Elizabeth M. Butler (USB #13658)
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah  84111
Telephone:  (801) 532-1234
nthomas@parsonsbehle.com
lbutler@parsonsbehle.com

*Attorneys for Defendant BlendJet Inc.*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| **BLENDTEC INC.**, a Utah corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>**BLENDJET INC.**, a Delaware corporation,<br><br>    Defendant. | **BLENDJET'S RESPONSE TO BLENDTEC'S MOTION TO ENFORCE THE PROTECTIVE ORDER, TO DISQUALIFY PATRICK MCGILL AND SHEPPARD MULLIN, AND FOR ATTORNEYS' FEES [DKT. 110]**<br><br>**[REDACTED VERSION]**<br><br>Civil No. 2:21-cv-00668-TC-DBP<br><br>Judge Tena Campbell<br>Magistrate Judge Dustin B. Pead |

## I. INTRODUCTION

Blendtec's Motion (ECF 110) makes misleading and incorrect accusations of alleged unethical behavior at BlendJet's counsel of record in this case, Patrick McGill and Sheppard Mullin ("SMRH"). Blendtec accuses BlendJet, McGill, and SMRH of violating the Standard Protective Order ("SPO"), the ESI Protocol, and the Utah Rules of Professional Conduct by "intentionally obscur[ing] McGill's ▮▮▮▮▮▮ and in-house legal role with Blendjet," which Blendtec contends provided McGill improper access to Blendtec AEO information. (Mot., 1.) None of this is true. McGill has never been BlendJet's inside counsel, nor has he ever had any involvement in competitive decision making for BlendJet. As such, he is qualified under the SPO to view AEO information, and does not pose an undue risk of "inadvertent disclosure." And, notably, Blendtec does *not* contend that McGill has, in fact, disclosed any such information. BlendJet also did not conceal McGill's ▮▮▮▮▮▮▮▮▮▮▮▮ (which is not relevant). Instead, BlendJet timely produced documents disclosing this information. Finally, to the extent Blendtec's allegations of misconduct could be chalked up to a misunderstanding, BlendJet offered to resolve those concerns through the meet and confer process. Blendtec refused, opting instead to rush to file this unfounded motion. (Bader Decl., ¶¶2-10, Ex. A.) It should be denied.

## II. BACKGROUND

**A.    BlendJet Adopts and Applies to Register its BLENDJET and Swirl Trademarks.**

This case is about BlendJet's use of its BLENDJET and swirl trademarks, which Blendtec alleges infringe Blendtec's trademarks. (ECF 1.) BlendJet's predecessor, Miramore Inc., applied to register the BLENDJET trademark on September 20, 2018. (Bader Decl., Ex. B.) BlendJet's CEO, Ryan Pamplin, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Pamplin Decl., ¶25.) ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ (Bader Decl., Exs. B, C.) ▮▮▮▮▮▮▮▮▮▮

-1-

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (McGill Decl., ¶¶16-18, 51; Pamplin Decl., ¶¶25-26.)

**B.     McGill has never been an employee, inside counsel, or decision maker at BlendJet.**

McGill is a member of the California and New York state bars, and is admitted *pro hac vice* to this Court. (McGill Decl., ¶¶2-3.) BlendJet contracted with McGill between January 29, 2019 and April 21, 2019 to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*Id*., ¶5, 19) During that time, BlendJet also engaged other lawyers, including Warner Norcross + Judd ▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓ Esplin & Associates, P.C. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and SMRH to advise on other matters. (Pamplin Decl., ¶4.) As an independent contractor, McGill was not a BlendJet employee, did not receive benefits, used his own tools to provide legal services, and serviced other clients. (McGill Decl., ¶¶9, 21, 24; Pamplin Decl., ¶¶7, 10, 12.) He never provided any non-legal services to BlendJet or engaged in pricing, product design, marketing strategy, or any other similar business decisions made in light of information about BlendJet's competitors. (McGill Decl., ¶¶10, 23; Pamplin Decl., ¶24.) Given that McGill was not, at that time, affiliated with a law firm, BlendJet provided him an email account. (McGill Decl., ¶25; Pamplin Decl., ¶¶19-22.) Under the contract, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓ (McGill Decl., ¶22, Ex. L.)

