MARTIN R. BADER (*Pro hac vice*)
mbader@sheppardmullin.com
JESSE A. SALEN (*Pro hac vice*)
jsalen@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
Telephone:    858.720.8900

PATRICK McGILL (*Pro hac vice*)
patrick@mcgillco.com
MCGILL & CO., P.C.
5580 La Jolla Blvd, Suite 39
La Jolla, CA  92037
Tel: (619) 974-8886

Nathan D. Thomas (USB #11965)
Elizabeth M. Butler (USB #13658)
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah  84111
Telephone:  (801) 532-1234
nthomas@parsonsbehle.com
lbutler@parsonsbehle.com

*Attorneys for Defendant BlendJet Inc.*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| **BLENDTEC INC.**, a Utah corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>**BLENDJET INC.**, a Delaware corporation,<br><br>    Defendant. | **DECLARATION OF MARTIN R. BADER IN SUPPORT OF BLENDJET'S RESPONSE TO BLENDTEC'S MOTION TO ENFORCE THE PROTECTIVE ORDER, TO DISQUALIFY PATRICK MCGILL AND SHEPPARD MULLIN, AND FOR ATTORNEYS' FEES** <span style="color:red">**[REDACTED VERSION]**</span><br><br>Civil No. 2:21-cv-00668-TC-DBP<br><br>Judge Tena Campbell<br>Magistrate Judge Dustin B. Pead |

I, Martin R. Bader, declare as follows:

1. I am an attorney with Sheppard, Mullin, Richter & Hampton LLP, and counsel of record for Defendant BlendJet Inc. ("BlendJet"). I submit this declaration in support of BlendJet's Response to Blendtec's Motion to Enforce the Protective Order, to Disqualify Patrick McGill and Sheppard Mullin, and for Attorneys' Fees. Except as where stated otherwise, I have personal knowledge of the matters set forth herein, and if called as a witness, I could and would testify competently as to the truth of the same if requested to do so.

## I. Blendtec Files this Motion Without Meeting and Conferring.

2. Blendtec did not explain its concern regarding Mr. McGill's qualification under the SPO until a May 1, 2023 meet and confer regarding a different subject. Prior to that time, BlendJet had no idea that the reason it had issued document subpoenas to Mr. McGill and Sheppard Mullin was to learn information additional information about Mr. McGill's ███ ████████████████████████████████████████ ████ at BlendJet in connection with a perceived concern about Mr. McGill continuing to have access to AEO information.

3. To be clear, Mr. McGill is and at all times has been BlendJet's outside counsel. He has never been an employee, officer, director, or competitive decision maker at BlendJet. Nor has BlendJet ever concealed any information about Mr. McGill's ████████████ or role as outside counsel for BlendJet from Blendtec. That information was plainly disclosed in documents produced to Blendtec during discovery. All of this could have easily been explained and resolved if Blendtec had agreed to meet and confer with BlendJet in good faith prior to filing this Motion. But, Blendtec refused to do so.

4. Prior to the parties' May 1, 2023 meet and confer (which was the day before it filed the present motion), Blendtec only identified its desire to discuss BlendJet's, Mr. McGill's,

and Sheppard Mullin's objections to Blendtec's third-party document subpoenas to Mr. McGill and Sheppard Mullin.  At no time prior to that discussion did Blendtec explain to BlendJet, Sheppard Mullin, or Mr. McGill that it was concerned that Mr. McGill might not be qualified under the SPO because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ or had allegedly acted as its inside counsel (even though he never did and at all times has been outside counsel).  If Blendtec had explained that sooner, BlendJet would have worked with Blendtec to alleviate those concerns efficiently.

5. Blendtec also provided no notice prior to that May 1, 2023 discussion that it would file a motion to disqualify Mr. McGill or Sheppard Mullin.

6. During the May 1, 2023 meet and confer regarding document subpoenas, Blendtec expressed its concern regarding Mr. McGill's qualification under the protective order for the first time, and then indicated it was considering a disqualification motion and asked BlendJet to restrict Mr. McGill's access to Blendtec AEO information, which BlendJet promptly did following the call (and before the motion was filed).

7. In addition, BlendJet promptly followed up with Blendtec following that discussion to address Blendtec's concerns and request additional information from Blendtec to further address those concerns.

8. Attached as **Exhibit A** is a true and correct copy of email correspondence between counsel for BlendJet and counsel for Blendtec. On May 1, 2023, promptly following the parties' meet and confer regarding document subpoenas, Mr. Salen emailed Ms. Kapaloski to address Blendtec's concerns. (Exhibit A at p. 4.) Mr. Salen explained that BlendJet had not concealed any information, and offered the following:

> To help us further address your concerns and clear up any issue, can you please identify any documents in addition to JET14130 that you contend raise concerns as

> to Mr. McGill's ability to view confidential information? We will then consider that information and work with you in good faith to alleviate your concerns.

