MARTIN R. BADER (*Pro hac vice*)
mbader@sheppardmullin.com
JESSE A. SALEN (*Pro hac vice*)
jsalen@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
Telephone:    858.720.8900

PATRICK McGILL (*Pro hac vice*)
patrick@mcgillco.com
MCGILL & CO., P.C.
5580 La Jolla Blvd, Suite 39
La Jolla, CA  92037
Tel: (619) 974-8886

Nathan D. Thomas (USB #11965)
Elizabeth M. Butler (USB #13658)
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah  84111
Telephone:  (801) 532-1234
nthomas@parsonsbehle.com
lbutler@parsonsbehle.com

*Attorneys for Defendant BlendJet Inc.*

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| **BLENDTEC INC.**, a Utah corporation,<br><br>     Plaintiff,<br><br>vs.<br><br>**BLENDJET INC.**, a Delaware corporation,<br><br>     Defendant. | **DECLARATION OF PATRICK MCGILL IN SUPPORT OF BLENDJET'S RESPONSE TO BLENDTEC'S MOTION TO ENFORCE THE PROTECTIVE ORDER, DISQUALIFY PATRICK MCGILL AND SHEPPARD MULLIN, AND FOR ATTORNEYS' FEES**<br><br><span style="color:red">**[REDACTED VERSION]**</span><br><br>Civil No. 2:21-cv-00668-TC-DBP<br><br>Judge Tena Campbell<br>Magistrate Judge Dustin B. Pead |

I, PATRICK MCGILL, declare as follows:

1.      I am an attorney at the law firm of McGill & Co., P.C. ("McGill & Co."), counsel of record to Defendant BlendJet Inc. ("BlendJet") in the above-captioned action.  I submit this declaration in support of BlendJet's Response to Plaintiff Blendtec, Inc.'s ("Blendtec") Motion to Enforce the Protective Order, to Disqualify Patrick McGill and Sheppard Mullin, and for Attorneys' Fees (Dkts. 105, 110, the "Motion").  I am fully familiar with the facts set forth in this declaration from personal knowledge, or from documents that I have reviewed.  If called as a witness, I could and would testify competently under oath to the facts contained herein.

## I.    My Bar Memberships and Practice Background.

2.      I am a member of the State Bars of California and New York, and have been admitted to many federal district courts (in some cases, *pro hac vice*), over my ten-year career as a litigator in private practice.

3.      I am presently in good standing in both State Bars, and have never had an ethical complaint or disciplinary proceeding brought against me.

4.      Attached hereto as **Exhibit K** is a true and correct printout of the current version of my public LinkedIn profile.  (*See* Exhibit K (screenshot of the public LinkedIn profile for Patrick McGill, available at https://www.linkedin.com/in/pamcgill, and captured on May 15, 2023).)[1]

---

[1] The version of my LinkedIn profile that Ms. Kapaloski attached to her Declaration in Support of the Motion as Exhibit 18 is an outdated version of that profile captured on March 1, 2023 (despite Ms. Kapaloski's representation that it is a "true and correct" version of that profile). (*See* Dkt. 108 (the "Kapaloski Decl.") at ¶ 31, Ex. 18.)

5.      From December 2018 to April 2019, I worked for a handful of clients, including BlendJet, as a solo practitioner and outside legal counsel.

6.      In February 2019, I agreed to join the law firm of Sheppard Mullin Richter & Hampton LLP ("SMRH") as an associate attorney – and ultimately joined that the firm in April 2019.  At SMRH, I represented many clients in a wide variety of paid and pro bono matters, including litigation and transactional matters.

7.      In February 2023, after nearly four years at SMRH, I left to start my own firm, McGill & Co., P.C.  Through this new venture, I represent several of my longstanding clients as outside legal counsel in a variety of matters, including both litigation and corporate/transactional matters.

**II.      The General History of My Representation of BlendJet as Outside Counsel.**

8.      As provided in greater detail below, I have served as outside legal counsel for BlendJet for approximately four-and-a-half years – starting when I was working as a solo practitioner in late-2018.

9.      I have never been employed by BlendJet, as in-house legal counsel, or in any other role or position.

10.      In line with my role as outside legal counsel to BlendJet, and as further detailed below, I have never been a "competitive decisionmaker" at or for that company.  Instead, I have always provided BlendJet with a traditional set of legal services in line with my experience (including as litigation counsel).

