MARTIN R. BADER (*Pro hac vice*)
mbader@sheppardmullin.com
JESSE A. SALEN (*Pro hac vice*)
jsalen@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
Telephone:    858.720.8900

PATRICK McGILL (*Pro hac vice*)
patrick@mcgillco.com
MCGILL & CO., P.C.
5580 La Jolla Blvd, Suite 39
La Jolla, CA  92037
Tel: (619) 974-8886

Nathan D. Thomas (USB #11965)
Elizabeth M. Butler (USB #13658)
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah  84111
Telephone:  (801) 532-1234
nthomas@parsonsbehle.com
lbutler@parsonsbehle.com

*Attorneys for Defendant BlendJet Inc.*

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **BLENDTEC INC.**, a Utah corporation,<br><br>     Plaintiff,<br><br>vs.<br><br>**BLENDJET INC.**, a Delaware corporation,<br><br>     Defendant. | **DECLARATION OF RYAN PAMPLIN IN SUPPORT OF BLENDJET'S RESPONSE TO BLENDTEC'S MOTION TO ENFORCE THE PROTECTIVE ORDER, DISQUALIFY PATRICK MCGILL AND SHEPPARD MULLIN, AND FOR ATTORNEYS' FEES**<br><br>**[REDACTED VERSION]**<br><br>Civil No. 2:21-cv-00668-TC-DBP<br><br>Judge Tena Campbell<br>Magistrate Judge Dustin B. Pead |

I, RYAN PAMPLIN, declare as follows:

1.　　I am the Co-Founder and Chief Executive Officer of BlendJet Inc. ("BlendJet"), the defendant in the above-captioned action.  I submit this declaration in support of BlendJet's Response to Plaintiff Blendtec, Inc.'s ("Blendtec") Motion to Enforce the Protective Order, to Disqualify Patrick McGill and Sheppard Mullin, and for Attorneys' Fees (Dkts. 105, 110, the "Motion").  I am fully familiar with the facts set forth in this declaration from personal knowledge, or from documents that I have reviewed.  If called as a witness, I could and would testify competently under oath to the facts contained herein.

## I.　　The History of Mr. McGill's Representation of BlendJet as Outside Counsel.

2.　　BlendJet has never employed in-house counsel, or "general counsel," and does not presently do so.

3.　　Instead, BlendJet has always engaged and relied on the advice of outside legal counsel to guide it with respect to matters of corporate governance, intellectual property, the terms and conditions of various transactions in which it has engaged, and with respect to handling and resolving legal matters with external parties.

4.　　Since BlendJet's foundation in December 2017, the roster of outside counsel that BlendJet has relied upon to provide it with legal counsel includes (but is not limited to):

- VLG Law Group (https://www.vlplawgroup.com/) (corporate counseling);

- Sheppard Mullin Richter & Hampton LLP ("SMRH") (corporate counseling; general transactional counsel; counseling regarding intellectual property portfolio development and disputes (including the above-captioned lawsuit); privacy counsel; and more);

- Warner Norcross + Judd (trademark counsel);

-1-

- Esplin & Associates, P.C. (patent counsel); and

- A proliferation of regional and international firms, which have acted as local counsel in intellectual property prosecution and various litigation matters.

5.      BlendJet has also relied on the counsel of Mr. Patrick McGill, counsel of record in this case.  Mr. McGill has worked with BlendJet as its outside legal counsel for nearly four-and-a-half years.  In that time, he has provided legal services in a variety of subject matter areas, but the majority of his time has been spent representing BlendJet is this litigation.

6.      Early on in BlendJet's lifetime (late 2018 through early 2019), we engaged Mr. McGill as an independent contractor to provide us with legal advice.  In an attempt to convince him to engage with us and work with BlendJet at this time, we invited Mr. McGill to visit our office in the San Francisco Bay Area in late 2018, and reimbursed him for the costs of his flight and other travel expenses incurred in doing so.

7.      My co-founders and I negotiated ██████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████ ████████████████ He was not an employee of BlendJet while he worked with us as an independent contractor, and he did not receive any employee benefits while he did so.

8.      I am a lifelong entrepreneur, and have guided a company that I have founded to a successful exit. ████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████ I had the benefit of consulting with counsel in connection with that decision.

9.      When we engaged Mr. McGill as an outside legal advisor in 2019, I understood that he was considering joining a law firm in the near future.  As such, when Mr. McGill informed me that he was joining SMRH in April 2019 – a firm that was familiar to us as we previously hired SMRH as our corporate and patent counsel – we mutually agreed that our master services agreement with him would terminate as of the day he started his new role at that law firm.

10.      Mr. McGill acted as one of BlendJet's many outside legal counsel during the entirety of his time at SMRH.  Of course, he was not an employee of BlendJet while he worked at SMRH, and he did not receive any employee benefits or other trappings of employment at BlendJet while he worked as an associate at SMRH.  Instead, at that time he worked along-side other lawyers at SMRH and with myself and other members of our BlendJet team to provide us with legal counsel as needed.  During the entirety of his time at SMRH, I always understood that Mr. McGill acted and advised us as outside legal counsel in concert with his colleagues at SMRH – for example, partners Michael Umansky with respect to corporate matters, and Martin Bader with respect to intellectual property matters, along with many other partners and senior counsel at that firm.

