Brett Foster (#6089)
Grant Foster (#7202)
Tamara Kapaloski (#13471)
**DORSEY & WHITNEY LLP**
111 S. Main Street, Suite 2100
Salt Lake City, UT 84111
Telephone: (801) 933-7360
Facsimile:  (801) 933-7373
foster.brett@dorsey.com
foster.grant@dorsey.com
kapaloski.tammy@dorsey.com

*Attorneys for Plaintiff Blendtec Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **BLENDTEC INC.**, a Utah corporation,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>**BLENDJET INC.**, a Delaware corporation,<br><br>　　　　Defendant. | **BLENDTEC'S REPLY TO BLENDJET'S RESPONSE TO MOTION TO ENFORCE THE PROTECTIVE ORDER AND TO DISQUALIFY MCGILL**<br><br>Civil No. 2:21-cv-00668-TC-DBP<br><br>Judge Tena Campbell<br><br>Magistrate Judge Dustin B. Pead<br><br>**[REDACTED VERSION FOR PUBLIC FILING]** |

Plaintiff Blendtec Inc. ("Blendtec") hereby submits its Reply to Defendant Blendjet Inc.'s ("Blendjet") Response to Blendtec's Motion to Enforce the Protective Order and to Disqualify.

I.   **McGill's Access to Blendtec's AEO Information Should be Revoked.**

  A.   **McGill Did Not Disclose Facts Relevant to the Analyses Until *After* He Already Had Access to Blendtec's AEO Information.**

This is not a routine case where the analyses set forth in *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984) readily applies. *U.S. Steel* and its progeny, upon which Blendjet relies, involved determining whether to grant access to protected information <u>before the person actually received that information</u>. *See id*. at 1468 ("the access decision" at issue in *US Steel*); *Brown Bag Software v. Symantec Corp.*, 905 F.2d 1465 (9th Cir. 1992) (denying access to trade secrets before disclosure); *Definitive Holdings v. Powerteq*, 2019 WL 6682395 (D. Utah 2019) (determining qualification as Technical Advisor before disclosure); *Catheter Connections, Inc. v. Ivera Med. Corp.*, 2014 WL 3945880, at *1 (D. Utah 2014) ("dispute centers on" whether counsel "may see [AEO] information"); *Suture Exp. v. Cardinal Health*, 2013 WL 6909158 (D. Kan. 2013) (motion for protective order before disclosure).

Here, neither Blendjet nor its counsel disclosed the ███████████████[1] until <u>after</u> Blendtec had already produced 388,854 pages of documents directly to McGill, much of which constitutes Blendtec's AEO information. *See* Kapaloski Reply Decl. at ¶63. Under these circumstances, the *U.S. Steel* analysis is largely inapplicable, because its purpose is to determine whether a risk of inadvertent disclosure exists *prior* to the receipt of AEO information.

For example, *Field Turf USA v. Sports Const. Group*, 2007 WL 4412855 (N.D. Ohio 2007), involved failures to disclose counsels' ownership interest in defendant prior to receiving access to protected information. The attorney in *Field Turf* (Lasko) submitted an affidavit to the court stating

---

[1] Out of an abundance of caution, Blendtec is redacting everything that Blendjet may contend constitutes its AEO information. *See* Kapaloski Reply Decl. at p. 19, fn. 3.

1

that he was not an "employee" of defendant and that he was "outside counsel" under the stipulated protective order and therefore did not violate the protective order by receiving AEO documents. *Id*. at *3 (protective order prohibited access to AEO by employees). Without engaging in the *US Steel* analyses, the district court found that "[a]t each stage of litigation over the issue of Attorney Lasko's relationship with SCG, SCG, Attorney Lasko and the Lasko firm have revealed only so much information as they deemed necessary." *Id*. at 5. Because Lasko was not a SCG employee, the court found he did not violate the protective order, but the court nevertheless held that "Attorney Lasko and the Lasko firm have acted in bad faith." *Id*. As a result, the court disqualified counsel, dismissed defendant's counterclaims, and modified the protective order to "preclude disclosure of all information designated as attorneys' eyes only to any officer or member of SCG." *Id*. at 7. The court also indicated that the result might have been different "if all of the information now revealed had been disclosed when plaintiffs initially sought this information" and if "SCG and Attorney Lasko had admitted their relationship and confronted the issue when the stipulated protective order was being negotiated." *Id*.

