Brett Foster (#6089)
Grant Foster (#7202)
Tamara Kapaloski (#13471)
**DORSEY & WHITNEY LLP**
111 S. Main Street, Suite 2100
Salt Lake City, UT 84111
Telephone: (801) 933-7360
Facsimile:  (801) 933-7373
foster.brett@dorsey.com
foster.grant@dorsey.com
kapaloski.tammy@dorsey.com

*Attorneys for Plaintiff Blendtec Inc.*

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **BLENDTEC INC.**, a Utah corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>**BLENDJET INC.**, a Delaware corporation,<br><br>    Defendant. | **DECLARATION OF TAMARA KAPALOSKI IN SUPPORT OF BLENDTEC'S REPLY TO BLENDJET'S RESPONSE TO MOTION TO ENFORCE THE PROTECTIVE ORDER AND TO DISQUALIFY**<br><br>Civil No. 2:21-cv-00668-TC-DBP<br><br>Judge Tena Campbell<br>Magistrate Judge Dustin B. Pead<br><br>**[READACTED VERSION FOR PUBLICL FILING]** |

I, TAMARA KAPALOSKI, declare as follows:

1.      I am an attorney at the law firm of Dorsey & Whitney LLP ("Dorsey"), counsel to

Plaintiff Blendtec Inc. ("Blendtec") in the above-captioned action. I submit this declaration (the

"Kapaloski Reply Decl." or "Reply Decl.") in support of Blendtec's Reply to Blendjet's Response to Motion to Enforce and to Disqualify. I am fully familiar with the facts set forth in this Reply Decl. from personal knowledge or from documents that I have reviewed. If called as a witness, I could and would testify competently under oath to the facts contained herein.

I. **In Response to Arguments Made in Blendjet's Opposition to the Motion, Blendtec Submits Additional Documents to the Court.**

2. In connection with its Reply, Blendtec is submitting to the Court a total of 22 documents produced by Blendjet and regarding ███████████████████. Seventeen (17) of those documents are attached as exhibits directly to the Reply and five (5) of those documents are attached to this Reply Declaration. Each of these documents respond to arguments Blendjet made in its Opposition.

3. Twelve (12) of the 22 Blendjet documents that Blendtec submits in support of its Reply were only produced by Blendjet ***after*** Blendtec filed its Motion to Enforce on May 2, 2023. *See infra* at ¶61.

4. Although the remaining ten (10) exhibits that Blendtec submits in connection with its Reply were produced by Blendjet before Blendtec filed the Motion to Enforce, each responds directly to arguments made by Blendjet in its Opposition to the Motion to Enforce as set forth below:

      <u>Three Exhibits Respond to Blendjet's Argument Regarding the</u> ██████████████

5. In connection with its Motion to Enforce, Blendtec submitted to the Court a ███████ ████████████ produced by Blendjet which stated that ███████████████████████ ██████" *See* ECF 113-8 (Exhibit 17 to opening Kapaloski Decl).

6.      In Blendjet's Opposition, Blendjet argued that the reference to ██████████ ███████████████████████████. *See* ECF 124 (Opposition) at p. 3 ("On occasion, Blendjet's employees have mistakenly referred to McGill as 'general counsel' "); *see also* ECF 124-3 (Pamplin Decl.) at ¶23 ██████████████████████████████████████ ████████████████████████████████████").

7.      In response to Blendjet's Opposition argument, Blendtec submits Exhibits 2-4 to the Kapaloski Reply Decl., which are Blendjet documents regarding the ████████████ ██████████.

Seven Exhibits Respond to Blendjet's Argument Regarding ████████████████

8.      Blendjet argues in its Opposition that "McGill has never been an officer, director, signatory, or competitive decision maker for Blendjet." *See* ECF 124 (Opposition) at p. 9.

9.      In response to this argument, Blendtec searched Blendjet's 1,342,203 page document production and is submitting to the Court in connection with its Reply seven exhibits, that, although produced by Blendjet prior to the time Blendtec filed its Motion to Enforce, Blendtec believes respond to Blendjet's Opposition argument regarding ████████████████.

