Brett Foster (#6089)
Grant Foster (#7202)
Tamara Kapaloski (#13471)
**DORSEY & WHITNEY LLP**
111 S. Main Street, Suite 2100
Salt Lake City, UT 84111
Telephone: (801) 933-7360
Facsimile:  (801) 933-7373
foster.brett@dorsey.com
foster.grant@dorsey.com
kapaloski.tammy@dorsey.com

*Attorneys for Plaintiff Blendtec Inc.*

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **BLENDTEC INC.**, a Utah corporation,<br><br>　　Plaintiff,<br><br>vs.<br><br>**BLENDJET INC.**, a Delaware corporation,<br><br>　　Defendant. | **DECLARATION OF BRETT FOSTER IN SUPPORT OF BLENDTEC'S REPLY TO BLENDJET'S RESPONSE TO MOTION TO ENFORCE THE PROTECTIVE ORDER AND TO DISQUALIFY**<br><br>Civil No. 2:21-cv-00668-TC-DBP<br><br>Judge Tena Campbell<br>Magistrate Judge Dustin B. Pead<br><br>**[REDACTED VERSION FOR PUBLICL FILING]** |

I, BRETT FOSTER, declare as follows:

1.  I am an attorney at the law firm of Dorsey & Whitney LLP ("Dorsey"), counsel to Plaintiff Blendtec Inc. ("Blendtec") in the above-captioned action. I submit this declaration in

1

support of Blendtec's Reply to Blendjet's Response to Motion to Enforce and to Disqualify. I am fully familiar with the facts set forth in this declaration from personal knowledge or from documents that I have reviewed. If called as a witness, I could and would testify competently under oath to the facts contained herein.

I.   **My Role as Counsel for Blendtec.**

2.   In Blendjet's opposition to Blendtec's motion to enforce the protective order, Blendjet implies that I have the same type of relationship with Blendtec ▮▮▮▮▮▮▮▮▮▮▮▮. *See, e.g.*, 124 (Opposition) at 8; ECF 124-1 (Bader Decl.) at ¶¶22-27. This is absolutely not the case.

3.   I have represented Blendtec, along with my brother Grant Foster, for many years in connection with Blendtec's legal issues and disputes. During that time, Blendtec has always retained us through the law firms that we have worked at, namely Foster & Foster, Holland & Hart, and now Dorsey & Whitney. Over the years that I have represented Blendtec, it has always been as retained outside legal counsel to provide legal services as they are needed. During that time period, there have been many years where I have not done anything at all for Blendtec.

4.   I have never had or used any email address that includes "blendtec.com" or that was owned or maintained by Blendtec.

5.   I have never sent any letters out on Blendtec's letterhead.

6.   Blendtec does not include me on high-level emails regarding its sales, projections, or strategies that have nothing to do with the provision of legal services.

7.   No one at Blendtec has ever referred to me as Blendtec's "General Counsel." Nor has anyone at Blendtec ever represented that I am on Blendtec's "senior management team" or

that I am an "executive team member" of Blendtec. I do not see or keep any of Blendtec's board of director minutes in the ordinary course of Blendtec's business. I have never attended a Blendtec Board meeting. I don't recall ever seeing any Blendtec board minutes, but, if I have, it would have been in connection only with legal work that I was retained to provide for Blendtec.

8. I have never been a shareholder of Blendtec. I have never owned any type of interest in Blendtec. My only economic interest in Blendtec is the legal fees that I am paid for providing legal services to Blendtec. If Blendtec is sold or acquired, I will receive no money, distribution, or compensation of any kind in connection with that sale.

9. Based on my conversations with my brother and partner, Grant Foster, each of the above statements are equally true with respect to Grant's relationship with Blendtec.

