MARTIN R. BADER (*Pro hac vice*)
mbader@sheppardmullin.com
JESSE A. SALEN (*Pro hac vice*)
jsalen@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
Telephone:    858.720.8900

PATRICK McGILL (*Pro hac vice*)
patrick@mcgillco.com
MCGILL & CO., P.C.
5580 La Jolla Blvd, Suite 39
La Jolla, CA  92037
Tel: (619) 974-8886

Nathan D. Thomas (USB #11965)
Elizabeth M. Butler (USB #13658)
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah  84111
Telephone:  (801) 532-1234
nthomas@parsonsbehle.com
lbutler@parsonsbehle.com

*Attorneys for Defendant BlendJet Inc.*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| **BLENDTEC INC.**, a Utah corporation,<br><br>            Plaintiff,<br><br>vs.<br><br>**BLENDJET INC.**, a Delaware corporation,<br><br>            Defendant. | **BLENDJET'S RESPONSE TO BLENDTEC'S RULE 72(a) OBJECTIONS TO MAGISTRATE JUDGE'S ORDER**<br><br>Civil No. 2:21-cv-00668-TC-DBP<br><br>Judge Tena Campbell<br>Magistrate Judge Dustin B. Pead |

# TABLE OF CONTENTS

Page

I. Background. ...................................................................................................................3

II. Standard of Review. .......................................................................................................6

III. Argument. .......................................................................................................................6

    A. Judge Pead Properly Applied *U.S. Steel* to Determine that Mr. McGill is Not a Competitive Decisionmaker. ....................................................................6

    B. Blendtec's Cited Authority is Inapposite. ..........................................................9

    C. Revoking Mr. McGill's Access to AEO Information Would Impose a Severe Hardship on BlendJet .........................................................................12

IV. Conclusion ....................................................................................................................12

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen v. Sybase, Inc.*
  468 F.3d 642 (10th Cir. 2006) ...............................................................................................1, 6

*Brown Bag Software v. Symantec Corp.*
  960 F.2d 1465 (9th Cir. 1992) ....................................................................................................7

*Catheter Connections, Inc. v. Ivera Med. Corp.*
  Case No. 2:14-CV-70 TC, 2014 WL 3945880 (D. Utah Aug. 12, 2014). ....................... passim

*Definitive Holdings, LLC v. Powerteq LLC*
  Case No. 2:18-cv-00844-TS-DBP, 2019 WL 6682395 (D. Utah, Dec. 6, 2019) .......................7

*Digital Ally, Inc. v. Taser Int'l, Inc.*
  Case No. 16-cv-2032-CM-TJJ, 2016 WL 3365440 (D. Kan. June 17, 2016) ...........................1

*Endodontics v. Dentsply Int'l, Inc.*
  Case No. 08-cv-1101 JB/RLP, 2009 WL 1329140 (D.N.M., Apr. 7, 2019) .............................1

*Field TurfUSA v. Sports Const. Group*
  Case No. 1:06-cv-2624, 2007 WL 4412855 (N.D. Ohio 2007) ..........................................10, 11

*Healthtrio, LLC v. Aetna, Inc.*
  Case No. 12-cv-03229–REB–MJW, 2014 WL 6886923 (D. Colo., Dec. 5, 2014) ...................1

*LiiON, LLC v. Vertiv Group Corp.*
  Case No. 18-cv-6133, 2020 WL 6038055 (N.D. Ill. 2020) .................................................4, 12

*MGP Ingredients, Inc. v. Mars, Inc.*
  245 F.R.D. 497 (D. Kan., Apr. 23, 2007) ...................................................................................1

*Modern Font Applications LLC v. Alaska Airlines, Inc.*
  2021 WL 3729382 (D. Utah, March 2, 2021) ............................................................................1

*Mynette Techs. v. United States*
  163 Fed. Cl. 733 (Fed. Cl. 2022) ..........................................................................................4, 11

*Sprint Communs. Co. L.P. v. Big River Tel. Co., LLC*
  Case No. 08-cv-2046–JWL, 2008 WL 4401690 (D. Kan., Sept. 16, 2008) ..............................1

*Suture Exp., Inc. v. Cardinal Health, 200, LLC*
  Case No. 12-2760-RDR, 2013 WL6909158 (D. Kan. Dec. 31, 2013) .......................................7

