IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH,

CENTRAL DIVISION

| | |
|---|---|
| BLENDTEC INC., a Utah corporation,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>BLENDJET INC., a Delaware corporation,<br><br>　　　　　　Defendant. | **ORDER AND MEMORANDUM DECISION ON BLENDTEC'S OBJECTION**<br><br>Case No. 2:21-cv-668<br><br>District Judge Tena Campbell<br><br>Magistrate Judge Dustin B. Pead |

Before the court is an objection filed by Plaintiff Blendtec Inc. (Blendtec). (Obj., ECF No. 171). On November 15, 2023, United States Magistrate Judge Dustin B. Pead issued an order denying Blendtec's motion to enforce the Standard Protective Order in this case and disqualify Defendant Blendjet Inc.'s (Blendjet) counsel Patrick McGill (ECF No. 105) and denying Blendtec's motion to compel Mr. McGill and Sheppard Mullin—also representing Blendjet—to produce documents responsive to subpoenas (ECF No. 107). (See Order & Memo. Decision, ECF No. 167.) Blendtec's timely objection to Judge Pead's order is narrow: Blendtec objects solely to "Judge Pead's decision to allow Mr. McGill to access and use Blendtec's Confidential Attorneys Eyes Only … information." See Fed. R. Civ. P. 72(a) ("A party may serve and file objections to [a] [magistrate judge's nondispositive order] within 14 days[.]"); (ECF No. 171 at 2).

The court held a hearing on the objection on March 5, 2024. (See Min. Entry, ECF No. 180.) Following a careful review of Judge Pead's order, the parties' briefing, and the arguments presented at the hearing, the court DENIES Blendtec's objection.

## BACKGROUND

Blendtec and Blendjet are competitors in the blender business. (See ECF No. 167 at 1.) They both manufacture and sell blenders and use similar logos in connection with their blenders. (See id.) In November 2021, Blendtec sued Blendjet for trademark infringement, false designation, unfair competition, trademark dilution, and violations of Utah laws concerning trademarks and business practices. (See Compl., ECF No. 2.)

The current dispute concerns the disclosure of certain information. (ECF No. 167 at 2.) Specifically, Blendtec alleges that Blendjet failed to disclose 1) the extent of its relationship with counsel Patrick McGill and 2) Mr. McGill's ownership interest in Blendjet.[1] (See ECF No. 171 at 2–3.) Blendtec argues that Blendjet's nondisclosures are potentially problematic because of how the Standard Protective Order (SPO) in effect separates information into categories, including confidential information that is deemed attorneys eyes only (AEO) and confidential information (CI). (ECF No. 167 at 3–4.) The SPO provides that outside counsel for the parties may have access to AEO, while in-house counsel, representatives, officers, or employees of a party are limited to CI. (Id.) As the case progressed, Blendtec objected to the disclosure of its AEO to individuals with any ownership interest in a party. (See ECF No. 171 at 2 n.1.)

Blendtec began to suspect that Mr. McGill was Blendjet's in-house counsel and that he had an ownership interest in Blendjet after Mr. McGill received access to Blendtec's AEO through discovery. (Id. at 2–3.) Blendtec's concern, and motivation for seeking to bar Mr. McGill's access

---

[1] The parties dispute whether Mr. McGill was Blendjet's in-house counsel at the relevant times, but they agree that Mr. McGill is currently serving as Blendjet's outside counsel of record. Mr. McGill's ownership interest in Blendjet is also undisputed, although counsel for Blendjet informed the court at the March 5, 2024, hearing that the exact percentage of Mr. McGill's interest is confidential.

2

to the AEO, is that "[Blendtec] produced its most sensitive information to [Mr. McGill,] someone with a significant role and ownership stake in a direct competitor." (Id. at 3.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 72 governs objections to a magistrate judge's nondispositive pre-trial order. The rule directs that a district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "The court must affirm [the order] unless it is 'left with the definite and firm conviction that a mistake has been committed.'" Montijo v. Intermountain Healthcare, Inc., No. 2:21-cv-472, 2022 WL 558293, at *1 (D. Utah Feb. 24, 2022) (quoting Ocelot Oil Corp. v. Sparrow Indus., 847 F.2d 1458, 1464 (10th Cir. 1988)).

## ANALYSIS

Blendtec objects only to Judge Pead's decision to allow Mr. McGill to access Blendtec's AEO, not to Judge Pead's denial of Blendtec's motion to disqualify Mr. McGill or Judge Pead's factual findings. To determine whether Mr. McGill may retain access to Blendtec's AEO, Judge Pead applied the standard from U.S. Steel Corporation v. United States. 730 F.2d 1465, 1468 (Fed. Cir. 1984). Blendtec argues that Judge Pead erred by applying this standard instead of three lower court cases.[2] Those courts were similarly deciding whether to bar an attorney's access to certain information after he or she received the information through discovery, instead of resolving that question before the attorney had access to the information. Blendjet maintains that Judge Pead applied the correct standard.