McGill was employed as an SMRH associate from April 22, 2019 until January 31, 2023, during which time SMRH continued to advise BlendJet on various matters, and eventually, to represent it in this lawsuit. (Bader Decl., Exs. E-G.) While at SMRH, in addition to managing dozens of matters for other clients, McGill worked on several matters for BlendJet, including defense of this litigation under the supervision of SMRH partner Martin Bader. (McGill Decl., ¶49; Bader Decl., ¶¶20-21.) During his employment with SMRH, McGill never provided non-

-2-

legal services to BlendJet or engaged in pricing, product design, marketing strategy, or any other similar business decisions related to competition. (McGill Decl., ¶33; Pamplin Decl., ¶24.) On occasion, BlendJet employees have mistakenly referred to McGill as "general counsel," even though that was not his title and he was not employed by BlendJet. (Pamplin Decl., ¶¶2, 23.) McGill has never been BlendJet's "general counsel." (*Id*.)

Effective February 1, 2023, BlendJet is represented by McGill's new law firm, McGill & Co. (McGill Decl., ¶39, Ex. M.) McGill still is not a BlendJet employee, does not receive benefits, works out of his home office, uses his own tools to provide services, and has several other clients. (*Id*., ¶¶42-45.) He does not provide non-legal services to BlendJet or engage in pricing, product design, marketing strategy, or any other similar competitive business decisions. (*Id*., ¶39.) ███████████████████████████████████████████

███████████████████████████████ (*Id*., ¶40.)

### III. ARGUMENT

**A.     Blendtec's Motion Should Be Rejected as Gamesmanship.**

The Court's Standard Protective Order ("SPO") determines qualification to receive information designated as CONFIDENTIAL INFORMATION – ATTORNEYS EYES ONLY ("AEO"). (ECF 25.) The SPO provides that "[o]utside counsel of record for the parties in this action" are qualified to receive AEO information. (SPO § 6(1)(a)(1).) McGill indisputably is, and at all relevant times has been, BlendJet's outside counsel. (McGill Decl., ¶¶8, 10, 12; Pamplin Decl., ¶15.) The Court should deny the motion for that reason alone.

Blendtec complains that McGill's "label as 'outside counsel' does not control" because BlendJet allegedly "chose not to" disclose McGill's ████████████████████████████ and because he has been mistakenly referred to by BlendJet employees as "general counsel." (Mot., 6.) Blendtec's accusation that BlendJet concealed anything is demonstrably false (Bader Decl.,

-3-

¶¶3, 24-40), and McGill's ▇▇▇▇▇▇▇ does not change his outside counsel status.

      1.     <u>McGill is and always has been BlendJet's outside counsel</u>.

McGill is not, and has never been, BlendJet's employee or inside counsel. In California (where BlendJet and McGill are located), courts apply the multifactor *Borello* test to determine whether an individual is an employee. *Salinas v. Cornwell Quality Tools Co.*, No. 5:19-cv-02275-FLA(SPx), 2022 WL 16735359, *8-11 (C.D. Cal. October 17, 2022). That test considers: (i) whether the individual controls the means of performing his work; (ii) whether the individual is engaged in a distinct occupation; (iii) the skill required; (iv) whether the individual supplies his own instrumentalities, tools, and work location; (v) the length of time for which the services are performed; (vi) whether the individual is paid by time or job; (vii) whether the work is part of the business of the principal; and (viii) whether the parties intend to create an employment relationship. *S. G. Borello & Sons, Inc. v. Dep't of Indus. Rels.*, 48 Cal. 3d 341, 350-51 (Cal. 1989). Each factor conclusively demonstrates that McGill was and is an independent contractor.

First, McGill is an attorney who has at all relevant times worked for a law firm, or was a solo practitioner where he unquestionably controlled the means of performing his own work. (McGill Decl., ¶¶19, 21, 28, 30, 49, 42.) Second, McGill generally supervises his own work, or works with other outside counsel at SMRH or Parsons Behle. (*Id*.) Third, McGill's legal occupation requires substantial skill and training, including admission to a state bar. (*Id*.) Fourth, BlendJet has never provided the instrumentalities, tools, or location for his services. (*Id*.) Fifth, McGill's services have always been provided pursuant to an engagement agreement for the provision of legal services. (*Id*., Exs. L, M.) Sixth, BlendJet has always paid McGill (or SMRH) for his services in accordance with their engagement agreements, but never provided benefits. (*Id*., ¶¶21, 29, 42.) Seventh, BlendJet does not offer legal services. And eighth, the parties did not intend for McGill to be an employee, evidenced by the fact that he has other clients. (*Id*.,

¶¶5-7, 43.) Under *Borello*, McGill is not, and has not been a BlendJet employee.