(*Id.*)

9. Instead of agreeing to work with BlendJet in good faith to resolve the issue, on May 2, 2023, Ms. Kapaloski responded by stating that "that this is not something that can be resolved or alleviated through self-serving emails . . . ." (*Id.* at p. 3.) Then, before BlendJet could respond to her email, Blendtec filed this motion seeking not only to restrict Mr. McGill's access to Blendtec AEO information, but also to disqualify Mr. McGill and Sheppard Mullin altogether.

10. Blendtec never met and conferred with BlendJet, Sheppard Mullin, or Mr. McGill to resolve any of these concerns, despite BlendJet's offer to do so.

**II. Blendtec is the Only Party that has Violated the Protective Order in this Case.**

11. Neither Blendtec's Motion nor Ms. Kapaloski's declaration describe a single instance in which Mr. McGill improperly disclosed or used Blendtec's AEO information. That is because no such misuse or improper disclosure has occurred.

12. However, Blendtec has twice improperly published BlendJet's AEO information to the Court's public docket. (*See* ECF 116 (notice of refiling of ECF 105-108 because Blendtec publicly filed those documents with unredacted information that BlendJet had designated AEO); ECF 56 (notice of withdrawal of ECF 50-3 because Blendtec filed that document with unredacted information that BlendJet had designated as AEO).)

13. In addition to filing BlendJet's AEO information on the public docket, Blendtec's counsel has refused to confirm that it did not share BlendJet's AEO information with its client in violation of the SPO. On May 2, 2023, immediately after Blendtec filed this Motion, Mr. Salen emailed Ms. Kapaloski to request that Blendtec immediately remove BlendJet's AEO

-4-

information from the public docket and "confirm that you have not shared that information with anyone not approved under the protective order." (Exhibit A at p. 2.) Blendtec never responded to this request or otherwise confirmed that it had not shared BlendJet's AEO information with Blendtec in violation of the SPO.

### III.  The BlendJet Trademarks at Issue

14. Attached as **Exhibit B** is a true and correct copy of a docket sheet and U.S. Trademark Application Serial No. 88/125,709 and docket sheet for BlendJet's BLENDJET word trademark that was downloaded from the USPTO's TSDR trademark database on May 15, 2023.

15. Attached as **Exhibit C** is a true and correct copy of a docket sheet and U.S. Trademark Application Serial No. 88/480,647 and docket sheet for BlendJet's swirl design trademark that was downloaded from the USPTO's TSDR trademark database on May 15, 2023.

16. Attached as **Exhibit D** is a true and correct copy of a docket sheet and U.S. Trademark Application Serial No. 97/558,787 and docket sheet for BlendJet's swirl design trademark that was downloaded from the USPTO's TSDR trademark database on May 15, 2023.

### IV.  BlendJet's Engagement with Sheppard Mullin

17. Attached as **Exhibit E** is a true and correct copy of Sheppard Mullin's December 6, 2018 engagement letter with BlendJet.

18. Attached as **Exhibit F** is a true and correct copy of Sheppard Mullin's November 17, 2021 engagement letter with BlendJet.

19. Attached as **Exhibit G** is a true and correct copy of Sheppard Mullin's November 10, 2022 engagement letter with BlendJet.

20. Mr. McGill was employed by Sheppard Mullin as an associate from April 22, 2019 until January 31, 2023. During that time, he worked on dozens of matters for numerous clients, including BlendJet. Also during that time, 13 different Sheppard Mullin attorneys

worked on BlendJet matters. ██████████████████████████████

██████████████████████████████████

21. As an associate at Sheppard Mullin, Mr. McGill also worked on several matters for BlendJet, including defense of this litigation under my supervision.

### V. Blendtec's Engagement with Dorsey & Whitney, LLP

22. Grant Foster, Brett Foster, and Tamara Kapaloski from the law firm, Dorsey & Whitney, LLP, represent Blendtec in this case. (ECF 1.)

23. Attached as **Exhibit H** is a true and correct copy of Dorsey & Whitney, LLP's Linked In page that was downloaded on May 14, 2023.

24. The Fosters have also represented Blendtec with trademark matters for more than 20 years.

25. Attached as **Exhibit I** is a true and correct copy of select portions of Blendtec's trademark file history for U.S. Trademark Serial No. 75/801,328 that were downloaded from the USPTO's TSDR database on May 16, 2023 that show that the Fosters have been Blendtec's trademark attorneys for the BLENDTEC mark at issue in this case since at least as early as September 18, 1999, and were involved in both the filing of and prosecution of the mark.