11.      In exchange for my services as outside legal counsel, I or my firm (McGill & Co.), ███████████████████████████████████████████████
███████████████████████████████████████

-2-

12.     At no point, to my understanding, ███████████████████████

████████████████████████████████████████████████████████████

██████ ever reverse, or change, my status as BlendJet's outside legal counsel.

13.     ████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████

14.     Under no circumstances have I ever disclosed any documentation, discovery responses, or other information produced or provided by Blendtec in connection with the above-captioned matter and designated as "CONFIDENTIAL INFORMATION – ATTORNEYS EYES ONLY" to BlendJet, or to any BlendJet personnel, and/or to any other person or entity not qualified to receive such materials under Paragraph 6(a) of the Protective Order.

### III.    The Specific History of My Representation of BlendJet as an Outside Legal Counsel.

a.    <u>My Representation of BlendJet as Solo Practitioner (late-2018 through mid-April 2019).</u>

15.     In November 2018, after I had left Meta Company and moved to San Diego, CA from the San Francisco Bay Area, the CEO and co-founder of BlendJet (and my former colleague at Meta Company), Mr. Ryan Pamplin, contacted me by phone.[2]  He told me for the first time about a new venture that he had started with several close friends in the San Francisco Bay Area.  The name of their new venture was "Miramore Inc.," which was doing business as "BlendJet."[3]

---

[2] Meta Company had no corporate relationship with the entity presently operating as Meta Platforms, Inc. (formerly known as "Facebook Inc.").

[3] Only later, in early 2020, did Miramore formally change its name to "BlendJet, Inc."

16.     In November 2018, BlendJet's flagship product was a portable, rechargeable blender, the "BlendJet One" – which, as of that date, had already been developed and was being sold directly to customers under the BLENDJET word mark via BlendJet's website (www.blendjet.com).  Also, as of that date, BlendJet had already developed the original version of its "swirl" logo.  BlendJet was using that original version of its "swirl" logo at that time in connection with its sale of the BlendJet One, as well.

17.     I had no involvement in 

18.     I also had no involvement

19.     In January 2019, I finalized and executed a Master Services Agreement with BlendJet.  Under that document, I agreed to provide legal advisory services to BlendJet as a solo legal practitioner and independent contractor.

20.     Attached hereto as **Exhibit L**

21.    In my services agreement, 

22.    

23.    I never provided any non-legal services to BlendJet during this time period, nor did I ever engage in pricing, product design, marketing strategy, or any other similar business decision made in light of information about BlendJet's competitors.[4]

24.    During this time period, I performed my work independently, on my personal computer, in my home office, in accordance with my own limited availability (as we had just moved to San Diego, and had a newborn baby).

25.    To facilitate my provision of legal services, Mr. Pamplin created "@miramore.com" and "@blendjet.com" accounts for me on BlendJet's enterprise email system. This was necessary because I was not affiliated with any law firm at this time, was providing my services as an independent solo legal practitioner, and did not otherwise have an email address through which I was providing professional services.  In fact, given my focus on my young family, I had very little time to dedicate to any professional activities at all – let alone to the

---

[4] In December 2018, I flew to the San Francisco Bay Area to meet in person with Mr. Pamplin and the rest of BlendJet's founding team to explore the possibility of my working with BlendJet as outside legal counsel.  BlendJet reimbursed me for the cost of my flight and other expenses related to that trip – which amounted to approximately $400.

laborious and then-unfamiliar process of setting up my own law firm practice and related IT infrastructure (with which I am now familiar, as discussed in greater detail below).

26.    In late February 2019, I accepted an offer to join SMRH, where I was to be employed as an associate attorney.

27.    Upon acceptance of SMRH's offer of employment, I informed BlendJet that my service agreement would terminate upon my joining that law firm – and we agreed as such.

       b.    <u>My Representation of BlendJet as Outside Legal Counsel while at SMRH (late April 2019 through January 2023).</u>

28.    My first day at SMRH was April 22, 2019.  To the extent that I received payment under my service agreement with BlendJet, no such payments were made or received after April 2019, reflecting the termination of that agreement after I started my new role at SMRH.

29.    As an SMRH employee, I had no entitlement to receive any employment-related benefits (such as medical or retirement benefits) from BlendJet – nor did I ever receive any such benefits.  During my employment at SMRH, I was enrolled in SMRH's medical, retirement, and other employee benefits programs as of my start-date (and remained so through my departure from SMRH in January 2023).