11.      When Mr. McGill decided to open his new firm, McGill & Co., BlendJet immediately entered into an engagement letter. ███████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

12.     Mr. McGill is not a BlendJet employee at the present time.  He serves BlendJet as its outside legal counsel through his firm, McGill & Co.  He has no entitlement to, and does not receive, any employee benefits from BlendJet (like medical or retirement benefits) – nor is he supervised by anyone at BlendJet.  Instead, he provides legal advice to us when called for, and – as far as I understand – continues to work closely with his former colleagues at SMRH on corporate and litigation matters, including with respect to the Blendtec suit.

## II.     Correction of the Many Factual Misstatements and Misrepresentations in the Kapaloski Declaration.

13.     I have been provided, and have read, the Motion, and the declaration submitted by Ms. Tamara Kapaloski in support of the Motion (the "Declaration").

14.     The are many factual misstatements and misrepresentations found in the Motion and Declaration.

15.     The most obvious and animating misstatement found throughout the Motion is the claim that Mr. McGill is, or at some point was, a BlendJet employee.  (*See, e.g.*, Motion at 3, 4, and 7.)  This is simply factually untrue, as discussed above.  Mr. McGill is – and always has been – BlendJet's outside legal counsel, and there has never been any ambiguity about that between Mr. McGill and BlendJet (or myself, in particular).

16.     To that point, by no means did I – or anyone else at BlendJet, to my knowledge – mean to convey that Mr. McGill is somehow a BlendJet employee, or "in-house" legal counsel, through our reference to him as BlendJet's "lawyer," or through the inclusion of his name and picture in certain presentations to potential partners and transactional counterparties.  (*See, e.g.*, Motion at 4; Declaration at ¶¶ 24-30.)  Mr. McGill is and has long been BlendJet's outside legal counsel, and so he is "our lawyer."  There is nothing more to it than that.

-4-

17.    We referenced Mr. McGill in past presentations to potential partners and transactional counterparties as ███████████ because Mr. McGill's ████████ ███████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████████████ The very presentation referenced by Blendtec in the Motion and Declaration expressly states ████ ████████████████████████

18.    Exhibit 16 to the Declaration also references Ms. Jen Selter as ████████ ██████ Ms. Selter is BlendJet's spokesperson, and also is not an employee of BlendJet. ██ ████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████

19.    The fact that Mr. McGill had access to an "@blendjet.com" email address for a short period of time in 2019 and 2020 did not reflect any status as an "in-house" counsel or employee of BlendJet during that period of time.  (*See* Motion at 3-4; Declaration at ¶¶ 24-26, Exs. 13-15.)  BlendJet provided that email address to Mr. McGill because, during the initial period of his service as our outside legal counsel, he was working as a solo practitioner without his own professional email address.  I personally tried to stop emailing that address once Mr. McGill joined SMRH, and instructed my team to do the same – but we did nevertheless inadvertently send messages to that address for some time after he joined BlendJet (due to the use of the "autocomplete" feature in our email client, or through a lack of attention).  I

understand that Mr. McGill continued to monitor that address for a few months after he joined

SMRH to ensure that he caught any missent emails, which were requests for legal advice.

    20.    Regardless, 

    21.    The existence of and Mr. McGill's use of the "@blendjet.com" email address that

we created for him years ago, and that he stopped using years ago, did not change the substance

of the work that Mr. McGill performed for BlendJet at that or any time, or somehow make him

our "employee" or "in-house" lawyer during that time.

    22.    The same is true with respect to the "legal@blendjet.com" email address.  Emails

sent to that alias ███████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████

    23.    I have reviewed Exhibit 17 to the Declaration, which is ███████████

### III.    Mr. McGill Is Not – and Has Never Been – Involved in "Competitive Decision Making" at BlendJet.

24.    Mr. McGill is one of our many outside legal counsel.  At no point in time has Mr. McGill been involved in pricing, product design, marketing strategy, or any other similar business decision made in light of information about BlendJet's competitors (of which Blendtec is not one, in any case).

25.    For example, Mr. McGill has had no part in BlendJet's selection of, and decision to apply to register, the BlendJet Marks at issue in this suit.  To the contrary, as of the date that BlendJet first began working with Mr. McGill in his capacity as solo practitioner, I had already applied to register the BLENDJET word mark with the UPSTO in September 2018. We had also already developed and launched the "BlendJet One" – which, as of that date, had already been developed and was being sold directly to customers via BlendJet's website (www.blendjet.com) under the BLENDJET word mark and in connection with the original version of BlendJet's "swirl" logo mark.

26.    The same goes for the selection and decision to apply to register the BlendJet logo mark.  ██████████████████████████████████████████ ████████████████████████████████ I filed the application to register the BlendJet logo mark with the USPTO, ██████████████████████████ ██████

27.    Furthermore, Mr. McGill's status ███████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████

28.    It is also untrue that Mr. McGill is ███████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████

29.    Mr. McGill's █████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████

**IV.    Mr. McGill Has Not Shared any Blendtec AEO Information.**

30.    At no point since the commencement of this lawsuit has Mr. McGill shared any information produced by Blendtec as "CONFIDENTIAL INFORMATION – ATTORNEYS EYES ONLY" with me, or with any other BlendJet personnel.

31.    Under no circumstances would I want, desire, or otherwise pressure Mr. McGill to share any such information with myself, or with anyone else at BlendJet.

DATED this 16th day of May, 2023.

DocuSigned by:

*Ryan Pamplin*

284C58C5AD704EC...

Ryan Pamplin