Similarly, *Mynette Techs v. United States*, 163 Fed. Cl. 733 (Fed. Cl. 2022), involved plaintiffs' counsel of record, Yorio, who was also a shareholder of plaintiff Mynette and a member of its board at the time of litigation. *Id*. at 739. Defendant did not learn of Yorio's relationship with Mynette until five years into the litigation. *Id*. The court found that Yorio did not violate the protective order, but noted that, by failing to disclose the relationship, Yorio and plaintiff "took it out of the Court's hands to decide who gets AEO access and made the decision themselves." *Id*. at 751. The court distinguished cases that did not involve a failure to disclose:

> Significantly, in every single case the parties rely on, . . . the courts were deciding an individual's access to confidential information under a protective order *before* the

2

individual received said information. Here, the ship has long since sailed; the court must exercise its broad discretion and craft a remedy accordingly.

*Id*. at 758. The court modified the protective order to address the risk of harm. *Id*. at 771.

The same analyses applies here. The purpose underlying the *US Steel* analyses was frustrated by the failure to disclose the ▮▮▮▮▮▮▮▮▮▮▮▮ prior to McGill's receipt of AEO documents. Blendjet and McGill took that decision out of the Court's hands and out of the parties' negotiations and made it for themselves. In this situation, courts may bar access to AEO documents as a sanction for non-disclosure regardless of the *US Steel* analyses. *See, e.g.*, *Field Turf* and *Mynette Techs*, *supra*; *Life Techs. Corp. v. Biosearch Techs., Inc.*, 2012 WL 16000393, at *10 (N.D. Cal. 2012) (barring attorney's further access to confidential information where attorney provided confidential documents to expert without proper advance disclosure of expert); *Liion, LLC v. Vertiv Group Corp.*, 2020 WL 6038055, at *6 (N.D. Ill. 2020) (where counsel of record Barney did not disclose his ownership interest in party, "going forward Barney may not access AEO materials or discuss with anyone AEO materials he once accessed").

    **B.**    **Even If The ▮▮▮▮▮▮▮▮▮▮▮▮ Had Been Disclosed *Before* McGill's Receipt Of AEO Documents, McGill Is Not Qualified To Receive AEO.**

Even assuming *US Steel* applied, Blendjet applies the wrong standard under that decision. First, Blendjet relies on rote labels like "inside counsel," "outside counsel," "decision maker," and "employee" to argue McGill is qualified to access AEO under the SPO. *See, e.g.*, Opp. at 1-2, 4-5. But Blendjet's recitation of such catch words from *US Steel* proves nothing and is irrelevant. The law is crystal clear that labels do not control. *See Catheter Connections v. Ivera Med. Corp.*, 2014 WL 3945880, at *7 (D. Utah 2014) (court should not "give controlling weight to a counsel's title"); *Autotech Techs. v. Automationdirect.com*, 237 F.R.D. 405, 407 (N.D. Ill. 2006) ("federal

courts have refused to allow controlling weight to be given to the classification of counsel as in-house rather than retained"); *id*. at 408 ("courts must be wary of the uncritical and indiscriminate use of catch phrases--like the one used in *United States Steel*: [*i.e.*, "competitive decision making"]."); *Norbrook Labs. v. GC Hanford*, 2003 WL 1956214, a *5 (NDNY 2003) (whether lawyer is party's "in-house counsel is of no consequence") (denying access to outside counsel).