**II.** ████████████████████████████████████████████████

10.      In Blendtec's March 1 subpoena and in its renewed March 15 subpoena to McGill and to Sheppard Mullin ("SM"), Blendtec provided the Bates number to a document that concerned Blendtec. *See* ECF 120-22 (McGill Subpoena Request No. 18; SM Subpoena Request No. 16). Specifically, Blendjet produced as JET14130 ████████████████████████████ ██████ That document stated that ██████████████████████████████████ ████████████████████████████████. Blendtec's subpoena requested

documents similar to JET14130. *See* (McGill Subpoena Request No. 18; SM Subpoena Request No. 16).

      11.     During meet and confer, we repeatedly expressed our concern regarding ██████ ██████. *See* ECF No. 120-20 at 3 (March 6 email); ECF No. 120-21 at 2 (March 14 email).

      12.     On April 21, 2023, McGill, Blendjet, and SM objected to the subpoena request related to JET14130 and refused to produce any documents. *See* ECF Nos. 120-25 through 120-28 (Objections to Subpoenas).

      13.     During a May 1, 2023, telephonic meet and confer conference, we again expressed our concerns with the ██████████ . Blendjet's counsel, Jesse Salen, requested that we provide an example of a document that caused us concern. I expressly identified JET14130 during that call. *See* Kapaloski Reply Decl. **Exhibit 1** at p. 4 (Jesse Salen acknowledged that Blendtec "contend[ed]" JET14130 "raise[d] concerns as to McGill's ability to view confidential information").

      14.     Thereafter, Blendjet counsel Jesse Salen provided the following explanation of JET14130:

> "Specific to Jet14130, that was apparently a ██████████ to one of Blendjet's potential partners that was never executed, was prepared by a junior Blendjet employee who did not understand the actual nature of ██████████

Exhibit 1 at p.1. According to Mr. Salen, this statement provided "proper context" for JET14130. Ehxibit 1 at p. 2.

      15.     Blendjet's counsel intended for Mr. Salen's statements regarding JET14130 to address Blendtec's concerns. In a declaration that Blendjet counsel Martin Bader submitted to this Court in opposition to Blendtec's Motion to Enforce, Mr. Bader represented that "Blendjet

promptly followed up with Blendtec" following the May 1 conference "to address Blendtec's concerns." ECF 124 (Bader Decl.) at ¶7.

16.    Blendjet CEO, Ryan Pamplin ("Pamplin"), also submitted a declaration to this Court dated May 16, 2023, in opposition to Blendtec's Motion to Enforce. *See* ECF 124 (Pamplin Decl.).[1] In his declaration, Mr. Pamplin discusses the ██████████████. Mr. Pamplin represented in his declaration that ████████████████████████ ████████████████████ ECF 124 (Pamplin Decl.) ¶23. Pamplin also states that "████████████████████████████ ████████████" *Id*.

17.    As shown in the following paragraphs, the representations of Blendjet CEO Pamplin and of Blendjet counsel Jesse Salen are contradicted by the documentary evidence produced by Blendjet. As such they only increase Blendtec's concerns.

18.    On March 17, 2022, Blendjet's Brand Manager Daniella Reda reached out to ████ ███████████████████████████." *See* Kapaloski Reply Decl. **Exhibit 2** at JET14160. Blendjet CEO Pamplin, his wife and Blendjet Vice President of Customer Experience Kathryn O'Malley ("O'Malley"), and Blendjet CRO John Zheng ("Zheng") were all copied on Ms. Reda's email to ████. *Id*.

19.    On March 31, 2022, the Blendjet team, including ████████████████ ████████████████████. *Id*. at JET14156 (noting that ████

---

[1] Although Pamplin signed his declaration, he failed to certify that the language is true or correct or to include any other language required by 28 U.S.C. §1746. *See* ECF 124-3 (Pamplin Decl.). The declaration submitted by Patrick McGill also fails to comply with 28 U.S.C. §1746. *See* ECF 124-2 (McGill Decl.).