**II.     Blendjet's Statements Regarding Meet and Confer.**

10. Blendjet states that Blendtec filed its Motion to Enforce without meeting and conferring. *See, e.g.*, ECF 124-1 at p. 2

11. That is not accurate from my perspective. As outlined in the declaration that my colleague, Tammy Kapaloski, submitted with the Court (ECF 120 at ¶¶33-52), we met and conferred with Blendjet's counsel starting on March 4 and that process only concluded on May 1, when Blendjet's counsel unequivocally confirmed that they would not produce the documents that Blendtec requested in its subpoenas to Mr. McGill and Sheppard Mullin (*see* ECF 119-1 at 2 ("we are standing by the objections as stated in the response we served last week")). After we stated that we would file a motion to compel on the issue, Blendjet's counsel offered to produce only limited documents that it selected and that it believed would address our concerns and only if we provided the documents that caused us concern. *See* ECF No. 119-1 at 2 ("please identify any documents in

addition to JET14130 that you contend raise concerns as to Mr. McGill's ability to view confidential information? We will then consider that information and work with you in good faith to alleviate your concerns.").

12. I did not view this communication as a genuine interest in a resolving our subpoenas. I viewed this as procedural posturing. Blendtec does not know the universe of concerning documents because Blendjet, McGill, and Sheppard Mullin have refused to produce them. Blendtec is entitled to discover all relevant documents in order to fully evaluate the issue. It should not be forced to substitute that for Blendjet's unilateral decision regarding which documents it would produce. Throughout the meet and confer process, Blendjet consistently and steadfastly refused to comply with the subpoenas to McGill and Sheppard Mullin and unequivocally stated that it stood on its objections to the subpoenas. Blendtec filed the motion after the meet and confer process had concluded, and Blendjet had confirmed multiple times that they would not product documents responsive to the subpoena.

### III. Blendjet Had Multiple Opportunities In Which It Should Have Disclosed The ▮▮▮▮▮▮▮▮▮▮▮ But Failed To Do So.

**Negotiations regarding modification of the SPO**:

13. As described by Ms. Kapaloski, on or around August 22, 2022, Blendtec requested modification to the SPO such that Blendtec's inside counsel, Michael Monson, could access Blendjet's AEO documents. *See* ECF 113 at ¶8-9. During our telephonic meet and confer with Blendjet's counsel, Patrick McGill, Mr. McGill refused any modification of the SPO on the ground that Blendjet did not have inside counsel and allowing Blendtec's inside counsel to view Blendjet's AEO information would harm Blendjet. At that time, ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮, including facts that are highly relevant to whether McGill himself should have had access

to AEO information. Based on my decades' long experience in litigation and on the particular circumstances presented here, of which I was personally involved, I believe that Mr. McGill had a duty to disclose ▮▮▮▮▮▮▮▮▮▮ at this time. He could have made the argument then that Blendjet makes in its opposition to the motion to enforce – *i.e.*, that in-house General Counsel is different than outside General Counsel – and then the parties could have evaluated that argument at the time. But Mr. McGill failed to provide any disclosure regarding ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." Had Mr. McGill forthrightly disclosed ▮▮▮▮▮▮ at this time, we would have presented the issue of his access to AEO documents to the Court before any Blendtec AEO documents were produced or before any further Blendtec AEO documents were produced.

### Dispute regarding whether owners could access AEO information.

14. On September 21, 2022, Blendjet served us with a copy of the Disclosure Agreement to the SPO executed by Ryan Pamplin, who is Blendjet's CEO and owner. *See* ECF 113 (Kapaloski Decl.) at ¶9. We were surprised by this, as the Protective Order does not require party representatives to sign the Disclosure Agreement unless Blendjet was attempting to qualify him as a Technical Advisor. In fact, Blendjet stated that it was sending the Disclosure Agreement "per Paragraph 3(a) of the Standard Protective Order." Paragraph 3(a) states that "[e]ach receiving party's TECHINCAL ADVISOR shall sign a disclosure agreement in the form attached hereto as Exhibit A ('Disclosure Agreement')."

15. We immediately objected, citing case law holding that an individual with an ownership interest in a party should not be qualified to view AEO information as a Technical Advisor. ECF 120-4 at 3 (citing *Definitive Holdings, LLC v. Powerteq LLC*, 2019 U.S. Dist.

LEXIS 211066, at *4 (D. Utah 2019)). Mr. McGill agreed that it would not share AEO information with Mr. Pamplin, resolving the dispute.

16. When we took the position that an owner of Blendjet should not have access to AEO information, we had no idea that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. When we raised this issue about Mr. Pamplin, I believe that Mr. McGill had a duty to disclose his ▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇ at this time. He failed to do so. If Mr. McGill would have forthrightly disclosed his ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ at this time, we would likely have taken the issue of whether Mr. McGill should have access to Blendtec's AEO information up with the Court.