*U.S. Steel v. United States*
  730 F.2d 1465 (Fed. Cir. 1984) ....................................................................................... passim

*Williams v. Vail Resorts Dev. Co.*
  Case No. 02-cv-16-J, 2003 WL 25768656 (D. Wyo. Nov. 14, 2003) ......................................... 6

<u>Other Authorities</u>

Fed. R. Civ. P. 72 ............................................................................................................. 1, 6, 7

Blendtec complains that Judge Pead should have barred Patrick McGill—BlendJet's outside legal counsel of record—from viewing information designated by Blendtec as Attorneys' Eyes Only ("AEO") pursuant to the standard protective order (the "SPO"). (ECF 105, the "Motion"; ECF 171, the "Objection".) Blendtec, however, expressly accepts all of the factual findings that support Judge Pead's ruling that Mr. McGill's relationship with BlendJet does not pose an unacceptable risk of inadvertent disclosure of Blendtec's AEO information to BlendJet's corporate decisionmakers. (Objection at 1.) Instead, Blendtec narrowly argues that Judge Pead incorrectly applied the legal standard provided by *U.S. Steel v. United States*, 730 F.2d 1465 (Fed. Cir. 1984), to those factual findings. (*Id*. at 4-5 (arguing that Judge Pead "erred by applying *U.S. Steel*" instead of three unreported, out-of-district cases cited in its Motion.))

Blendtec's objection is meritless. Under Rule 72, a district court is "required to defer to the magistrate judge's ruling unless it [is] clearly erroneous or contrary to law." *Allen v. Sybase, Inc*., 468 F.3d 642, 658-59 (10th Cir. 2006). In this Court, there is no question that *U.S. Steel* is "the leading authority on protective orders distinguishing between outside counsel and in-house counsel," and it controls the question of whether Mr. McGill's relationship with BlendJet warrants his exclusion from access to Blendtec's AEO information under the SPO.[1] *Modern Font Applications LLC v. Alaska Airlines, Inc*., 2021 WL 3729382 (D. Utah, March 2, 2021) (affirming Magistrate Judge Romero's denial of plaintiff's motion to amend the standard protective order); *see also Digital Ally, Inc. v. Taser Int'l, Inc*., Case No. 16-cv-2032-CM-TJJ,

---

[1] Many other district courts in the Tenth Circuit have applied *U.S. Steel* in deciding whether an attorney is qualified to access AEO information. *See e.g.*, *Healthtrio, LLC v. Aetna, Inc.*, Case No. 12-cv-03229–REB–MJW, 2014 WL 6886923, at *4 (D. Colo., Dec. 5, 2014) (recognizing that *U.S. Steel* is the "seminal case" relating to whether "access to OAEO documents would raise an unacceptable risk of abuse or of inadvertent disclosure"); *Sprint Communs. Co. L.P. v. Big River Tel. Co., LLC*, Case No. 08-cv-2046–JWL, 2008 WL 4401690, at *4-5 (D. Kan., Sept. 16, 2008); *MGP Ingredients, Inc. v. Mars, Inc*., 245 F.R.D. 497, 501 (D. Kan., Apr. 23, 2007); *Endodontics v. Dentsply Int'l, Inc.,* Case No. 08-cv-1101 JB/RLP, 2009 WL 1329140 (D.N.M., Apr. 7, 2019).

2016 WL 3365440, at *3 (D. Kan. June 17, 2016)("It is well-established that whether an unacceptable opportunity for inadvertent disclosure exists must be determined based upon the facts on a 'counsel-by-counsel' basis" (citing *U.S. Steel*)); *Catheter Connections, Inc. v. Ivera Med. Corp.*, Case No. 2:14-CV-70 TC, 2014 WL 3945880, at *3 (D. Utah Aug. 12, 2014) (applying the "competitive decisionmaker" test from *U.S. Steel*).

As such, Judge Pead correctly recognized that *U.S. Steel* provides the governing authority for the question raised by Blendtec, and that "it is the ultimate potential for damaging use of the confidential information that underlies the concerns of the *U.S. Steel Corp.* 'competitive decisionmaker' analysis." (Dkt. 167 at 9 (the "Order") (internal quotations omitted).)