---

[2] The three cases Blendtec puts forth are: 1) FieldTurf USA v. Sports Const. Grp. LLC, No. 1:06-cv-2624, 2007 WL 4412855, *5–7 (N.D. Ohio Dec. 12, 2007); 2) Mynette Techs., Inc. v. United States, 163 Fed. Cl. 733, 747–57 (Fed. Cl. 2022); and 3) LiiON, LLC v. Vertiv Grp. Corp., No. 18-cv-6133, 2020 WL 6038055, *6 (N.D. Ill. Feb. 28, 2020).

3

In U.S. Steel, the U.S. Court of Appeals for the Federal Circuit reviewed a decision from the Court of International Trade (CIT) that denied a corporate in-house counsel access to confidential information but allowed outside counsel access. 730 F.2d at 1466–67. CIT was weighing whether to bar the attorneys' access to certain confidential information before they ever had access to the information. See U.S. Steel Corp. v. United States, 569 F. Supp. 870, 870–71 (C.I.T. 1983). In distinguishing between in-house and outside counsel, CIT found there to be "a great[] likelihood of inadvertent disclosure by [inside counsel,] lawyers who are employees committed to remain in the environment of a single company." U.S. Steel, 730 F.2d at 1467–68. But the Federal Circuit vacated CIT's decision, holding that "[d]enial or grant of access … cannot rest on a general assumption that one group of lawyers are more likely or less likely inadvertently to breach their duty under a protective order." Id. at 1468. Instead, "the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party, whether counsel be in-house or retained [outside counsel], must govern any concern for inadvertent or accidental disclosure." Id. When determining if an attorney may have access to certain confidential information, the court will assess whether the attorney is "involved in competitive decisionmaking" and whether the attorney presents "an unacceptable opportunity for" or "risk of inadvertent disclosure" of the information. Id. at 48, 50.

Applying U.S. Steel to the facts of this case—although subtly different from the facts before the court in U.S. Steel, which Judge Pead acknowledged in his order—was neither clearly erroneous or contrary to law. While Mr. McGill's access to Blendtec's AEO is at issue after he received the AEO through discovery, the central question before the court—whether a party's counsel may have access to certain information—is effectively the same as the one before the court in U.S. Steel. The Federal Circuit also did not limit its analysis only to situations where

counsel has not yet accessed the sensitive information at issue. Accordingly, Judge Pead correctly found that the court's determination of whether Mr. McGill may have access to the AEO requires assessing whether Mr. McGill presents an unacceptable opportunity for or risk of inadvertent disclosure of Blendtec's AEO to Blendjet. This is the relevant inquiry.

This court has previously applied U.S. Steel when determining whether attorneys may have access to AEO under applicable SPOs, further supporting that it was appropriate for Judge Pead to apply U.S. Steel here. Indeed, this court has recognized that U.S. Steel is the "leading authority on protective orders distinguishing between outside counsel and in-house counsel." Mod. Front Applications v. Alaska Airlines, No. 2:19-cv-561, 2021 WL 364189, at *5 (D. Utah Feb. 3, 2019) (denying the plaintiff's in-house counsel access to confidential information). As Judge Pead noted in his order, this case is similar to Catheter Connections, Incorporated v. Ivera Medical Corporation. No. 2:14-cv-70, 2014 WL 3945880, at *2 (D. Utah Aug. 12, 2014); (see ECF No. 167 at 8.) In Catheter Connections, the court was asked to consider whether an attorney and former chief business officer and in-house counsel for Catheter, who then left Catheter and began serving as its outside counsel, could have access to certain information. 2014 WL 3945880, at *1. The court applied U.S. Steel and held that in her current role, the attorney was not a competitive decisionmaker and presented no risk of inadvertent disclosure of highly sensitive information to Catheter. Id., at *3. While the court could not ignore the attorney's past role for Catheter, it found that this concern was overcome by her current status as Catheter's outside counsel. Id.

The court here similarly finds that even if Mr. McGill was Blendjet's in-house counsel at some point, he no longer holds that role. Mr. McGill is not involved with decision-making within Blendjet's senior team, including on issues involving licensing, pricing, or marketing.

5

(ECF No. 167 at 8.) As a result, as Judge Pead correctly found, Mr. McGill's opportunity for and risk of inadvertent disclosure of Blendtec's AEO to Blendjet is low. (See id.) Judge Pead also found that Mr. McGill's small ownership interest did not present an unacceptable risk of disclosure (id. at 10), and the court agrees.

Moreover, the court is not persuaded by Blendtec's argument that Judge Pead should have applied FieldTurf, Mynette Technologies, and/or LiiON to this case. These three cases are distinguishable, and none of these courts are more binding on this court than the Federal Circuit—the court that rendered the relevant U.S. Steel decision.