2. BlendJet did not conceal anything from Blendtec.

Blendtec accuses McGill, and BlendJet, of five specific "egregious misrepresentations by omission." Each of these accusations is demonstrably false. First, Blendtec accuses BlendJet of "refus[ing] to modify the SPO such that each party's General Counsel could view AEO documents" while "fail[ing] to disclose that Pamplin holds McGill out as BlendJet's 'General Counsel'." (Mot., 6.) Blendtec mischaracterizes the parties' negotiations. BlendJet's concern at the time was whether Blendtec's Chief Legal Office and Head of Compliance (who has been at Blendtec for over eight years) was a competitive decision maker. In contrast, BlendJet has never had inside counsel. Blendtec improperly inferred from BlendJet communications that the mistaken reference to McGill as "general counsel" somehow meant that McGill was BlendJet's inside counsel. He was and is not. And, even if, *arguendo*, he was *outside* general counsel to BlendJet, the SPO only bars "inside counsel" from seeing AEO information—not outside "general counsel" without competitive decision-making authority.

Second, Blendtec accuses BlendJet of "fail[ing] to disclose McGill's ▮▮▮▮▮ ▮▮▮▮▮" even though Blendtec "objected to Blendjet's attempt to disclose AEO information to Pamplin on the ground that 'an individual ▮▮▮▮▮▮▮▮▮▮ should not be permitted to view AEO information." (Mot., 6.) Blendtec misstates the record. BlendJet never intended or attempted to disclose AEO information to Pamplin. BlendJet expected to disclose CONFIDENTIAL (not AEO) information to him and interpreted the SPO as requiring Pamplin to sign the addendum under such circumstances. Further, Blendtec's objection was based on the qualifications for an individual to serve as a "technical advisor" under the SPO, not outside legal counsel. The case law cited by Blendtec from this Court dealt with that topic, not with a scenario in which legal counsel of record ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

-5-

Third, Blendtec accuses BlendJet of failing to disclose that McGill allegedly provided intellectual property services to BlendJet when identifying potential ESI Custodians. (Mot., 6.) That is also not true. Blendtec's counsel requested the names of "person(s) *employed* by Blendjet … to provide services and/or functions related to intellectual property or brand protection and strategy." (ECF 108, ¶¶11-12, Exs. 6-7.) BlendJet correctly identified ▮▮▮▮▮ as "responsible for IP protection activities." McGill was neither employed by BlendJet nor responsible for intellectual property or brand protection and strategy.[1]

Finally, Blendtec accuses BlendJet's counsel of "remaining silent after Blendtec's counsel expressed its suspicions that McGill ▮▮▮▮▮" Mot., 6-7.) This accusation is likewise misleading. BlendJet never hid the fact that McGill ▮▮▮▮▮ In fact, the information was produced by BlendJet in the normal course of discovery. (Bader Decl., ¶¶3, 30, 31.)

3. <u>McGill is qualified under and in compliance with the SPO</u>.

Blendtec contends McGill's ▮▮▮▮▮ and alleged status as BlendJet's in-house "general counsel" *per se* disqualifies him from receiving Blendtec's AEO information. That is simply not true. Instead, the Federal Circuit's decision in *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed.Cir.1984) controls. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992). In following *U.S. Steel*, this Court utilizes the "'competitive decision making' test when balancing risks and a person's inability to compartmentalize competitive information" when determining whether they are qualified to view AEO information

---

[1] Blendtec also accuses BlendJet, McGill, and SMRH of "refus[ing] to comply" with document subpoenas issued "after [Blendtec] discover[ed] McGill's in-house role at Blendjet[.]" (Mot., 6.) This accusation is based on the false contention that McGill had an "in-house role…."BlendJet's other reasons for objecting to Blendtec's 44 third-party discovery requests are explained in its response to Blendtec's improper motion to compel. (ECF 121.)