26. Attached as **Exhibit J** is a true and correct copy of select portions of Blendtec's trademark file history for U.S. Trademark Serial No. 85/203,654 that shows that the Fosters have been Blendtec's trademark attorneys for the Blendtec swirl design mark at issue in this case since at least as early as December 22, 2010, and were involved in both the filing of and prosecution of the mark.

27. The Fosters both represented Blendtec in *Vita-Mix Corporation et al v. Blendtec, Inc.*, Case No. NDOH-1-15-cv-01118 in the Northern District of Ohio.

### VI.  Response to Ms. Kapaloski's Declaration

28.     Ms. Kapaloski submitted a declaration in support of Blendtec's motion to disqualify (ECF108) that includes several misleading statements and arguments.  I have corrected several of those factual inaccuracies below.

**A.     BlendJet Never Told Blendtec it Did Not Have Counsel Prior to this Litigation.**

29.     Ms. Kapaloski's first topic heading states that "Blendtec is Lead [sic] to Believe That BlendJet Did Not Have Counsel Prior to this Lawsuit." (Kapaloski Decl. at p. 2.) However, BlendJet never told Blendtec that it did not have legal counsel before the lawsuit.  Blendtec never asked this question, and BlendJet had no reason to volunteer this information as it was not relevant to the case and was never asked for.

30.     As Ms. Kapaloski explains in paragraph 7 of her declaration, in response to Interrogatory No. 5, BlendJet truthfully stated that ███████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████ This statement was accurate. It also says nothing about whether BlendJet had engaged legal counsel on other matters unrelated to its trademarks. At various times, I understand that BlendJet has been represented by attorneys to advise on various matters, including SMRH.  Nothing about those other engagements was responsive to Interrogatory No. 5.

31.     In Paragraphs 10 of her declaration, Ms. Kapaloski represents to the Court that "On September 29, 2022, Blendjet [sic] declined to produce a privilege log." She then implies in

paragraphs 13 and 14 of her declaration that BlendJet was still declining to produce a privilege log. These statements and inferences are false.

32. To be clear, BlendJet <u>never declined</u> to produce a privilege log as Ms. Kapaloski represented to the Court. Instead, BlendJet was communicating that, with respect to its "substantial completion of its production of all responsive non-custodial documentation that BlendJet [] agreed to produce," it was not "withholding any responsive documentation (or portions of any documentation) on the basis of an applicable privilege." (Kapaloski Decl., Exs. 5, 9.) However, just because there were no privileged documents in its non-custodial documentation does not mean that there are not privileged documents being withheld from BlendJet's custodial ESI production.

33. As of the dates of Exhibits 5 and 9, BlendJet had not processed or produced its custodial ESI, which is far more voluminous than BlendJet's non-custodial documentation. However, that production has since been produced or is in the process of being produced. Following the completion of that production, which should happen in the next several days, BlendJet will produce its privilege log. BlendJet has always intended to do so. In fact, Ms. Kapaloski knew that BlendJet would produce a privilege log because she has repeatedly asked about its status on multiple meet and confers.

34. In paragraph 18 of her declaration, Ms. Kapaloski attests that "[b]ased on all of the foregoing representations and conduct by Blendjet [*sic*] and its counsel, it appeared that Blendjet [*sic*] did not have counsel (either outside counsel or in-house counsel) until after Blendtec filed its lawsuit in November 2021 . . . ." While I have no reason to doubt what Ms. Kapaloski or Blendtec inferred, if they wanted to know if BlendJet had ever engaged an attorney prior to November 2021, all they had to do was ask. The fact that BlendJet, like any other

company, engages attorneys from time-to-time to assist with various legal needs has never been a secret. It simply has not been relevant to this case.

**B.     BlendJet Did Not Conceal Mr. McGill's Connections With BlendJet; Instead, BlendJet Openly Disclosed That Information in Documents BlendJet Produced to Blendtec.**

35.     In paragraphs 33-37 of her declaration, Ms. Kapaloski refers to an email chain between counsel (Exhibit 20) in which the parties were discussing Blendtec's first subpoena to Mr. McGill, and BlendJet's intent to seek a protective order. Ms. Kapaloski refers specifically to statements she made in her email chain that her team had "only recently became aware that Patrick has acted as Blendjet's [*sic*] long-time counsel-including as an employee of Blendjet [*sic*]," and that "he has served as Blendjet's [*sic*] counsel essentially from Blendjet's [*sic*] founding." She apparently refers to these lines to imply that, since Sheppard Mullin attorneys did not directly respond to them in later emails, that the statement were true.