30.    I continued to provide legal services to BlendJet after I joined SMRH in April 2019, pursuant to the engagement letter(s) that BlendJet had entered into with SMRH prior to my joining the firm, and/or those that BlendJet later signed to engage SMRH to handle additional matters (such as the above-captioned lawsuit).

31.    In the first few weeks of my time at SMRH, I worked to transition BlendJet personnel from emailing the "@blendjet.com" account that Mr. Pamplin had previously set up to messaging my SMRH email address.  That transition was largely effected and complete shortly

after I joined SMRH, but I did continue to monitor the "@blendjet.com" account for a few months thereafter to ensure that BlendJet personnel that inadvertently emailed that address rather than my SMRH email address (for example, through using an "autocomplete" feature when designating email recipients), were still able to reach me and have their requests for legal advice answered.

32.    At some point in the first half of 2020, I stopped monitoring the "@blendjet.com" account that Mr. Pamplin had created for me while I was a solo practitioner – although it would not surprise me if some BlendJet personnel who had previously messaged that address continued to inadvertently send messages to that email address from time to time (for example, due to use of the "autocomplete" feature when drafting emails). In any case, I no longer have access to the aforementioned "@blendjet.com" email address, and do not recall having access to (or sending or receiving messages from) that address at any time during the pendency of the above-captioned lawsuit. ██████████████████████████████████████████

██████████████████████████████████████████

33.    During the entirety of my time as an associate attorney at SMRH, I never provided any non-legal services to BlendJet. More specifically, I never engaged in pricing, product design, marketing strategy, or any other similar business decision made in light of information about BlendJet's competitors.

34.    For example, ████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████

35.    While I do not recall exactly when BlendJet created the "legal@blendjet.com"

email address, ███████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████

36.    ███████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████



     c.   <u>The Incorporation of McGill & Co. and Transition of My Legal Practice to That Entity (February 2023 to the Present).</u>

37.    During the time I was associated with SMRH, my family faced a number of serious physical and mental health challenges – one of which resulted in the loss of an immediate family member.  These health challenges and losses tremendously impacted me, in a variety of ways.  Among the many reflections and resolutions that came out of the aforementioned experiences was the desire to spend more time with my family in the immediate term.

38.    For that reason, among others, I began exploring starting my own legal practice in late 2022.

39.    On December 1, 2022, BlendJet signed an engagement letter for my anticipated new law firm entity, which I decided to name McGill & Co., P.C. I have not – or would I anticipate ever having, given my status as outside legal counsel – any role or part in pricing, product design, marketing strategy, or any other similar business decision made in light of information about BlendJet's competitors.

40. 

41.    My last day at SMRH was January 31, 2023.

42.    Because my present relationship with BlendJet is that of outside legal counsel, I presently have no entitlement to receive any employment-related benefits from BlendJet (and, again, I never have received any such benefits from BlendJet, as stated above).

43.    Several longtime clients – in addition to BlendJet – have engaged McGill & Co. to provide them with legal services.  Those entities are present clients of my firm, have requested and utilized my legal services since the foundation of McGill & Co., have been billed for those services, and – to date – have each paid those invoices in full.

44.    At this point in time, the great majority of the work that I do through McGill & Co. is completed alongside my former colleagues at SMRH.  Most significantly, the lead trial counsel in the instant litigation continues to be Martin Bader at SMRH.  The work that I do for BlendJet in connection with this lawsuit is directly supervised by Mr. Bader, and undertaken in close collaboration with Mr. Salen and local counsel at Parsons Behle.

45.    McGill & Co. maintains its own separate and independent IT infrastructure.  For example, it has its own license to Microsoft Office (through which it conducts its email correspondence), all work is done on computing systems that are owned by McGill & Co., it has its own license to legal research databases (*i.e.* Westlaw), and it maintains its own web-based

document management system on NetDocuments (an enterprise-level, secure document management platform that is utilized by many AmLaw100 law firms (*see* www.netdocuments.com)).  McGill & Co. does not share any of these IT resources with BlendJet, or with SMRH – nor do any of those entities pay for the aforementioned resources.

46.     Since the transition of my legal practice to McGill & Co., ███████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

47.     As of the date of this declaration, McGill & Co. has only been in existence for a few months.  All legal work is presently being performed out of my home office in San Diego, California.