Second, Blendjet repeats the litany that McGill "has never been a[] . . . decision maker at Blendjet." Opp. at 2. *US Steel* did not use "the phrase competitive decision-making" as "a stand-alone litmus test," however. *Catheter Connections*, 2014 WL 3945880, at *6. Rather:

> "the proper analysis," is made on a "counsel-by-counsel basis," and "requires a careful and comprehensive inquiry" into "counsel's "actual (not nominal) role in the affairs of the company, his association and relationship with those in the corporate hierarchy who are competitive decision makers, and any other factor that enhances the risk of inadvertent disclosure."

*Id*. at *7 (citing *US Steel*) (cleaned up). "*United States Steel* made it clear that analysis of the risk of inadvertent disclosure involves an assessment of the entire setting in which in-house counsel functions, and that involvement in competitive decision-making, while an important consideration, was not necessarily the exclusive one." *Autotech,* 237 F.R.D. at 407-408.

Finally, Blendjet focuses solely on whether McGill <u>*is himself*</u> a competitive decision maker. *See, e.g.,* Opp. at 2 (McGill has never been a "decision maker at Blendjet"); *id*. at 7 (same). Although counsel's status as a competitive decision maker would likely end the inquiry, it is not necessary to find an unacceptable risk of inadvertent disclosure. The proper focus is "counsel's activities, association, and relationship with a client that are such as to <u>involve counsel's advice and participation in any or all of **the client's decisions**</u>." *US Steel*, 730 F.2d at 1468, n.3 (emphasis added). *See also Catheter Connections*, 2014 WL 3945880, at *7 (relevant factor is counsel's

4

"association and relationship with those in the corporate hierarchy who are competitive decision makers"). Thus, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ is sufficient to deny AEO access. *See Norbrook*, 2003 WL 1956214, at *5 (while counsel "may not directly participate in competitive decision making . . . he sits in the same room as those who are involved in competitive decision making") (denying outside counsel access to AEO).

**1.** 

---

[2] Blendjet's four founders and top executives are its CEO Ryan Pamplin ("Pamplin"), Pamplin's wife and Blendjet Vice President Kathryn O'Malley ("O'Malley"), Blendjet CRO John Zheng ("Zheng"), and Blendjet Vice President Brian Zuk ("Zuk").

[3] Most of the Exhibits submitted in connection with Blendtec's Reply were only produced by Blendjet ***after*** Blendtec filed its Motion to Enforce on May 2, 2023. Kapaloski Reply Decl. at ¶¶2-3. Further, all of the Blendjet documents submitted herewith directly respond to arguments made in Blendjet's Opposition. *See id*. at ¶¶4-9.

[4] ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *See* Kapaloski Reply Decl. at ¶¶16-29. Further, the self-serving declarations of Pamplin and McGill do not comply with 28 U.S.C. § 1746. *See Huff v. US*, 2013 WL 5947128, *4 (D. Utah 2013) (court will not consider declaration that "fails to meet the [§1746] standard").



---

[5] ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. *See* Exh. 8 at JET543496.





See, e.g., *Autotech*, 237 F.R.D. at 407 (counsel faces "different pressures" when "their own economic well-being is inextricably bound up with their employer's") (denying AEO access). If the decision had been presented to the Court *before* McGill's receipt of AEO, it would be well within the Court's discretion to deny access here.

2.  **A Risk or Opportunity for Inadvertent Disclosure Is Highly Likely.**

Although Blendtec is deeply concerned by the ambiguity in the statement (*see* Kapaloski Reply Decl. at ¶¶32-34), McGill vaguely states that he is committed to the SPO. ECF 124-2 at ¶62. "[G]ood intentions are insufficient to prevent inadvertent disclosure of confidential information,"

---

[7] [redacted]

[8] [redacted]

8

however. *Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 531 (N.D. Cal. 2000). *See also Autotech*, 237 F.R.D. at 408 ("compartmentalization of protected information" is "a feat beyond the compass of ordinary minds"). ███████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████ There is an unacceptable risk or opportunity for inadvertent disclosure here.