███████████████████████████████████████████. On April 1, 2022, ████████

████████████████████████████████. *Id.*

20.    On April 1, 2022, Blendjet's Brand Manager Daniella Reda sent the ████████

████████████████████████████████████████████████████

███████████████████████████" *Id.*

21.    On April 5, 2022, ███████████████████████████████

█████████████████████████████████████████

"████████████████████████████████████████████

██████████████████████████

*Id.* at JET14155.

22.    On April 6, ███████████████████████████████████

████████████████████████████████████████████

███████████████████████████ *Id.*

23.    ██████████████████████████████████████

█████████████████████████████████████████████

███████████████████████



*Id.* at Jet14165.

24.    That same day, 

*See* Kapaloski Reply Decl. **Exhibit 3** at JET14173.

25.

*See* Kapaloski Reply Decl. **Exhibit 4** at JET14262.

26.    Over the next month.

27.



*Id*. at JET14276.

28.    Thus, I believe that the documentary evidence directly and unequivocally contradicts the following representations by Blendjet Counsel Jesse Salen, that were intended to address our concerns, and the representations of CEO Pamplin:

| **Blendjet's Representation** | **Contradictory Documentary Evidence** |
|---|---|
| Blendjet counsel Jesse Salen represented to Blendtec's counsel that the ▮▮▮▮▮ ▮▮▮▮ "was never executed." Reply Decl. Exhibit 1 at p. 1. | ▮▮▮▮▮▮▮▮▮▮▮ *See* Reply Decl. Exhibit 2 (April 5, 2022); Reply Decl. Exhibit 4 (May 27, 2022). |
| Mr. Salen represented to Blendtec's counsel that the ▮▮▮▮▮▮ "was prepared by a junior Blendjet employee." Reply Decl. Exhibit 1 at p. 1.<br><br>CEO Pamplin represented to the Court that▮ ▮▮▮▮▮▮▮▮▮▮ " ECF 124 (Pamplin Decl.) at ¶23. | ▮▮▮▮▮▮▮▮▮▮▮ |



29. ████████████████████████████████████████████████

████████████████████████████



Reply Decl. Exhibit 2 at JET14165 and JET14170; Reply Decl. Exhibit 4 at JET14271 and

14276.[2]

30.     In his Declaration, Blendjet CEO Pamplin states that the representation that McGill

---

[2] ██████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████.

is Blendjet's 

31.    We expressly advised Blendjet that the ████████████ caused Blendtec concern. Blendjet counsel Jesse Salen thereafter made representations to us about the document to provide "proper context" and to "address Blendtec's concerns." Reply Decl. Exhibit 1 at p. 1. *See also* ECF 124 (Bader Decl. at ¶8 ("Mr. Salen emailed Ms. Kapaloski to address Blendtec's concerns"). But, I do not believe that the representations provided by Mr. Salen are accurate as they are completely contradicted by Blendjet's contemporaneous documents. Mr. Salen's inaccurate representations only increase Blendtec's concerns.

### III.    Patrick McGill's Declaration "Commitment"

32.    Patrick McGill's Declaration includes a heading titled "My Commitment to the Standard Protective Order." *See* ECF 124-2 (McGill Declaration) at p. 17. In that section of his Declaration, McGill states as follows:

## V.    My Commitment to the Standard Protective Order.

62.    I have been – and continue to be – absolutely committed to the appropriate treatment and protection of any such information from any unwarranted or inadvertent disclosure, contrary to the terms of the SPO in effect in this case.

DATED this 16th day of May, 2023.

*/s/ Patrick McGill*

Patrick McGill

33.    In my opinion, this statement is vague, ambiguous, and deeply concerning. Mr. McGill's statement appears to leave it up to his discretion and interpretation whether or not disclosure is "unwarranted" or whether or not a disclosure is contrary to the terms of the SPO. This is unacceptable to Blendtec. If Blendtec designates a document as AEO, it may only be accessed by Qualified Recipients regardless of whether Mr. McGill believes disclosure is warranted or unwarranted and regardless of his interpretation of the terms of the SPO.