**ESI Custodian Conferral**

17. On November 4, 2022, in connection with the ESI Custodian Conferral process, we expressly asked Patrick McGill to identify the names and dates of employment for any persons employed by Blendjet, since its founding, to provide services and/or functions related to intellectual property or brand protection and strategy. *See* ECF 113 at ¶11. Mr. McGill did not disclose himself. *See* ECF 113 at ¶12. Starting in mid-February 2023, Blendjet began producing a small number of documents disclosing that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇ Given the questions we raised about who did intellectual property work for Blendjet, I believe that Mr. McGill had a duty to disclose ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ as Blendjet argues in response to the current Motion to Enforce, but he should not have remained silent regarding his ▇▇▇▇▇▇▇▇▇▇. Disclosure would have enabled Blendtec to timely evaluate whether or not he fell within our ESI Custodian request.

18. If Mr. McGill would have forthrightly disclosed ▮▮▮▮▮ at this time, we would have designated him as an ESI custodian. We also would also have explored the ▮▮▮▮▮ further, and upon learning what we know today, we would have taken up with the Court the issue of his access to Blendjet's AEO information.

19. I have represented parties against their direct competitors for decades. My clients have always been hesitant to disclose their confidential, proprietary and trade secret information for fear that their direct competitor would somehow gain access to their AEO information to gain a competitive advantage. I have always been able to assure my clients that attorneys will honor the Court's Protective Orders.

20. The evidence in this case will show that Blendtec and Blendjet are direct competitors in the blending industry. Blendtec would not have knowingly provided AEO documents to record counsel in this case had it known ▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮ Blendtec considers the issues raised in this motion very serious. They undermine the confidence that Blendtec's AEO information will be protected from disclosure to Blendjet, including ▮▮▮▮▮.

### IV. Blendjet Produced No Documents Regarding ▮▮▮▮▮ Until Mid-February 2023.

21. Blendjet and its counsel state that they did not conceal ▮▮▮▮▮. As stated above, I believe that Mr. McGill had a duty to disclose ▮▮▮▮▮



▉▉▉▉.[1] ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ even when issues ▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉ were directly discussed. I believe these facts support an inference that McGill concealed ▉▉▉.

22. Blendjet did not disclose any information regarding ▉▉▉▉▉▉▉▉▉▉▉ until after the January 23 deadline to serve written discovery at passed. This appears to be a calculated strategic decision.

23. As stated above, there were at least three separate occasions in which I believe that Mr. McGill should have disclosed facts related to his ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉ He chose not to do so. I think these facts support an inference that Mr. McGill wanted to hide and not disclose those important facts.

24. Toward the end of February 2023, Ms. Kapaloski brought to my attention some documents that Blendjet had produced starting on February 10, 2023. One of those documents, which was ▉▉▉▉▉▉▉▉▉▉▉▉, stated that Mr. McGill was ▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ We also discovered statements on Mr. McGill's LinkedIn page indicating that McGill had a long and close relationship with Blendjet's CEO Ryan Pamplin, which preceded the formation of Blendjet. We had never before that time had any reason to review Mr. McGill's LinkedIn profile and had not done so. We were surprised by these documents, as neither

---

[1] As noted in Ms. Kapaloski's Reply Declaration, twelve of the documents submitted in support of Blendtec's Reply papers were produced by Blendjet only *after* Blendtec filed its Motion to Enforce on May 2. *See* Kapaloski Reply Decl. at ¶3.

Blendjet nor Mr. McGill had ever so much as hinted that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ outside his role as a Sheppard Mullin associate staffed on this litigation.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

DATED this 30th day of May, 2023.

*/s/ Brett Foster*
Brett Foster

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of May, 2023, a true and correct copy of the foregoing document was served on counsel of record via the Courts CM/ECF System which sent notice to counsel of record:

Martin R. Bader: mbader@sheppardmullin.com
Jesse A. Salen: jsalen@sheppardmullin.com
Patrick M. McGill: patrick@mcgillco.com
Nathan D. Thomas: nthomas@parsonsbehle.com
Elizabeth M. Butler: lbutler@parsonsbehle.com

/s/ Tamara L. Kapaloski