After carefully considering Blendtec's arguments and the evidence presented by both parties, Judge Pead made two critical factual findings (both of which are unchallenged) that resulted in the denial of Blendtec's motion: (1) Mr. McGill is not inside counsel at BlendJet, nor is he a competitive decisionmaker at BlendJet, and (2) any delay in the disclosure of Mr. McGill's relationship with BlendJet was not attributable to any bad faith conduct by either party. (Order at 10.) Under the well-established standard provided by *U.S. Steel*, these undisputed and unchallenged factual findings alone are dispositive of Blendtec's Objection.

This Court should defer to Judge Pead's application of *U.S. Steel* to the undisputed facts relevant to the Motion. The three cases that Blendtec relies on in support of its (incorrect) argument that Judge Pead applied the incorrect legal standard are distinguishable from Judge Pead's factual determinations in material ways. And, even if those cases did have analogous factual circumstances to the subject matter of the Motion, they are unreported decisions emanating from district courts sitting outside the Tenth Circuit, and are, thus, not binding on this Court.

For these reasons, Blendtec's Objection should be overruled and Mr. McGill's access to Blendtec's AEO information produced in this case restored.[2]

## I. Background.

Blendtec filed this lawsuit against BlendJet in 2021. (ECF 1.) From the onset of this case, Mr. McGill has represented BlendJet as its outside counsel of record. (Order at 8.) Neither Mr. McGill nor BlendJet ever concealed any details about Mr. McGill's relationship with BlendJet, and Blendtec's knowledge of that relationship stems directly from documents and disclosures BlendJet openly and timely produced to Blendtec as part of the discovery process in this case. (*See id*. at 7; *see also* ECF 122-1 at ¶¶ 8-10, 35-45 (recounting BlendJet's cooperation with Blendtec in producing documents and answering questions relating to Mr. McGill's relationship with BlendJet, and Blendtec's refusal to complete the meet and confer process before moving to disqualify Mr. McGill from this case).)

After thoroughly considering the briefs and evidence submitted in connection with the Motion, Judge Pead made the following factual findings:

1) Mr. McGill has been "faithful[] . . . in endeavoring not to disclose confidential information . . . ." (Order at 7.)

2) "Mr. McGill is not BlendJet's current in-house counsel or a competitive decision maker," and "is not involved in licensing, pricing, or marketing decisions." (*Id.* at 8.)

3) To the extent Mr. McGill's role with BlendJet was, at one time that of "general counsel," that "prior role, if it existed, changed." (*Id.*)

4) Mr. McGill never intentionally misrepresented his relationship with BlendJet. (*Id.* at 10.)

---

[2] BlendJet is incorporating by reference its briefing and factual support previously filed under seal (ECF 122, 124, 149, 150) and does not repeat facts previously filed under seal in the interest of efficiency and to avoid the need for additional filings under seal.

After making these factual findings, Judge Pead then applied the "competitive decisionmaker" test outlined in *U.S. Steel* and its progeny to his factual findings. (*Id*. at 9 ("It is the ultimate potential for damaging use of the confidential information that underlies the concerns of the *U.S. Steel Corp*. 'competitive decisionmaker' test.").)[3] In doing so, Judge Pead recognized the need to consider "the risk of inadvertent disclosure after receipt of AEO information," in light of the fact that Mr. McGill had already received some AEO information produced by Blendtec prior to its filing of the Motion. (*Id*. at 7). After considering all the evidence, Judge Pead found that the facts here are "markedly different" than those present in Blendtec's cited authorities (*i.e.*, *Field Turf*, *Mynette*, and *LiiON*). (*Id*. at 7-9 (concluding that McGill's interaction with BlendJet's executive members on LinkedIn does not "indicate the type of relationship which puts AEO information at risk," and that "Mr. McGill's [relationship with BlendJet] does not significantly alter his outside counsel status and it does not present an 'unacceptable risk of inadvertent disclosure in this case.'").)

Instead, Judge Pead found that the facts of this matter are "analogous to th[ose] found in *Catheter Connections, Inc*"—a case in which the Court found that counsel of record's former status as in-house counsel did not create an unacceptable risk of inadvertent disclosure under the *U.S. Steel* standard. (*Id*. at 8.) He, therefore, denied the Motion and any related relief requested by Blendtec.