In FieldTurf USA, the court granted plaintiff FieldTurf's motion for disqualification in part. 2007 WL 4412855, at *1. FieldTurf argued for the disqualification of defendant Sports Construction Group's (SCG) attorney Ronald H. Lasko because Mr. Lasko and his law firm misrepresented that Mr. Lasko was SCG's outside counsel, among other reasons, and the protective order similarly distinguished between inside and outside counsel for gaining access to certain sensitive information. Id., at *1–2. But Mr. Lasko's ownership interest in SCG was 8%, he was SCG's secretary and the President of Vale Investments, Ltd. (which owned 10% of SCG), and two of his firm employees owned 20% of Vale. Id., at *2–4. The court also found that Mr. Lasko and his firm acted in bad faith and that their conduct resulted in prejudice to FieldTurf. Id., at *6. Here, Judge Pead did not find that Mr. McGill and Blendjet engaged in bad faith, and Blendtec is not objecting to any of Judge Pead's factual findings. (See ECF No. 167 at 7; ECF No. 171 at 1.) At the March 5, 2024, hearing on Blendtec's objection, counsel for Blendjet informed the court that Mr. McGill's ownership interest in Blendjet is much less than Mr. Lasko's—individually and through Vale—in SCG. Blendtec has also not presented any evidence

6

showing that Mr. McGill was an officer of Blendjet at any point or that his colleagues and/or employees had ownership interests in Blendjet.

The defendants in Mynette Technologies filed a motion for sanctions against the plaintiffs for allegedly violating the protective order and breaching their duty of candor for not disclosing the extent of attorney Robert Yorio's relationship with plaintiff Mynette Technologies. 163 Fed. Cl. at 740, 744. "As a remedy, [the] defendants request[ed] the [c]ourt either dismiss the case with prejudice or preclude plaintiffs' use of defendants['] AEO information[.]" Id. at 747. Unlike here, the parties in Mynette Technologies litigated for five years before the plaintiffs disclosed that Mr. Yorio, their attorney, had a role with Mynette Technologies that was more akin to inside counsel than outside counsel. Id. at 739, 757. The Court of Federal Claims noted this factual difference but nonetheless applied U.S. Steel. Id. at 752 ("The Federal Circuit set out the analytical framework governing protective orders limiting a lawyer's access to confidential information in U.S. Steel[.]"). The court found that Mr. Yorio was a competitive decisionmaker, but that there was no risk he would inadvertently disclose the defendants' sensitive information to Mynette Technologies. Id. at 754–56. Nonetheless, to "deter future litigants" from failing to disclose relationships like the one between Mr. Yorio and Mynette Technologies, the court ordered the parties to vacate the protective order and file an amended one. Id. at 769, 771. Notably, even after engaging in an extensive analysis to determine the appropriate remedy for the plaintiffs' conduct, the court did not prohibit Mr. Yorio's access to the defendants' AEO (see id. at 766–71), the remedy Blendtec seeks with respect to Mr. McGill here.

Finally, in LiiON, the court and the defendants did not know that plaintiff LiiON's outside counsel, Joshua Barney, had an ownership interest in LiiON. 2020 WL 6038055, at *2. The court did not explicitly apply U.S. Steel when deciding whether to bar Mr. Barney's access

7

to certain information, but found it notable that the defendants had not offered evidence showing that there was any risk of inadvertent disclosure of AEO (the key language from the U.S. Steel analysis) to LiiON through Mr. Barney.  Id.  Without engaging in further analysis, the court decided to prohibit Mr. Barney from accessing AEO "in the interest of fairness."  Id.

Neither Blendtec or these three cases present persuasive reasons for barring a lawyer's access to AEO when he is found to present no unacceptable opportunity for or risk of inadvertent disclosure of AEO to the party whom he represents.  There is no evidence that Mr. McGill ever mishandled AEO at any point during this litigation or that he is at risk of mishandling AEO going forward.  While Mr. McGill and Blendjet could have been more forthcoming about the extent of Mr. McGill's relationship with Blendjet (see ECF No. 167 at 9), the court is not persuaded to bar Mr. McGill's access to Blendtec's AEO.

Judge Pead did not commit clear error when he applied U.S. Steel to the facts of this case, nor was that application contrary to law.  The question before the court—whether Mr. McGill may have access to Blendtec's AEO—is governed by the U.S. Steel framework, which asks if he presents any unacceptable opportunity for or risk of inadvertent disclosure of Blendtec's AEO to Blendjet.

## ORDER

For the foregoing reasons, the court DENIES Blendtec's objection (ECF No. 171).

DATED this 5th day of April, 2024.

BY THE COURT:

_____
TENA CAMPBELL
United States District Judge

8