under the SPO. *Definitive Holdings, LLC v. Powerteq LLC*, No. 2:18-cv-00844-TS-DBP, 2019 WL 6682395, at *2 (2019) (internal citation omitted). The "analysis requires a careful and comprehensive inquiry into [] counsel's actual (not nominal) role in the affairs of the company, his association and relationship with those in the corporate hierarchy who are competitive decision makers, and any other factor that enhances the risk of inadvertent disclosure." *Catheter Connections, Inc. v. Ivera Med. Corp.*, No. 2:14-CV-70 TC, 2014 WL 3945880, at *2 (D. Utah Aug. 12, 2014). The test balances the attorney's role as inside or outside counsel, the extent to which the attorney is a competitive decisionmaker based on his or her "participation in pricing, product design, marketing or other decisions made in light of similar or corresponding information about a competitor," and whether prohibiting an individual's access to the information would hamper a party's ability to effectively proceed with and assess the merits of the litigation." *Suture Exp., Inc. v. Cardinal Health*, 200, LLC, No. 12-2760-RDR, 2013 WL 6909158, at *7 (D. Kan. Dec. 31, 2013); *Brown Bag*, 960 F.2d at 1470 (quoting *U.S. Steel* at 1468 n. 3). These factors weigh in favor of McGill's access to AEO information.

      First, McGill is not, and never has been BlendJet's inside counsel or general counsel. Second, McGill is not, and has never been a competitive decision maker at BlendJet. McGill is not an officer, employee, or director, and his ████████████ does not provide any control over pricing, marketing, branding or other non-legal decisions whatsoever. On this point, the *Catheter Connections* case is instructive. There, the parties disputed whether Ms. Williams, Catheter's former Chief Business Officer and in-house counsel, should be permitted access to AEO documents after becoming outside litigation counsel. 2014 WL 3945880 at *1-2. Even though she had been a competitive decision maker just three months earlier, there was *not* an unacceptable risk of inadvertent disclosure because William's role and relationship had changed.

*Id*. at *3. Any concern created by the proximity in time between here different positions was overcome by her new responsibilities, reporting to her outside counsel supervisor, and rapid changes in the global economy. *Id*. at *3. McGill's relationship with BlendJet is even more attenuated as McGill has never been in-house counsel or a competitive decision maker posing even less risk of inadvertent disclosure, and no inadvertent disclosure has taken place.

Blendtec argues that "McGill used a blendjet.com email address from <u>at least</u> February of 2019 through January of 2020." (Mot., 8.) BlendJet granted McGill an "@blendjet.com" email address to facilitate his provision of legal services to BlendJet. But he terminated his use of that address long before this lawsuit was filed; the fact that he once used that address has no bearing as to whether McGill is a "competitive decisionmaker." (McGill Decl., ¶¶25, 31-32, 35, 46.)

Blendtec also complains that BlendJet employees referred to McGill as a "part of its ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and as Pamplin's "'confidant' that will 'never let [him] down,'" and a "'part of Blendjet's success' and a 'close advisor[] and partner[.]'" These are garden-variety descriptions of a good attorney-client relationship. Indeed, it is very common and desirable for outside lawyers to form a trusted relationship with their clients. Blendtec's own counsel markets itself as "a *trusted legal advisor* and valued *business partner*" to its clients who provides "an *integrated*, proactive approach to its clients' legal and *business needs*." (Bader Decl., Ex. H (emphasis added).) In this case, Blendtec's litigation counsel have been Blendtec's trademark attorneys for over 20 years, and even prepared, filed, and prosecuted the Blendtec trademarks at issue in this case. (Bader Decl., ¶¶24-26, Exs. H-J.) They also previously represented Blendtec in an intellectual property competitor suit. (*Id*., ¶27.) The length of the relationship between Blendtec and its counsel is far more extensive than McGill's history of representing BlendJet. Indeed, if McGill is excluded from viewing AEO information, Blendtec's

counsel should be limited by the same logic. (*See* Motion at 10 n.6 (referencing the "advocate as witness" rule).) Regardless, the risk of McGill's disclosing AEO information is entirely mitigated by his oaths to the State Bars, and to this Court. McGill has not disclosed AEO information and is no more likely to violate the SPO than is any other attorney in this case.