36.     Ms. Kapaloski's representation is incorrect. The email chain to which Ms. Kapaloski refers (Exhibit 20) was about whether Blendtec would continue to press its deposition and document subpoena to Mr. McGill in view of BlendJet's notice that it would seek a protective order and had already produced non-privilege responsive documents to that subpoena that were in BlendJet's possession, custody, or control, and whether Sheppard Mullin would accept service of the subpoena on Mr. McGill's behalf. At the time, Blendtec had never explained that the reason they were concerned with Mr. McGill's ongoing legal representation of BlendJet was that they *believed* he was *inside* counsel and, thus, not qualified under the SPO. If they had expressed this concern and directly asked whether Mr. McGill was ever inside counsel at BlendJet, the answer would have been a resounding: "No, he has not."

37.     To be clear, Mr. McGill has never been inside counsel to BlendJet. Instead, he has represented BlendJet as outside counsel as discussed in Mr. McGill's declaration that is submitted herewith. That information has never been concealed from Blendtec.

**C.     If Blendtec Had Simply Expressed Their Concern With Mr. McGill's Qualification Under the SPO, BlendJet Would Have Demonstrated Mr. McGill is Neither a Competitive Decision Maker Nor In-House Counsel.**

38.     In paragraphs 38-42 of her declaration, Ms. Kapaloski describes a March 6, 2023 telephonic meet and confer in which she recollects that her team apparently suspected that Patrick McGill may [REDACTED]. She goes on to describe the other parts of that discussion regarding whether Mr. McGill would produce documents responsive to the subpoena. That discussion continued and has now culminated in Blendtec's improper motion to compel.

39.     Once again, Ms. Kapaloski misrepresents through implication that BlendJet concealed the fact that Mr. McGill [REDACTED] BlendJet did no such thing. In fact, that information was openly disclosed via BlendJet's document production. The only reason BlendJet did not respond to Ms. Kapaloski's stated suspicion was because it did not appear relevant to the numerous other issues being discussed, and appeared to be a mere statement that did not warrant a response. In other words, Ms. Kapaloski did not ask us to confirm the information.

40.     Furthermore, as of that time, Blendtec had never explained that the reason they were concerned with Mr. McGill's [REDACTED] was that they *believed* [REDACTED] affected his qualification under the SPO. If they had expressed this concern and directly asked about it, BlendJet would have promptly responded that [REDACTED] he is not a director, employee, or officer, and he is not a competitive decision maker at BlendJet. Indeed, this is exactly what we

offered to clarify after our May 1, 2023 meet and confer once we finally learned about Blendtec's actual concern. (*See* ECF 121-1 (May 1, 2023 email from Mr. Salen to Ms. Kapaloski offering to "clear up any issue" and requesting that Ms. Kapaloski "identify any documents in addition to JET14130 that [Blendtec] contend[s] raise concerns as to Mr. McGill's ability to view confidential information," and offering to "consider that information and work with [Blendtec] good faith to alleviate [their] concerns.").)

41. Instead of working with BlendJet to resolve the issue through the meet and confer process, Blendtec file this motion the following day in which they make several baseless accusations against BlendJet and its counsel.

**D.    Ms. Kapaloski Misrepresents in Her Declaration What the Parties Discussed.**

42. In paragraphs 43-44 of her declaration, Ms. Kapaloski refers to a March 14, 2023 email (Exhibit 21) in which she stated that Blendtec had "only very recently became aware that Patrick McGill had a role in Blendjet [*sic*] since its founding," and that document production "revealed that Patrick McGill has served as Blendjet's [*sic*] lawyer, essentially since its founding, including in an in-house capacity as Patrick used a Blendjet.com email address." She then continues by accusing BlendJet of "intentionally conceal[ing]" that information. She contends that BlendJet did not respond to these accusations.

43. Once again, Ms. Kapaloski's allegations are highly misleading and misrepresent what was actually discussed. First, Ms. Kapaloski fails to mention that in the same email (Exhibit 22), she expressly acknowledges that Mr. Salen had already informed Blendtec in a meet and confer "that Patrick McGill served as a 'contractor' for BlendJet." (Exhibit 21 at p. 2.) In other words, we had already explained in that March 6, 2023 meet and confer that Mr. McGill was not an employee or in-house counsel, but instead, was a contractor.

44. Second, the email correspondence and meet and confers were focused on document productions and whether Mr. McGill would be required to produce additional documents in response to a subpoena.

45. Again, as of that time, Blendtec had never explained that the reason they were concerned with Mr. McGill's past representation of BlendJet because they mistakenly *believed* he was in-house counsel, and if he was, such role would affect his qualification under the SPO. If they had expressed this concern and directly asked about it, BlendJet would have promptly responded that he is not, and has never been BlendJet's inside counsel.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on May 16, 2023, at San Diego, California.

*/s/ Martin R. Bader*
Martin R. Bader