48.     McGill & Co. has leased a mailbox at a local UPS Store to receive its written correspondence, to avoid having business-related materials sent to my home address.  The address for that mailbox is the one that McGill & Co. supplied the Court in the Notice of Change of Address and Firm Affiliation, filed on February 8, 2023 (*e.g.*, 5580 La Jolla Blvd, Suite 39, La Jolla, CA 92037).  (*See* Dkt. 65.)  McGill & Co. has utilized that address in the caption on all filings made since that time.

## IV.     My Representation of BlendJet in Response to Blendtec's Suit, and Blendtec's Misrepresentation of Litigation-Related Facts.

49.     With respect to my representation of BlendJet in connection with this lawsuit, at all times my work has been supervised by SMRH's partnership.  The lead attorneys with respect to the representation of BlendJet in this litigation have been partners Martin Bader and (prior to her retirement from practice) Lisa Martens.  Indeed, Ms. Martens was the signatory on

BlendJet's initial response to Blendtec's cease and desist letter (which was sent in December
2021).  Both Mr. Bader and Ms. Martens appeared on BlendJet's behalf at the commencement of
this case and were admitted *pro hac vice*.  (Dkt. 11-12, 14, 16.)  My former colleague, SMRH
partner Jesse Salen, also joined BlendJet's defense team in the wake of Ms. Marten's retirement,
has appeared in this case, and has been admitted *pro hac vice*.  (Dkt. 57, 60.)

50.    The Motion and Ms. Kapaloski's Declaration submitted in support of the Motion
contains a number of material misrepresentations, which should be corrected for the Court's
benefit.

51.    For example, Blendtec's suggestion that BlendJet somehow "lead [*sic*]
[Blendtec's counsel] to believe that Blendjet [*sic*] did not have counsel prior to engaging SM in
connection with this lawsuit in November 2021" because BlendJet represented in response to
Blendtec Interrogatory No. 5 that – essentially – ██████████████████████
██████████████████████ is disingenuous, at best.  (Motion at 2; Kapaloski
Decl. at ¶ 7, Ex. 2 at 8-9.) ██████████████████████

██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████

52.    With respect to Ms. Kapaloski's description of "the parties meet-and-confer
related to the designation of each side's respective ESI custodians," Ms. Kapaloski asserts that
BlendJet failed to disclose the fact that I have served as BlendJet's outside legal counsel relating

to intellectual property matters.  (*See* Kapaloski Decl. at ¶¶ 11-12.)  That suggestion ignores the fact that BlendJet expressly stated in that correspondence ███████████████████████

████████████████████████████████████████████████████████████

████████  At all times relevant to Blendtec's inquiry, I was acting as BlendJet's outside legal counsel.  Blendtec never sought clarification as to ████████████████████████████

████████████████████████

53.      Additionally, BlendJet's statements in the aforementioned email correspondence are completely consistent with its response to Blendtec Interrogatory No. 8 ("State the name and title of all persons involved in your decision to use the BLENDJET Mark or the BlendJet Swirl Design Mark . . .").  (*See* Kapaloski Decl. at Ex. 2, at 12-13.)  As recounted above, and described in response to Blendtec Interrogatory No. 8, ██████████████████████████████

████████████████████████████████████████████████████████████

████████████

54.      I recall the telephonic conference referred to in Paragraph 8 of Ms. Kapaloski's Declaration, which occurred on August 23, 2022, and related to Blendtec's attempt to modify the standard protective order (the "SPO") in this District to permit each party's respective "House Counsel" to view documentation produced under the "CONFIDENTIAL INFORMATION – ATTORNEYS EYES ONLY" designation ("AEO documentation").  (*See* Kapaloski Decl. at Ex. 3.)

55.      Both myself and Ms. Martens attended that conference on BlendJet's behalf.  We articulated multiple bases for our objection to Blendtec's attempt to allow its in-house Chief Legal Officer, Michael Monson, access to BlendJet's AEO documentation (including the fact that BlendJet does not have any in-house counsel, making Blendtec's proposal entirely self-

serving). The most material objection was that, as far as we could discern at that time, Mr. Monson was (and is) a "competitive decisionmaker" for Blendtec under the standard articulated by the Federal Circuit in *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984). We explained that we believed as much because Mr. Monson: ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████

56.    Attached hereto as **Exhibit N** is a true and correct copy of Blendtec's verified Responses to BlendJet's First Set of Discovery, dated August 8, 2023. ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

57.    For these reasons, we explained that Blendtec had failed to demonstrate "good cause" to warrant modification of the SPO. *See Martinez v. City of Ogden*, Case No. 1:08-cv-00087-TC-DN, 2009 WL 424785, at *2 (D. Utah Feb. 18, 2009) ("The party seeking a protective order has the burden to demonstrate good cause.").