### 3. Blendjet Will Not Be Unduly Harmed Because It Has Other Counsel.

A party "is not unduly prejudiced by [counsel's] restricted access," where "other outside counsel have been involved in the litigation from its outset, and they are fully familiar with the facts and disputes at issue." *Norbrook*, 2003 WL 1956214, at *5. Sheppard Mullin and Parsons Behle have been actively involved in this litigation from the outset.

## II. McGill Should Be Disqualified For Breaching His Ethical Duties.[9]

Blendjet presents expert opinion that McGill's ████████ is consistent with ethical rules. ECF 124-4 (Lalli Opinion 2). Blendtec did not claim otherwise. Rather, Blendtec's request to disqualify is based on two things. First, the Court-Ordered ESI Protocol required McGill to meet and confer in good faith during ESI custodian conferral. ECF 33 at ¶30. By failing to disclose himself during custodian conferral, McGill violated the ESI Protocol Order and Rule 3.3. *See* Kapaloski Reply Decl. at ¶¶35-38.[10] Second, by failing to disclose the ████████

---

[9] Although Blendtec believes that SM lawyers knew about, and should have disclosed, the ████████████████████, Blendtec withdraws its request to disqualify SM.

[10] Had McGill disclosed ███████ during ESI conferral, Blendtec would have designated him as an ESI custodian. Blendjet now faults Blendtec because it "never requested to designate" McGill. *See* McGill Decl. at ¶60. This argument is disingenuous. *See* Kapaloski Reply Decl. at ¶¶47-50; Foster

9

██████, McGill violated Rule 3.4 (fairness to opposing counsel), Rule 4.1 (truthfulness in statements to others), and Rule 8.4 (misconduct). *See* Kapaloski Decl. at ¶¶51-52. *See Mynette*, 163 Fed. Cl. 733, 759-60 (finding lawyer violated rules by failing to disclose his relationship with party before access occurred). Mr. Lalli's opinion that ██████████████ is not unethical is irrelevant.

Mr. Lalli's other Opinions are based solely on two Blendjet documents (█████████████████████████████████████). *See* ECF 122-21 at 3. However, consideration of two documents cherry-picked by Blendjet is not the proper analyses. *See, e.g., Catheter Connections*, 2014 WL 3945880, at *7 ("proper analysis requires a careful and comprehensive inquiry" into "counsel's actual (not nominal) role in the affairs of the company, his association and relationship with those in the corporate hierarchy who are competitive decision makers, and any other factor"). Any objective look at the complete factual record concerning █████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████.

## CONCLUSION

The Court should disqualify McGill, or, at the very least, revoke his AEO access and use. Blendtec should also be permitted to designate McGill as an ESI Custodian and serve email production requests for McGill (all relevant email addresses).

---

Decl. at ¶¶17-20. Blendtec requests permission to designate McGill as an ESI Custodian (all relevant email addresses) and serve email production requests for him.

10

DATED this 30th day of May, 2023.

                              DORSEY & WHITNEY LLP

                              /s/ *Tamara L. Kapaloski*
                              Brett Foster (#6089)
                              Grant Foster (#7202)
                              Tamara L. Kapaloski (#13471)

                              *Attorneys for Plaintiff Blendtec Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of May, 2023, a true and correct copy of the foregoing was served on the following counsel of record via the Court's CM/ECF system:

Martin R. Bader: mbader@sheppardmullin.com
Jesse A. Salen: jsalen@sheppardmullin.com
Patrick M. McGill: patrick@mcgillco.com
Nathan D. Thomas: nthomas@parsonsbehle.com
Elizabeth M. Butler: ebutler@parsonsbehle.com

                                                                 */s/ Tamara L. Kapaloski*