34.    Although I believe that it is likely an oversight, Mr. McGill's Declaration is not sworn to under penalty of perjury nor does it otherwise comply with the requirements of 28 U.S.C. § 1746.

## IV.    Blendjet Failed To Disclose McGill During ESI Custodian Conferral.

35.    The Court-Ordered ESI Protocol requires that "[e]ach producing party shall, in good faith, meet and confer with any and all requesting parties in an effort to identify custodians likely to possess potentially responsive ESI." ECF 30 at ¶30; ECF 33 at ¶30.

36.     I provided details of the ESI Custodian conferral process in my opening Declaration. *See* ECF 113 (Kapaloski Decl.) at ¶¶11-12.

37.     Specifically, on November 4, 2022, during meet-and-confer related to the ESI custodian identification process, I asked for information regarding persons providing any services or functions related to Blendjet's intellectual property:

> "Finally, we have an additional role/responsibility that we would like to explore in the context of potential Blendjet ESI Custodians. Please provide the names and dates of employment for any person(s) employed by Blendjet (since its founding) to provide services and/or functions related to intellectual property or brand protection and strategy."

*See* ECF 120-6.

38.     Patrick McGill responded that same day that:

> "[T]he person at Blendjet who is responsible for IP protection activities at Blendjet is Jordan Carlson (whose title is "Intellectual Property Specialist"). Jordan mainly manages Blendjet's takedown program. Jordan started work with Blendjet in May 2019 as a customer service agent, and transitioned to her current IP specialist role in August 2019. Ryan Pamplin is responsible for trademark and other IP issues, in concert with outside legal counsel."

*See* ECF 120-7.

39.     Based on McGill's representation, Blendtec designated Jordan Carlson and Ryan Pamplin as Blendjet ESI Custodians. ███████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████ *See* ECF No. 120-12; ECF No. 120-13.

40.     <u>After</u> Blendtec filed its Motion to Enforce, Blendjet produced another document that I believe unequivocally shows that ████████████████████████████████ from November 4, 2022. Specifically, on May 19, 2023, Blendjet produced a ███████████████

████████████████████████████████ that is bates numbered JET1341299. *See* Reply

Decl. Exhibit 5. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██." *See* Reply Decl. Exhibit 5. (Miramore, Inc. is the prior name of Blendjet.) I believe that

████████████████████████████ falls directly and unequivocally within Blendtec's request during

ESI conferral that McGill identify all persons who performed intellectual properly or brand

protection and strategy functions for Blendjet.

      41.     Also on May 19, 2023, <u>after</u> Blendtec filed its Motion to Enforce, ████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

      42.     In the McGill Declaration, McGill attempts to explain why he did not disclose

himself as follows:

> "<u>Ms. Kapaloski asserts that Blendjet failed to disclose the fact that I have served as Blendjet's outside legal counsel relating to intellectual property matters.</u> (See Kapaloski Decl. at ¶¶11-12.) That suggestion ignores the fact that Blendjet expressly stated in that correspondence ██████████████████████████████████████ At all times relevant to Blendtec's inquiry, I was acting as Blendjet's outside legal counsel. Blendtec never sought clarification as to ████████████████████████████████████████████████████

ECF 124-2 (McGill Decl.) at ¶52.

43.     In my view, the first sentence of McGill's explanation is nonsensical. Our understanding at the time that I served the ESI identification request in November of 2022 is that McGill served as Blendjet's outside legal counsel, including in connection with this litigation. Obviously, our concern is not that he failed to disclose himself as "outside legal counsel." Rather,

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████    did not disclose any of this so that Blendtec could evaluate it in connection with designating ESI custodians. It was not until after mid-February 2023, that Blendjet began producing documents ████████████████████████████████

████████████████████████████████████████    *See* the documents attached as Exhibits 1-17 to Blendtec's Reply, which are true and correct copies of Blendjet produced in this litigation on and after February 10, 2023. *See also infra* at ¶50.