Blendtec expressly "does <u>not</u> object to Judge Pead's factual findings." (Objection at 1 (emphasis in original).) Nevertheless, Blendtec still inexplicably accuses Mr. McGill of "conceal[ing]" information about his relationship with BlendJet. (*Id*. at 9.) Blendtec attempts to

---

[3] The Objection does not challenge Judge Pead's order by arguing that he reached an improper conclusion under *U.S. Steel*. Instead, Blendtec only argues that *U.S. Steel* was the wrong standard and is inapplicable to the question of whether Mr. McGill should be barred from access to Blendtec's AEO information.

support this statement with three citations to Judge Pead's Order. (*Id*. (citing Order at 4, 5, and 9).) None of these citations, however, provide a finding from Judge Pead that BlendJet or Mr. McGill concealed anything. Instead, each is a portion of Judge Pead's order in which he either summarizes Blendtec's arguments *without* adopting them or explains that Mr. McGill did not disclose some details about his relationship with BlendJet that would not have affected the Court's competitive decisionmaker analysis. (*Id*. at 4, 5, and 9.) Judge Pead did not find that any alleged lack of disclosure was intentional or in bad faith.

First, Blendtec cites page 4 of the Order. (*Id*.) There, Judge Pead explains that "*Plaintiff argues* Mr. McGill should be disqualified because . . . [i]n essence, Defendant and Mr. McGill concealed information regarding" his relationship with BlendJet. (Order at 4 (emphasis added).) This is not a factual finding, but Judge Pead's summarization of what Blendtec argued.

Second, Blendtec cites page 5 of Judge Pead's Order. (Objection at 9.) There, Judge Pead continues to summarize Blendtec's argument that Mr. McGill did not disclose details about his relationship with BlendJet while at the same time objecting to the disclosure of AEO information to Blendtec's general counsel. (Order at 5.) Here, again, Judge Pead is merely summarizing Blendtec's argument without adopting it. Moreover, the discussion is about the timing of the disclosure of information that Blendtec believes relevant to the Motion—not whether Mr. McGill tried to *conceal* that information.

And third, Blendtec cites page 9 of Judge Pead's Order. (Objection at 9.) There, Judge Pead addressed the factual arguments made by Blendtec and concluded that the timing of the disclosure of certain details about Mr. McGill's relationship with BlendJet did not support revocation of "AEO access" because those facts "do[] not significantly alter his outside counsel status and do[] not present an 'unacceptable risk of inadvertent disclosure.'" (Order at 10 (citing

-5-

*Catheter Connections*, 2014 WL 3945880 at *3.)) Again, Judge Pead did not find that Mr. McGill *concealed* anything—simply that certain information was not disclosed "at the beginning of this case." (*Id.* at 9.)

Indeed, nowhere in Judge Pead's Order does he find that BlendJet or Mr. McGill concealed anything. In other words, although finding that certain information may have not been disclosed to Blendtec in the first instance, Judge Pead does not find that BlendJet or Mr. McGill actively tried to keep that information from Blendtec. In fact, that information was openly disclosed to Blendtec during discovery. And Judge Pead expressly found that BlendJet and Mr. McGill did not act in bad faith. (Order at 10.)

## II. Standard of Review.

Under Rule 72, a district court is "required to defer to the magistrate judge's ruling unless it [is] clearly erroneous or contrary to law." *Allen v. Sybase, Inc.*, 468 F.3d 642, 658-59 (10th Cir. 2006). "Under the 'contrary to law' standard, the district court conducts a plenary review of the magistrate judge's purely legal determinations, setting aside the magistrate judge's order only if it applied an incorrect legal standard." *Williams v. Vail Resorts Dev. Co.*, Case No. 02-cv-16-J, 2003 WL 25768656, at *2 (D. Wyo. Nov. 14, 2003) (citation omitted). "In sum, it is extremely difficult to justify alteration of the magistrate judge's nondispositive actions by a district judge." *Id.*

Given that Blendtec is expressly *not* objecting to Judge Pead's factual findings, Judge Pead's Order can only be revisited under Rule 72 if he applied the incorrect legal standard.