McGill's ▮▮▮▮▮▮▮▮▮▮ does not change this analysis or preclude his access to AEO information. *See, e.g., Seal Shield v. Man & Machines, Inc.*, 2021 WL 13102526 (M.D. Fla. Oct. 1, 2012). Similarly, it does not constitute a violation of any professional rule. *See* Lalli Decl., ¶¶23-39. And, Blendtec's cited authority is inapposite. (Motion, 6, 8 (citing *Mynette Techs. v. US*, 163 Fed. Cl. 733 (Fed. Cl. 2022) (finding an attorney *director* and shareholder of a *licensing and litigation* company was a competitive decision maker); *Field Turf USA v. Sports Constr. Group*, 2007 WL 4412855 (N.D. Ohio 2007) (disqualifying a party's secretary with signatory rights from representing the party).) Unlike the attorneys discussed in those cases, McGill has never been an officer, director, signatory, or competitive decision maker for BlendJet, and BlendJet is not in the licensing business.

Finally, prohibiting McGill's access to AEO information would severely hamper BlendJet's ability to effectively proceed with and assess the merits of the litigation. McGill has been involved in and led every step of discovery in this case, which has been extensive. There are multiple pending deadlines, including expert discovery, and McGill's ability to assess discovery from each side is necessary to meet these deadlines. BlendJet would be severely prejudiced by losing a key member of its trial and litigation team. *Syufy Enterprises v. Columbia Pictures Industries, Inc.*, No. C 77-0181, 1978 U.S. Dist. LEXIS 17503 at *12 (D. Utah 1978).

Since McGill is neither inside counsel nor a competitive decision maker to BlendJet, and excluding his access from AEO information would severely impede BlendJet's ability to defend

itself in this case, the Court should deny BlendJet's motion to enforce the SPO.

**B.        Blendtec's Attempt to Disqualify BlendJet's Litigation Counsel is Unfounded.**

Motions to disqualify should "rarely" be granted. *Archuleta v. Turley*, 904 F. Supp. 2d 1185, 1192 (D. Utah 2012) (citing *Parkinson v. Phonex Corp.*, 857 F.Supp. 1474, 1476 (D. Utah 1994) (emphasis added). Even then, "disqualification is not automatic" and depends on "the egregiousness of the violation, the presence or absence of prejudice to the other side, [ ] whether and to what extent there has been a diminution of effectiveness of counsel," and "equitable considerations such as the hardship to the other side and the stage of trial proceedings." *Id*. (citing *Parkinson*, 857 F.Supp. at 1476). Here, neither McGill nor SMRH committed any ethical violation, there has been no prejudice to Blendtec from any alleged violation, and disqualification would impose a severe hardship on BlendJet. (Lalli Decl., ¶¶12-39.)

Blendtec contends that McGill and SMRH should be disqualified because McGill allegedly "violated the letter and spirit of the SPO and ESI Protocol" and "Utah Rules of Professional Conduct" by not earlier disclosing █████████████ (Mot. at 10.) McGill did none of these things. McGill has at all times as complied with all the Court's orders and rules. He did not conceal ███████████████ And even if such information were relevant (it is not), Blendtec has not been prejudiced because the information was disclosed during discovery. McGill has not improperly used or disclosed any Blendtec AEO information (nor does Blendtec contend that he did). Disqualifying McGill and SMRH at this late stage of the case would impose a severe hardship on BlendJet, which has relied on McGill and SMRH to prepare the case, manage discovery, and prepare for expert discovery beginning in one month. (Lalli Decl., ¶¶12-39.) Blendtec's motion should be denied. (*Id*.)

**IV.   CONCLUSION**

Blendtec's motion should be denied in all respects.

| | |
|---|---|
| Respectfully submitted this 16th day of May, 2023. | **SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**<br>Martin R. Bader (*pro hac vice*)<br>Jesse A. Salen (*pro hac vice*)<br><br>**MCGILL & CO., P.C.**<br>Patrick McGill (*pro hac vice*)<br><br>**PARSONS BEHLE & LATIMER**<br>Nathan D. Thomas (USB #11965)<br>Elizabeth M. Butler (USB #13658)<br><br><br>*/s/ Martin R. Bader*<br><br>*Attorneys for Defendant BlendJet, Inc.* |

## CERTIFICATE OF SERVICE

    I hereby certify that on the 16th day of May, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send an electronic notification to counsel of record for all parties, including the following:

Brett Foster (#6089)
Grant Foster (#7202)
Tamara Kapaloski (#13471)
**DORSEY & WHITNEY LLP**
111 S. Main Street, Suite 2100
Salt Lake City, UT  84111
Telephone: (801) 933-7360
Facsimile:  (801) 933-7373
foster.brett@dorsey.com
foster.grant@dorsey.com
kapaloski.tammy@dorsey.com

                                                    */s/ Martin R. Bader*