58.    After we had outlined our reasons for objecting to Mr. Monson's access to BlendJet's AEO documentation during the August 23 conference, Ms. Martens and myself requested that Blendtec's counsel provide us with any countervailing information or case law to support its suggestion that he be provided such access.  Neither Ms. Kapaloski nor Mr. Foster ever provided any further information, or raised their proposal again prior to the filing of the Motion.[5]

59.    Similarly, Ms. Kapaloski's narrative in Paragraph 9 of her Declaration fails to acknowledge the complete context of the events described therein.  The email chain attached to her Declaration as Exhibit 4 clearly indicates that Mr. Pamplin signed the Disclosure Agreement to the SPO pursuant to our belief that a party's "director, officer or employee" who is qualified to receive CONFIDENTIAL material under the SPO should sign the Disclosure Agreement.  (*See* Kapaloski Decl. at Ex. 4 at 1 ("The Disclosure Agreement expressly provides for such individuals to sign the undertaking upon being given access to the other party's CONFIDENTIAL information (*i.e.*, the first option in Exhibit A for a signatory to quality as a recipient of PROTECTED INFORMATION under that document").).)[6]  Mr. Pamplin was never to be qualified as a TECHNICAL ADVISOR or receive AEO documentation under the terms of the standard protective order as agreed, which we explained to Blendtec, making their objection

---

[5] Interestingly, given the instant motion, the express definition of "Outside of Counsel" that Blendtec suggested in its proposed modification to the standard protective order would not have prohibited me from accessing Blendtec's AEO documentation, as I was (and continue to be) an "attorney[ ] who [is] not [an] employee of a Party, but [is] retained to represent or advise a Party in this action and ha[s] appeared in this Action on behalf of that Party . . . ."  (*See* Kapaloski Decl. at Ex. 3 at 7.)

[6] In violation of the SPO, Blendtec has refused to have its "director[s], officer[s], or employee[s]" who were provided BlendJet's information produced in this action under a CONFIDENTIAL designation sign the Disclosure Agreement, or to likewise provide signed versions of the Disclosure Agreement to BlendJet (as BlendJet did for Blendtec, with respect to Mr. Pamplin).

and citation to this Court's ruling in *Definitive Holdings* inapplicable – not only to outside

counsel in general (which are expressly authorized to receive and view AEO documents under

the standard protective order), but even to Mr. Pamplin in particular.  (*See* **Exhibit O** (a true and

correct copy of Mr. Pamplin's Disclosure Agreement, dated Sept. 20, 2022, showing that he was

not disclosed as a TECHINCAL ADVISOR).)

60.    Despite Ms. Kapaloski's statement that Blendtec "would certainly have

designated "the [patrick.mcgill@blendjet.com email address] as a Blendjet [*sic*] ESI Custodian,"

counsel for Blendtec has never requested to designate that email address – that, again, was

associated with my work as outside legal counsel for BlendJet – as a BlendJet ESI Custodian.

61.    Finally, and perhaps most egregious of all, is Blendtec's statement that somehow

BlendJet "concealed" the content of my and Mr. Pamplin's publicly-available LinkedIn profiles

from them "until after the January 23 deadline."  (Motion at 4.)  As Ms. Kapaloski recounted in

her Declaration, those profiles were readily available to the public, and the statements that are

cited from those profiles are dated August 18, 2020 (with respect to my statements on Mr.

Pamplin's LinkedIn profile), and January 10, 2021 (with respect to Mr. Pamplin's statements on

my LinkedIn profile) – meaning that they were posted many months before Blendtec filed its

complaint in the above-captioned suit.  (*See* Kapaloski Decl. at ¶¶ 31-23, Exs. 18 and 19.)

## V.     My Commitment to the Standard Protective Order.

62.     I have been – and continue to be – absolutely committed to the appropriate treatment and protection of any such information from any unwarranted or inadvertent disclosure, contrary to the terms of the SPO in effect in this case.

DATED this 16th day of May, 2023.

*/s/ Patrick McGill*

Patrick McGill