44.     The ESI Protocol obligated McGill to meet and confer in good faith. Instead, McGill disclosed only what he wanted to disclose and I believe that he is now engaging in semantic gamesmanship in an attempt to explain away his bad faith conferral (*i.e.*, "Blendtec never sought clarification as to ████████████████████████████████████████████████████████████████

█████████████████). ECF 124-2 (McGill Decl.) at ¶52.

45.     Despite what I view as a glib after-the-fact explanation, the documents show that

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████. *See* ECF Nos. 120-12; 120-13.

46.    Had ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, as his duty to confer in good faith required him to do, Blendtec would have designated McGill as an ESI Custodian during the meet and confer process. Blendtec did not ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ until after the January 23, 2023, deadline to serve written discovery had passed.

47.    McGill states in his Declaration that "Blendtec has never requested to designate that email address [i.e., patrick.mcgill@blendjet.com email address] . . . as a Blendjet ESI Custodian." ECF 124-2 (McGill Decl.) at ¶60.

48.    In my view, this statement is posturing as I believe that Blendjet would argue that our request to designate McGill as an ESI Custodian would be untimely because it comes after the January 23 deadline to serve written discovery. This belief is based on the arguments and positions that Blendjet has already taken with respect to our attempts to discover information related to this issue. Specifically, immediately after we learned that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, which was after the January 23 deadline to serve written discovery, we served notice of a subpoena to McGill. The purpose of the subpoena was, in part, to discover more about the ▮▮▮▮▮▮▮ ▮▮▮▮▮. The subpoena requested, among other things, the following:



Subpoena Request No. 14 to McGill: "All documents related to Blendjet's policies, guidelines, and/or procedures employed or practiced (or that ought to be employed or practiced) in the selection, maintenance, registration, and protection of the Blendjet Marks." (*See* ECF 120-25 at 20)

Subpoena Request No. 15 to McGill: "All documents evidencing or related to any effort to police, enforce, and/or defend the Blendjet Marks, including but not limited to any and all cease and desist letters that Blendjet has sent or received in relation to the Blendjet Marks." (*See* ECF 120-25 at 21)

Subpoena Request No. 16 to McGill: "All documents evidencing or relating to any disputes that Blendjet has had with any third parties that relate to or reference the Blendjet Marks." (*See* ECF 120-25 at 22)

Subpoena Request No. 17 to McGill: "Documents and communications with third parties regarding or referencing Blendtec." (*See* ECF 120-25 at 23)

Subpoena Request No. 18 to McGill: "Documents and communications with third parties regarding or referencing this Litigation, by way of example but without limitation, see the document produced as JET00014130, which is a document within the scope of this request (*i.e.*, a communication with a third party referencing this Litigation). (*See* ECF 120-25 at 25)

Subpoena Request No. 19 to McGill: "All documents evidencing or relating to any assignments, licenses, or other agreements of any type entered into by Blendjet that relate or reference the Blendjet Marks." (*See* ECF 120-25 at 26)

Subpoena Request No. 20 to McGill: "All agreements between Blendjet and any third parties that contain restrictive covenants, non-compete agreements, or agreements related to Blendjet's intellectual property and all related correspondence and negotiations with third parties." (*See* ECF 120-25 at 27)

49.    Both McGill and Blendjet objected to every one of the subpoena requests on the ground that they are "untimely" because they were served after the deadline to serve written discovery, and refused to respond to the subpoena. *See* ECF 120-25 and 120-27.

50.    Based on the undisputed fact that Blendjet did not disclose ████████████████████████

until after the deadline to serve written discovery had passed, Blendtec should be permitted to

designate McGill as an ESI Custodian and any objection by Blendjet that the designation is

untimely should be overruled. In its Opposition papers, Blendjet now appears to be suggesting that

we are free to designate McGill as an ESI Custodian without objection, and Blendtec would like

to do so. In addition, the designation should not be limited to ███████

████████████████████ as McGill states in his Declaration. ECF 124-2 at

¶60. ██████████████████████████████████████████████

████████████████████████████████

████████████████████████

████████████

████████████████

██████████████

██████████████

████████████

██████████

To the extent that ██████████████████████, the designation should

encompass those as well.