## III. Argument.

### A. Judge Pead Properly Applied *U.S. Steel* to Determine that Mr. McGill is Not a Competitive Decisionmaker.

It is well-established that this court follows *U.S. Steel* and utilizes the "'competitive

decision making' test when balancing risks and a person's inability to compartmentalize competitive information" when determining whether he or she is qualified to view AEO information under the SPO. *Definitive Holdings, LLC v. Powerteq LLC*, Case No. 2:18-cv-00844-TS-DBP, 2019 WL 6682395, at *2 (D. Utah, Dec. 6, 2019) (internal citation omitted). As this Court has previously held, the competitive decisionmaker test "requires a careful and comprehensive inquiry into [ ] counsel's actual (not nominal) role in the affairs of the company, his association and relationship with those in the corporate hierarchy who are competitive decision makers, and any other factor that enhances the risk of inadvertent disclosure." *Catheter Connections*, 2014 WL 3945880 at *2. The test balances the attorney's role as inside or outside counsel, the extent to which the attorney is a competitive decisionmaker based on his or her "participation in pricing, product design, marketing or other decisions made in light of similar or corresponding information about a competitor," and whether prohibiting an individual's access to the information would hamper a party's ability to effectively proceed with and assess the merits of the litigation." *Suture Exp., Inc. v. Cardinal Health, 200, LLC*, Case No. 12-2760-RDR, 2013 WL6909158, at *7 (D. Kan. Dec. 31, 2013); *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992) (quoting *U.S. Steel*).

Judge Pead correctly recognized that the "relevant inquiry" for controlling access to confidential information is described in *U.S. Steel* and its progeny (*i.e.*, the competitive decision-making test), still applies here. (Order at 7-8.) That should be the end of the inquiry on the Objection, as once it is established that *U.S. Steel* is the controlling authority and proper test to apply to the facts at bar, it is dispositive under Rule 72.

Nevertheless, Judge Pead also correctly applied the framework of *U.S. Steel* to the facts at issue. For example, Blendtec does not dispute Judge Pead's conclusion that "Mr. McGill is not

-7-

involved in licensing, pricing, or marketing decisions." (Order at 9.) Nor does Blendtec dispute Judge Pead's conclusion that Mr. McGill is neither in-house counsel nor a competitive decisionmaker at BlendJet. (*Id.* at 7.) Thus, Mr. McGill was always qualified to view AEO information under the protective order pursuant to this Court's controlling authority, and the factual predicates clearly exist to support Judge Pead's ultimate finding that Mr. McGill's specific relationship with BlendJet "does not present an unacceptable risk of inadvertent disclosure of AEO." (*Id.* at 10.) For these additional reasons, the Objection should be denied.

Blendtec contends that Judge Pead erred in applying *U.S. Steel's* competitive decisionmaker test to the facts here because he ostensibly did not consider the fact that Blendtec only learned certain (immaterial) details related to Mr. McGill's relationship with BlendJet after Blendtec began to produce AEO information, whereas "*US Steel* involved determining whether to grant access to AEO information *before* the person actually receives that information." (Objection at 4 (emphasis in original).) But Judge Pead expressly acknowledged the "subtle[]" factual difference[ ] between *U.S. Steel* and the present case, and that he was called to "craft a remedy for the risk of inadvertent disclosure after receipt of AEO information, not prior to it." (Order at 7.) Still, he concluded that the actual nature of Mr. McGill's relationship with BlendJet, coupled with the fact that any failure to disclose certain aspects of that relationship was inadvertent, did not create an unacceptable risk of disclosure of Blendtec's AEO information under *U.S. Steel*.

This conclusion, too, was consistent with the law. *U.S. Steel* provides a framework for determining whether providing an individual with access to confidential information creates an unreasonable risk of inadvertent disclosure of that information based on that individual's relationship with a party. The test is agnostic as to whether it is applied before or after the

individual in question obtained access to that information.

Even if, *arguendo*, an individual that would otherwise qualify for access to AEO information under the *U.S. Steel* "competitive decisionmaker" test might nevertheless fairly be denied access to that information as a sanction for bad faith conduct, Judge Pead expressly found that no bad faith conduct occurred in this case and that no sanction was warranted. (Order at 10.)