## V.    Blendjet's Violation of Its Ethical Duties

51.    I believe that the evidence in this case will show that Blendtec and Blendjet are

direct competitors. Given the direct competition between the parties and the highly confidential

and proprietary information that would be, and has been, disclosed in this case by Blendtec,

including financial statements, internal sales data, customer data, research and development information, and acquisition or corporate transaction related information, among other things, I believe that Mr. McGill ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████, the parties and the Court could have addressed his access to Blendtec's AEO information before disclosure of it. I believe ethical duties required this given the nature of this case and the AEO information that would be (and has been disclosed).

52.    Beyond that there were at least three instances that trigger additional duties of disclosure in my view: (1) negotiations regarding modification of the SPO that occurred in August of 2022; (2) the parties' dispute in September of 2022 regarding whether owners could access AEO information; and (3) my November 2022, ESI custodian conferral request to Mr. McGill. These are discussed in my opening Declaration at ECF No. 113 at ¶¶8-9, 11-12. Brett Foster, also counsel to Blendtec in this case, discusses this in his Declaration that is being submitted herewith at ¶¶14-21.

**VI.    Blendtec Did Not Violate The Protective Order.**

53.    In its Opposition, Blendjet states that Blendtec violated the SPO for three reasons. As shown below, Blendtec has not violated the protective order:

54.    Blendjet's first accusation: "In violation of the SPO, Blendtec has refused to have its 'director[s], officer[]s, or employee[s]' who were provided Blendjet's information produced in this action under a CONFIDENTIAL designation sign the disclosure agreement, or to likewise provide signed versions of the Disclosure Agreement to Blendjet"). *See* ECF No. 122-2 (McGill

Decl.) at p. 15, fn. 6.

55.     Blendtec's response: The SPO does not require "directors, officers, or employees" to sign the Disclosure Agreement before viewing CONFIDENTIAL information as McGill contends. The text that McGill cites that purportedly requires party representatives to sign the Disclosure Agreement is not from the SPO. McGill cites only from the Disclosure Agreement. Blendjet has not cited anything from the actual text of the SPO indicating that party representatives that are Qualified Recipients of CONFIDENTIAL information must sign the Disclosure Agreement. That is because the SPO does not require that. The SPO only requires Technical Advisors and designated arbitrators or mediators to sign the Disclosure Agreement. *See* SPO ¶3(a) ("Each receiving party's TECHNICAL ADVISOR shall sign a disclosure agreement in the form attached hereto as Exhibit A.); *id*. at ¶6(a)(6) ("Any designated arbitrator or mediator who is assigned to hear this matter, or who has been selected by the parties, and his or her staff, provided that such individuals agree in writing, pursuant to the Disclosure Agreement, to be bound by the terms of this Order."). In any event, Blendtec has not shared any CONFIDENTIAL information with Blendtec's directors, officers, or employees. There has not been a violation of the SPO here.

56.     Blendtec's second accusation: "Blendtec has twice improperly published Blendjet's AEO information to the Court's public docket." *See* ECF No. 122-1 (Bader Decl.) at ¶12. Specifically, Blendjet claims that Blendtec publicly filed Blendjet's AEO information in ECF 50-3 (refiled as ECF 56) and in ECF 105-108 (refiled as ECF Nos. 117-120). *Id*.

57.     Blendjet's response: Blendtec does not agree that it publicly filed any of Blendjet's AEO information.

- First, with respect to ECF 56 and ECF 50-3, Patrick McGill claimed that, in a



discovery motion filed by Blendtec, "Blendtec failed to redact information related to ███████████████████████████████, which Blendjet expressly designated as AEO information in its July 29 discovery responses." *See* Reply Decl. Exhibit 7 at 1. The publicly filed statement was that ████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████." The publicly filed information did not quote Blendjet's July 29 discovery responses, Blendtec did not publicly file any information related to the ████████████████████████████, and Blendtec did not publicly file any of the documents regarding ████████████. Blendtec does not believe that it publicly filed any AEO information.[3] Nonetheless, to resolve the issue, Blendtec agreed to refile the document under seal.