Blendtec does not and cannot cite any binding authority that might supersede *U.S. Steel*, or show that its "competitive decisionmaker" test is not applicable to the facts at bar. Notably, Blendtec's own authority relies on *U.S. Steel* and applies the very same competitive decisionmaker test Blendtec argues to be improper. (Objection at 5 (citing *Mynette Techs. v. United States*, 163 Fed. Cl. 733, 757 (Fed. Cl. 2022).)

Not surprisingly, Blendtec does not, and cannot, distinguish this Court's decision in *Catheter Connections*, a prior ruling that Judge Pead found to be directly on point. (Order at 7, 8, and 10.) In the *Catheter Connections* case (discussed *supra*), the Court directly applied *U.S. Steel's* competitive decisionmaker test under analogous facts. And, nowhere in *Catheter Connections* does the Court's analysis indicate that the timing of a party's disclosure of the factual information used in the competitive decisionmaker test is determinative of whether the *U.S. Steel* test should be used at all.

Simply put, the *U.S. Steel* "competitive decisionmaker" test is directly applicable to the subject matter of the Objection, and Blendtec's arguments to the contrary are easily dismissed. Judge Pead applied the correct legal test to the undisputed facts, and his denial of Blendtec's Motion should be affirmed.

    **B.**    **Blendtec's Cited Authority is Inapposite.**

Blendtec cites three unreported, out-of-district cases to support its argument that Judge Pead should have disregarded the application of *U.S. Steel* to the undisputed facts of this case,

and restricted Mr. McGill's access to Blendtec's AEO information as a sanction because he allegedly "concealed" details about his relationship with BlendJet until after Blendtec's production of AEO documents.

As an initial matter, Blendtec's contention that Judge Pead found that Mr. McGill and BlendJet "concealed" information about his relationship with BlendJet is, at best, without support. (Objection at 9.) On this point, at several points throughout his Order, Judge Pead merely summarized Blendtec's mischaracterization of the facts of this matter. (*See, e.g.*, Order at 4 ("Plaintiff argues . . . Defendant and Mr. McGill concealed information regarding his status with Blendjet [sic].").) But, more importantly, Judge Pead expressly concluded that the alleged lack of disclosure was not intentional, and not in bad faith (Order at 10) – and Blendtec does not challenge the factual findings underlying this conclusion.

Putting that aside, Judge Pead correctly determined that none of the cases cited by Blendtec are factually similar. First, with respect to *Field TurfUSA v. Sports Const. Group*, Case No. 1:06-cv-2624, 2007 WL 4412855 (N.D. Ohio 2007), Judge Pead correctly determined that case is inapposite and not controlling. In that case, the Northern District of Ohio court precluded counsel's access to AEO information as a sanction for acting in bad faith. *Id.* at *12. Specifically, the court found that counsel in *Field TurfUSA* and his firm intentionally misrepresented their substantial ownership status in the defendant's company and violated the court's order. *Id*. The court also found that counsel exhibited "contumacious conduct" and continuously refused to be forthcoming about a matter that potentially infringed on the moving party's trade secret rights. *Id*. at *20. Judge Pead recognized that the facts in this matter are "markedly different" than those at issue in *Field TurfUSA*. (Order at 6.) Blendtec has not objected to Judge Pead's factual findings, including Judge Pead's express conclusion that neither Mr. McGill nor BlendJet acted

-10-

in bad faith. *Field TurfUSA*, therefore, does not apply to supersede the applicability of the *U.S. Steel* test (if it ever could).