- Second, with respect to ECF 105-108 and 117-120, which is Blendtec's Motion to Enforce papers, Blendtec publicly filed text stating that ████████████ ██████████████████████████████. Blendjet claimed that the

---

[3] In my view, Blendjet's position regarding what must be filed under seal is over reaching and impractical. Blendjet's position appears to be that if it has designated a document as AEO, every detail of anything referenced in that document (even if only tangentially related to its substance or even if it is not specifically stated in the document at all) is AEO and must be sealed. This encompasses a huge amount of factual information such as the name of a Blendjet vendor or counsel for Blendtec's belief that █████████████████████████████ ████████, which would likely not be entitled to AEO protection under the SPO, and makes it difficult for Blendtec to determine what it is precisely that Blendjet contends is its AEO information. Out of an abundance of caution, Blendtec has endeavored to redact from its Reply papers anything that it believes Blendjet may contend is its AEO, even if Blendtec is not quoting directly from an AEO document.

fact that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ is AEO information. *See* Kapaloski Reply Decl. Exhibit 8 at 2 ("▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓"). Blendtec disagrees that it publicly filed any information that Blendjet designated as AEO. *See id.* at 1. Nevertheless in order to resolve the issue, Blendtec agreed to redact any text stating that ▓▓▓▓▓▓▓▓▓▓▓ from its papers and refile. There has been no violation of the SPO here.

In any event, on May 3, 2023, the Court ordered Blendjet to file a motion to have the documents that Blendtec filed under seal in connection with its May 2 filings remain under seal. *See* ECF 114 ("Blendjet must move to have the documents remain under seal in accordance with the Local Rules.") (emphasis added). Blendjet's deadline to file a motion to have the documents remain under seal was May 9, 2023. *Id.* Blendjet failed to file a motion to keep the documents under seal by the deadline, and to this date has not filed the motion. As such, the documents that Blendtec filed under seal on May 2, 2023, should be unsealed.

58.    Blendtec's third accusation: "Blendtec's counsel has refused to confirm that it did not share Blendjet's AEO information with its client in violation of the SPO." Bader Decl. at ¶13.

59.    Blendjet's response: The SPO does not require Blendtec to confirm upon demand that it has not shown AEO information with its client. In any event, Blendtec has not shared Blendjet's AEO information with Blendtec. There has been no violation of the SPO here.

**VII.    Blendjet Did Not Produce Even One Document Disclosing Any Aspect of the ▓▓▓▓▓▓▓▓▓▓▓▓▓ Until February 10, 2023, and Thereafter.**

60.    The last day to serve written discovery was January 23, 2023. *See* ECF Nos. 35 and 90.

61.    Every document related to ███████████████████████ was produced by

Blendjet on or after February 10, 2023.  Blendjet did not produce twelve of the relevant documents

until *after* Blendtec filed its Motion to Enforce the Protective Order and to Disqualify on May 2,

2023. The table below shows the documents produced by Blendjet that Blendtec relies upon in its

Motion to Enforce and in its Reply thereto, and the date Blendjet produced each document:

| Exhibits Submitted by Blendtec in Support of its Motion to Enforce and to Disqualify | Date Blendjet Produced the Document |
|---|---|
| ECF 113-3 (Kapaloski Decl. Exh. 12) (Jet37859) | 02/27/23 |
| ECF 113-5 (Kapaloski Decl. Exh. 14) (Jet60961) | 03/02/23 |
| ECF 113-6 (Kapaloski Decl. Exh. 15) (Jet16867) | 02/10/23 |
| ECF 113-7 (Kapaloski Decl. Exh. 16) (Jet24186) | 02/10/23 |
| ECF 113-8 (Kapaloski Decl. Exh. 17) (Jet14270) | 02/10/23 |
| ECF 113-9 (Kapaloski Decl. Exh. 29) (Jet106451) | 03/31/23 |
| Exhibit 1 to Reply (JET595577) | 05/12/23 |
| Exhibit 2 to Reply (JET543229) | 05/09/23 |
| Exhibit 3 to Reply (JET567227) | 05/12/23 |
| Exhibit 4 to Reply (JET38554) | 02/24/23 |
| Exhibit 5 to Reply (JET454834) | 05/05/23 |
| Exhibit 6 to Reply (JET569869) | 05/12/23 |
| Exhibit 7 to Reply (JET24186) | 02/10/23 |
| Exhibit 8 to Reply (JET543491) | 05/09/23 |
| Exhibit 9 to Reply (JET310090) | 04/29/23 |
| Exhibit 10 to Reply (JET258454) | 04/29/23 |
| Exhibit 11 to Reply (JET259459) | 04/29/23 |
| Exhibit 12 to Reply (JET585075) | 05/12/23 |
| Exhibit 13 to Reply (JET553993) | 05/09/23 |
| Exhibit 14 to Reply (JET16828) | 02/10/23 |
| Exhibit 15 to Reply (JET16886) | 02/10/23 |
| Exhibit 16 to Reply (JET572765) | 05/12/23 |
| Exhibit 17 to Reply (JET557134) | 05/12/23 |
| Kapaloski Reply Decl. Exhibit 2 (JET14155) | 02/10/23 |
| Kapaloski Reply Decl. Exhibit 3 (JET14173) | 02/10/23 |
| Kapaloski Reply Decl. Exhibit 4 (JET14259) | 02/10/23 |
| Kapaloski Reply Decl. Exhibit 5 (JET1341299) | 05/19/23 |
| Kapaloski Reply Decl. Exhibit 6 (JET1341435) | 05/19/23 |

62.     As shown in the table above, Blendjet produced all of the documents showing the ███████████████████ after the January 23, 2023, deadline to serve written discovery, and Blendjet did not produce twelve of these documents until after Blendtec filed its Motion to Enforce on May 2, 2023.

63.     Amongst its other arguments that I believe are without merit, Blendjet argues in its Opposition that it openly disclosed the ███████████████. *See* ECF 124-1 (Bader Decl.) at p. 9. On the contrary, ████████████████████████████, and only produced documents disclosing aspects of the ██████████ in a slow trickle among Blendjet's 1.3 million page document production. Blendjet also waited to produce any documents disclosing ██████████████ until after key deadlines had passed. Although Blendtec served its first set of ESI discovery requests on November 7, 2023, Blendjet did not produce the first of the ESI disclosing the ███████████████ until mid-February 2023, and some of those documents were produced as late as May 19, 2023. Although I believe that Blendjet had a duty to disclose it, Blendtec was forced to painstakingly piece the ████████████ puzzle together from Blendjet's 1,342,203 page document review that trickled in only ***after*** the ESI Custodian Conferral process (November 2023), ***after*** deadline to serve written discovery (January 23, 2023), and ***after*** Blendtec had already produced 388,854 pages of documents directly to McGill, much of which constitutes Blendtec's AEO information. In my view, we likely still do not understand the full scope of ████████████████████████ because McGill, Blendjet, and Sheppard Mullin have refused to produce documents in response to our subpoenas on this issue.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

DATED this 30th day of May, 2023.

/s/ Tamara Kapaloski
Tamara Kapaloski

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 30th day of May, 2023, a true and correct copy of the foregoing document was served on counsel of record via the Courts CM/ECF System which sent notice to counsel of record:

Martin R. Bader: mbader@sheppardmullin.com
Jesse A. Salen: jsalen@sheppardmullin.com
Patrick M. McGill: patrick@mcgillco.com
Nathan D. Thomas: nthomas@parsonsbehle.com
Elizabeth M. Butler: lbutler@parsonsbehle.com

*/s/ Tamara L. Kapaloski*