Second, Blendtec cites *Mynette Techs. v. United States* to support its argument that Mr. McGill's access to AEO information should be restricted as a sanction for an alleged non-disclosure of his relationship with BlendJet. 163 Fed. Cl. 733, 757 (Fed. Cl. 2022). *Mynette*, too, is inapposite and not controlling. In that case, the individual in question (Yorio) was Mynette's controlling shareholder and one of only two directors in the company. (*Id*. at 750.) The court in *Mynette* applied *U.S. Steel* to find that Yorio *was* a competitive decisionmaker, but nevertheless found that there was no risk of inadvertent disclosure due to that status. *Id*. at 751. The court went on to sanction Yorio and Mynette because: (i) they did not disclose the nature of their relationship until *five* years after the case began (*id*. at 757); (ii) the relationship was *material* to the protective order (*id*. at 760); and (iii) there was a potential for Yorio to misuse the confidential information because Mynette's business centered on patent enforcement and Yorio was the one responsible for monetizing those patents through litigation and licensing. *Id*. at 751, 769-771. In contrast, here, (i) Mr. McGill is not and has never been a controlling shareholder, director, or competitive decisionmaker of BlendJet; (ii) neither Mr. McGill nor BlendJet actively withheld facts *material* to the protective order analysis at any time, let alone for five years (they disclosed the information in due course, as part of the discovery process in this case); and (iii) Mr. McGill is not involved in monetizing BlendJet's intellectual property through litigation or licensing. (Order at 7-8.) Indeed, Mr. McGill's relationship with BlendJet is indisputably *not* that of a competitive decisionmaker, and thus, his history with BlendJet is not material to the protective order in this case. *Mynette*, therefore, also does not apply to supersede or somehow modify the applicability of the *U.S. Steel* "competitive decisionmaker" test.

-11-

Finally, Blendtec contends that *LiiON, LLC v. Vertiv Group Corp.*, Case No. 18-cv-6133, 2020 WL 6038055 (N.D. Ill. 2020), supports its argument that Mr. McGill's access to AEO information should be restricted. (Objection at 5-6.) That case is also inapposite. There, the court found that counsel had a substantial ownership interest of 10% or more of the plaintiff's stock. *Id.* at *6. In contrast, here, Mr. McGill indisputably does not own a significant interest in BlendJet, and his relationship with BlendJet does not present an "unacceptable risk of inadvertent disclosure in this case." (Order at 10.)

In sum, none of the cases upon which Blendtec relies support revoking Mr. McGill's AEO access as a sanction or otherwise.

### C. Revoking Mr. McGill's Access to AEO Information Would Impose a Severe Hardship on BlendJet

A majority of the documents that Blendtec has produced to date have been designated as AEO information. (ECF 108 at 14, ¶ 54, Kapaloski Declaration)("Blendtec has produced a very substantial volume of highly sensitive AEO information to Blendjet [sic][.]") As a key member of BlendJet's litigation team, Mr. McGill requires access to those documents to sufficiently advise BlendJet and prepare the case for trial. For example, BlendJet has relied on Mr. McGill to manage fact discovery and prepare for expert discovery. It would pose a severe hardship on BlendJet if Mr. McGill's AEO access were to be revoked. Blendtec does not and cannot provide any persuasive explanation as to why it would actually be prejudiced by Mr. McGill's access to AEO information, particularly given that they do not dispute Judge Pead's findings that Mr. McGill is not in-house counsel for BlendJet, is not a competitive decisionmaker for BlendJet, and has been faithful in endeavoring not to disclose confidential information. (Order at 7-8.)

### IV. Conclusion

For the foregoing reasons, Judge Pead properly exercised his broad discretion and applied

the correct legal test to uncontested facts when he denied Blendtec's Motion and restored Mr. McGill's access to Blendtec's AEO information, in accordance with the SPO. The Court should defer to Judge Pead's application of the *U.S. Steel* "competitive decisionmaker" test to his undisputed factual findings, and overrule Blendtec's Objection.

| | |
|---|---|
| Respectfully submitted this 26th day of December, 2023. | **SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**<br>Martin R. Bader (*pro hac vice*)<br>Jesse A. Salen (*pro hac vice*)<br><br>**MCGILL & CO., P.C.**<br>Patrick McGill (*pro hac vice*)<br><br>**PARSONS BEHLE & LATIMER**<br>Nathan D. Thomas (USB #11965)<br>Elizabeth M. Butler (USB #13658)<br><br>*/s/ Martin R. Bader*<br><br>*Attorneys for Defendant BlendJet, Inc.* |

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of December, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send an electronic notification to counsel of record for all parties, including the following:

Brett Foster (#6089)
Grant Foster (#7202)
Tamara Kapaloski (#13471)
**DORSEY & WHITNEY LLP**
111 S. Main Street, Suite 2100
Salt Lake City, UT  84111
Telephone: (801) 933-7360
Facsimile:  (801) 933-7373
foster.brett@dorsey.com
foster.grant@dorsey.com
kapaloski.tammy@dorsey.com

*/s/ Martin R. Bader*